**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D SAN JOSE LLC,** | § | **Case No. 25-43157 (BTR)** |
| **Debtor.** | § | **Chapter 11** |
| | § | |

**CHOICE HOTELS INTERNATIONAL, INC.'S**
**MOTION FOR A CHAPTER 11 TRUSTEE UNDER 11 U.S.C. § 1104**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**A written objection must be filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading by January 12, 2026. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will consider the Motion at the hearing scheduled for January 13, 2026 at 1:30 p.m. (CT). If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA RHOADES, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Choice Hotels International, Inc. ("Choice"), a creditor of the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby moves for an order appointing a chapter 11 trustee pursuant to section 1104(a) of the United States Bankruptcy Code (the "Bankruptcy Code"). In support of this motion (this "Motion"), Choice respectfully states as follows:

## INTRODUCTION

1. Choice seeks the appointment of a Chapter 11 Trustee "for cause" under section 1104(a)(1) and under section 1104(a)(2) because such appointment is in the best interests of creditors and the estate.

2. The appointment of a Chapter 11 Trustee is necessary because of the mismanagement by Jagmohan Dhillon, the individual currently in control of the Debtor. Mr. Dhillon oversaw and cannot be expected to arrest the ongoing deterioration of the Debtor's property; he is responsible for the absence of reliable books and records; he cannot be trusted to investigate numerous non-arm's-length transactions with and among insiders (all of whom he controls); he cannot reasonably be expected to propose a confirmable chapter 11 plan; and, most critically, he cannot be relied upon to make independent, value-maximizing decisions for the benefit of the estate. Under its current management, the Debtor has historically functioned as a mere instrumentality for Galaxy Hotel Management LLC ("Galaxy"), part of Mr. Dhillon's enterprise. The Debtor's Galaxy-based control persons are irreparably conflicted. With them in control of the case, this Court and the creditors would always be skeptical that the Debtor is acting in Mr. Dhillon's interests rather than pursuing the best interests of the estate's creditors, including investigation and prosecution of what are some of the estate's most valuable assets—claims against affiliates and Mr. Dhillon himself.

3. The facts here establish that cause exists necessitating the appointment of a Chapter 11 Trustee in at least the following ways:

a) Conflict of Interest. The current person in control of the estate (originally Larry Williams and now Mr. Dhillon) and its reorganization is unable to monetize the single largest asset of the estate – claims against Galaxy, Mr. Dhillon and his affiliates. Mr. Williams cannot bring those claims because he works for Galaxy and has for a number of years; Mr. Dhillon cannot bring them because he is the target. Both are unable to produce the corporate books required to make a $30 million restructuring work. Such a conflict necessitates a Trustee. "Where [the

managers of the Debtor] suffer from material conflicts of interest, an independent trustee should be appointed under § 1104(a)(2)." *In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) (collecting cases). "A conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (citing *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003)). Larry Williams, who was first held out as a debtor representative, is not one. He works under direction of Galaxy and Mr. Dhillon, is paid by Galaxy, offices at Galaxy, uses his Galaxy email address, and testified that he is the "owner representative" (representing Mr. Dhillon).[1] Galaxy was recently replaced as management company, but Mr. Dhillon is still in charge of the estate (despite his resignation on paper). He controls the estate's books and all its decision-making, including the decision on whether to investigate and pursue claims against himself and other companies he controls.

b) <u>An Untrustworthy Debtor, Loss of Confidence of the Business Community and Poor Performance Show a Trustee is Appropriate under § 1104(a)(2)</u>. "Under 11 U.S.C. § 1104(a)(2), the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a Trustee would be in the interests of creditors, equity security holders, and other interests of the estate." *In re Sharon Steel Corp.*, 86 B.R. 455, 457 (Bankr. W.D. Pa. 1988), *aff'd*, 871 F.2d 1217 (3rd Cir. 1989). "When deciding whether relief under § 1104(a)(2) is warranted, a court will consider: (i) the trustworthiness of

[1] *See* Williams Dep. 11:10–15.



4907-6251-8147.v9

the debtor; (ii) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and; (iv) the benefits derived by the appointment of a trustee; balanced against the cost of the appointment." *In re Ironside, LLC*, No. 20-34222, 2022 Bankr. LEXIS 409, at *5 (Bankr. S.D. Tex. Feb. 18, 2022) (citing *In re Ionosphere Clubs, Inc*., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990) (internal citations omitted)); *see also* 7 Collier on Bankruptcy ¶ 1104.02[1][d] (16th ed.) (describing § 1104(a)(2) as a flexible, cost-benefit inquiry focusing on management trustworthiness, performance, creditor confidence, and whether the benefits of a trustee outweigh the costs).

i. Trustworthiness of the Debtor. Mr. Dhillon has shown himself untrustworthy as discussed herein. The Debtor's Schedules and Statements of Financial Affairs have been a source of incomplete, conflicting and untrue information, and Mr. Dhillon's tales about the Debtor's accounting, investments, and management are simply unbelievable. In addition, his numerous conflicts of interest when it comes to investigating or pursuing claims against his affiliated entities, family members or himself would not be tolerated in a trustee or estate professional – there is no reason they should be ignored when it comes to Mr. Dhillon.

ii. Debtor's Past and Present Performance. Mr. Dhillon looted the Debtor, used its assets for his own gain, treated the Debtor as a

piggybank for his greater enterprise, and Mr. Dhillon has *many other* failing motel businesses in this District and others.

iii. Lack of Confidence in the Business Community. The other lawsuits, foreclosures, and bankruptcy proceedings echo this one. Mr. Dhillon is failing. Mr. Dhillon/Galaxy have mishandled money and kept bad books. No new investor will lend to a debtor that Mr. Dhillon controls if given the truth.

iv. Benefits of a Trustee. As discussed above, a trustee will have the immediate confidence of Choice in this case. Similarly, a trustee can unwind the over $3 million in undocumented transfers to and from other Dhillon-controlled entities and potentially recover money for the estate. Choice would be able to consider financial concessions to a trustee it would never give to the Galaxy/Dhillon cartel.

v. The Balancing Analysis. Mr. Dhillon's removal hurts nobody. The new management company is paying payroll. The only job of Mr. Dhillon as a fiduciary is to control the Debtor, compile the books, and pay the creditors by obtaining the greatest recovery for the estate. Yet, Mr. Dhillon has shown that he is either incapable or unwilling to perform those tasks.

c) Improper payment of "creditors". Days before the bankruptcy, Mr. Dhillon used his position to zero out the Debtor's accounts and transfer debtor (and even the estate's) money to Galaxy and other entities he controls. He even initiated a

wire transfer for the benefit of his relative's credit card two days before the Petition. "A chapter 11 debtor and its managers owed fiduciary duties to the estate." *In re Euro-Am. Lodging Corp.*, 365 B.R. at 428 (citation omitted). "A debtor-in-possession has all of the duties of a trustee in a Chapter 11 case, including the duty to protect and conserve property in its possession for the benefit of the creditors." *In re Cajun Elec. Power Co-op, Inc.*, 191 B.R. 659, 661 (M.D. La. 1995), *aff'd*, 74 F.3d 599 (5th Cir. 1996). Here, Mr. Dhillon uses the "we" when discussing his network of motels, and treated them all as one, looting the estate for his other affiliates. He cannot manage the estate.

d) Property Mismanagement and Crime. Crime is reportedly a recurring issue at the Debtor's property, a motel in San Jose, California. Current management has been unable or unwilling to implement effective measures to prevent criminal activity and serves a customer base that poses a high risk of illicit behavior. Media coverage documented repeated emergency incidents at the Debtor's motel, including drug overdoses, domestic disputes, and murder, as well as a reported lack of concern from onsite staff.[2] Larry Williams has testified that over 30% of the motel's revenue is received in cash[3] and that 30 to 40% of guests stay for periods exceeding 5 days[4]—facts that are likely harmful to this

2 *See* Dhillon Dep. 167:3–173:14 ("Q. So this San Joe Times is reporting that a guy ran over his wife. Are you aware of this? A. I remember briefly but not in detail."), Dec. 9, 2025, a copy of which is attached hereto as **Exhibit A**.

3 *See* Williams Dep. 206:24–207:7 ("I believe my statement was that it could be 70 percent credit card, 30 percent cash, but I'd have to check the financial records…"), Nov. 14, 2025, a copy of which is attached hereto as **Exhibit B**.

4 *See* Williams Dep. 62:9–21 ("I believe, in looking back on it, it was probably about 40 -- 30 to 40 percent long-term guests. And the -- rest would be transient, probably less than -- less than five nights, we'll say.").



4907-6251-8147.v9

Debtor's business and its ability to attract new customers and generate additional revenue needed to confirm a plan.

e) Inaccurate Schedules and Statements and Failure to Comply with Cash Collateral Orders. Misrepresentations in the Debtor's initial Schedules call into question the accuracy of the Amended Schedules and demonstrate a disregard for proper bookkeeping and corporate separateness with affiliated entities, as well as a likely intent to mislead parties and the Court. Mr. Dhillon testified that millions of dollars in secured obligations—incurred for the benefit of non-debtors—and more than $7 million in affiliate transactions, were omitted from the Schedules and Statements.[5] His explanations for doing so defy credibility.[6] Further, the Debtor has made multiple contradictory representations regarding its ownership. The Statements represent that Jose Motel LLC is the Debtor's owner.[7] But, the Debtor's 2024 tax returns indicate that the Debtor is owned

[5] *See* Dhillon Dep. 25:10–31:24.

[6] Q. We just spent 5 or 7 minutes talking about payments to insiders. There's $3.3 million listed here. There's probably a million dollars roughly in the last year, the last calendar year. But the statements, number 30, say "no," correct?"

A. Correct.

Q. How do you reconcile those two things?

A. I think when Ankit looked at this document and when we looked at it, it was 7 million came in and 3 million went out. So as I said, there was more money out into San Joe than less is out.

Q. So you think he netted out payments received and payments made out?

A. Yeah, I think that is my understanding. These are intercompanies and he said there was more money came in San Jose than went out. Like 7 million came in and 3 million went out. That was the issue.

Q. Why would he do that?

A. I -- I mean, he must have thought if there's more money -- if there's more money taken out more than coming in. So there's more loans that was given to San Jose than taken out. He must have netted those amount and put that in there.

*See* Dhillon Dep. at 30:7–31:7.

[7] *See* ECF No. 26.

by Mr. Dhillon, his wife, and several other individuals and entities, as Mr. Dhillon testified at his deposition on December 9, 2025.[8] Three days later, during the Debtor's 341 meeting on December 12, 2025, Mr. Dhillon testified that, in fact, he and his wife were the sole owners—the owners listed on the 2024 tax returns were bought out for no consideration and without any documentation.[9] He provided no explanation for his failure to disclose the alleged transfer of equity to him and his wife during his deposition three days earlier. Also, the Debtor has repeatedly failed to comply with provisions of this Court's cash collateral orders, which also constitutes "cause."

f) Undisclosed Looting. Recent bank records show that Mr. Dhillon remained a signatory on the Debtor's bank accounts despite having resigned as manager in March 2025.[10] During this period, Mr. Dhillon failed to pay approximately $472,000 in property taxes, while directing the Debtor to pay more than $180,000 toward American Express and Chase credit card balances in the 90 days preceding the Petition Date—even though the Debtor maintained no credit card accounts.[11] Within 30 days of the Petition Date, Mr. Dhillon caused the Debtor to pay $111,124.18 to Galaxy, including a $26,427 check to Galaxy that cleared the day before the Petition Date.[12] Mr. Williams testified that he

[8] *See* Dhillon Dep. at 32:14–36:5.

[9] The recently filed Amended Statements of Financial Affairs show Mr. and Mrs. Dhillon as 50% owners (ECF No. 48).

[10] *See* Dhillon Dep. at 137:17–138:11 ("Q. Okay. Why did you continue to sign checks for the company after March of 2025? A. I was the signer on the -- on the account.").

[11] *See* Williams Dep. 220:10–221:13 (Q. Okay. So the debtor owes 374,000 on '24 and 98,000 on '25 as property taxes; right? A. That's what these documents state, yes."); *id.* at 108:23 ("I'm not -- I am not aware or have I seen a credit card for this entity.").

[12] *See* ECF No. 39-38.

does not know the purpose of these payments. Additionally, as noted above, the Debtor and its affiliates recently incurred approximately $2 million in secured debt—omitted from the Schedules—that is guaranteed by Mr. Dhillon, his wife, and several other affiliate hotels.[13] Mr. Williams notarized the related deeds of trust but failed to disclose this fact in his testimony.

g) Unreliable Books and Records. The Debtor maintains virtually no books and records, initially attributing this deficiency to a purported "changeover" between QuickBooks and Docyt and then back to QuickBooks.[14] The Debtor is unable to accurately account for financial items, and required weeks to generate even a basic balance sheet or income statement, relying instead on unofficial accounting. The Debtor ultimately produced what it calls a "general ledger," but that also took over four (4) weeks after it was first requested. That ledger contains numerous entries that appear manufactured, summary, or were backdated. Investors (and this Court) should lack confidence in such a document or the fact of its recent creation.[15]

---

[13] *See* ECF No. 39-11; Complaint ¶ 7, *Underground Lending, LLC v. Dhillon*, Civil Action File No. 25CV012805 (Ga. Super. Ct. Fulton Cnty. Sept. 16, 2025).

[14] *See* Williams Dep. 243:7–12.

[15] Q. So when you need to provide us with a ledger of these payments, how do you or your employees create that ledger?

A. I think they do bank recs and they put it in there and you have a sheet with a backup of a bank statement showing the date of transactions.

Q. So they use the bank statements to create a document?

A. Yes.

Q. And then they backdate to the date of the bank statements?

A. Whatever the date is on the bank statement, it will be on the ledger, on that Excel sheet or PDF.

*See* Dhillon Dep. at 193:11–24.

h) Insider Transactions. Although originally undisclosed by the Debtor—a major issue by itself—the Amended Schedules now show the Debtor transferred $3.5 million to affiliates and engaged in over $7 million in intercompany transactions in total, allegedly for repayment of undocumented affiliate loans.[16] Throughout 2025, the Debtor routinely paid well over $100,000 per month toward credit card balances, with certain months reaching multiple hundreds of thousands of dollars. While Mr. Dhillon claims – without documentation – those payments were made solely for this Debtor's expenses, Mr. Williams testified he was not aware of any credit cards in the Debtor's name. Itemized receipts were promised to Choice by Mr. Dhillon at his December 9, 2025 deposition, but two weeks later have not been provided.[17]

i) Inability to Pursue Successful Sale or Refinance. Given the poor state of the Debtor's books and records, and Mr. Dhillon's mismanagement, a reorganization or arm's length sale to a third-party[18] seem impossible. Installing an independent fiduciary will rescue any chance this Debtor has of a successful chapter 11 case.

---

[16] ECF No. 46.

[17] Although Debtor's counsel is making good faith efforts to obtain documents and information from his client, this Debtor continues to provide information on the eve of (or even just hours before) hearings, depositions, and filing deadlines. Last minute productions reflect either a failure by this Debtor and its well compensated former management company, Galaxy Management, to maintain basic information that it should always have on hand (like books and records or expense receipts), or an intent to hinder Choice's participation in this Chapter 11 Case.

[18] Mr. Dhillon testified at his deposition that he would find money to financially backstop a plan, perhaps by borrowing from family or friends to fund shortfalls. However, Mr. Dhillon could not identify any investors who he thought would provide him or the Debtor with a loan.

## JURISDICTION, VENUE, AND BURDEN OF PROOF

4. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (O).

5. In connection with its agreement for continued interim cash collateral use, Choice withdrew, without prejudice, its motion to transfer venue to the U.S. Bankruptcy Court for the Northern District of California, Oakland Division, where another affiliate case is pending. *See* ECF No. 46.

6. **Burden of Proof is a Preponderance of Evidence**. As the movant, Choice must show by a preponderance of the evidence that cause exists to appoint a chapter 11 trustee under Section 1104 of the Bankruptcy Code. *See Grogan v. Garner*, 498 U.S. 279, 286–291, 111 S.Ct. 654, 659–662 (1991) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983); *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979); *United States v. Kras*, 409 U.S. 434, 445–446, 93 S.Ct. 631, 637–638, 34 L.Ed.2d 626 (1973)) (holding preponderance of evidence standard applies absent express congressional direction to apply a higher standard); *see also In re Keeley & Grabanski Land P'ship*, 455 B.R. 153, 162–63 (B.A.P. 8th Cir. 2011) ("If a preponderance of the evidence standard is a sufficient standard for the denial of discharge based on a debtor's fraud, it should likewise be sufficient for the appointment of a trustee based on allegations of the debtor's fraud or misconduct. Consequently, we conclude that the proper standard for a party seeking the appointment of a Chapter 11 trustee is preponderance of the evidence.").

7. Although the Fifth Circuit had once ruled that the clear and convincing standard should apply, it later withdrew the portion of its opinion which dealt with this issue. *Matter of Cajun Elec. Power Coop., Inc.*, 69 F.3d 746, 749 (5th Cir. 1995), *withdrawn in part*, 74 F.3d 599

(5th Cir. 1996). Thus, while the Fifth Circuit has not explicitly weighed in on the split, a preponderance of the evidence would appear mandated by *Grogan* and *Herman & MacLean.*

## BACKGROUND

8. On October 22, 2025, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition Date"). The Debtor operates a motel in San Jose, California, located at 2560 Fontaine Road San Jose, CA 95121.

9. Pursuant to an agreement between Choice and the Debtor on temporary use of cash collateral, a special setting hearing is scheduled for January 13, 2026, at 1:30 p.m. (CT), to hear the Debtor's request for non-consensual use of cash collateral, Choice's objection/request to terminate cash collateral use, and this Motion.

## ARGUMENT

### I. The Legal Standard

10. Pursuant to section 1104(a) of the Bankruptcy Code:

> [O]n request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause…; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate[.]

11 U.S.C. § 1104(a)(1)-(2).

11. As stated above, the burden of proof for appointment of a trustee is a preponderance of the evidence under the Supreme Court's decisions in *Grogan* and *Herman & MacLean.*



4907-6251-8147.v9

12. There are two independent prongs under the statute for appointing a trustee in a chapter 11 case: a flexible "best interests" inquiry under § 1104(a)(2) and a separate "for cause" standard under § 1104(a)(1).

13. **Section 1104(a)(2) permits appointment "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate."** Section 1104(a)(2) is a flexible standard. *See In re Soundview Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014). In essence, section 1104(a)(2) "reflects 'the practical reality that a trustee is needed'." *In re V. Savino Oil & Heating*, 99 B.R. at 527 n.11 (*quoting In re Sharon Steel Corp.*, 86 B.R. 455, 458 (Bankr. W.D. Pa. 1988)). Section 1104(a)(2) "creates a flexible standard and allows the appointment of a trustee even when no 'cause' exists." *In re Ionosphere Clubs, Inc.*, 113 B.R. at 168 (citing *In re Sharon Steel Corp.*, 871 F.2d at 1226); *see also In re Cajun Elec. Power Co-op, Inc.*, at 661.

14. The bankruptcy court has broad discretion to appoint a trustee under § 1104(a)(2). *See In re Sharon Steel Corp.*, 871 F.2d at 1226; *In re Euro-Am. Lodging Corp.*, 365 B.R. at 428; *In re Evans*, 48 B.R. 46, 48 (Bankr. W.D. Tex. 1985). Indeed, "[u]nder 11 U.S.C. § 1104(a)(2), the Court may utilize its broad equity powers to engage in a cost-benefit analysis in order to determine whether the appointment of a Trustee would be in the interests of creditors, equity security holders, and other interests of the estate." *In re Sharon Steel Corp.*, 86 B.R. at 457 (citation omitted). "Consequently, the analysis becomes one of whether the cost of appointing a Trustee is outweighed by the benefits derived by the appointment." *Id.*

15. **Section 1104(a)(1) contains the "for cause" standard, which includes fraud, dishonesty, incompetence, or gross mismanagement of the debtor's affairs by current management.** *In re Ashley River Consulting, LLC*, No. 14-13406(MG), 2015 WL 1540941, at *9

(Bankr. S.D.N.Y. March 31, 2015). *See also In re V. Savino Oil & Heating Co., Inc*., 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). "Other factors warranting the appointment of a trustee under section 1104(a)(1) include conflicts of interest, inappropriate relations between corporate parents and subsidiaries, misuse of assets and funds, inadequate record keeping and reporting, failure to disclose relevant and material information, lack of credibility and creditor confidence, and various other similar instances of conduct." *In re Ancona*, No. 14-10532(MKV), 2016 WL 7868696, at *9 (Bankr. S.D.N.Y. Nov. 30, 2016). Furthermore, appointment of a chapter 11 trustee is proper when the debtor defaults on its responsibilities. *See id*. at *10.

16. Noncompliance with the Bankruptcy Code and Bankruptcy Rules constitute cause under § 1104(a)(1). *In re Sillerman*, 605 B.R. 631, 642 (Bankr. S.D.N.Y. 2019). Among the duties of every chapter 11 debtor is the duty to file accurate schedules of assets and liabilities and a statement of financial affairs. 11 U.S.C. § 521(a)(1)(B). Fed. R. Bankr. P. 1007(b). *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir.1999) ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets…[.]"). The Fifth Circuit has long recognized that this duty of disclosure is a continuing one and a debtor is required to disclose all assets. *In re Flugence*, 738 F.3d 126, 129, n. 1 (5th Cir. 2013) (collecting cases). As noted by the Supreme Court, "[a] debtor's asset schedules are filed under penalty of perjury," *Marrama v. Citizens Bank of Mass*., 549 U.S. 365, 378 (2007); See also, Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.").

17. Defying a court order is "cause" to appoint a trustee. *In re Sillerman*, 605 B.R. 631, 645 (Bankr. S.D.N.Y. 2019) (noting that "noncompliance with court orders" constitutes "cause" under § 1104(a)).

18. If cause does not exist under section 1104(a)(1)—although Choice believes it clearly does—a court may still, in its discretion, appoint a trustee under section 1104(a)(2) as being in the interests of the estate.

## II. A Trustee Is Warranted Under Section 1104(a)(2)

19. **A Conflict of Interest Warrants a Trustee Under § 1104(a)(2).** A trustee should be appointed when there is a conflict of interest with current management even in the absence of malfeasance. "Where [the managers of the Debtor] suffer from material conflicts of interest, an independent trustee should be appointed under § 1104(a)(2)." *In re Euro-Am. Lodging Corp.*, 365 B.R. at 428 (collecting cases). "A conflict of interest can arise where a debtor has multiple roles that give rise to conflicting duties and obligations." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (citing *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003)). The Debtor's stated objective entering bankruptcy was to refinance the debt owed to Choice to allow the Debtor to continue to own and operate the motels in San Jose. The Debtor's inability to generate useable books on time, to know and correctly disclose ownership, to keep a safe premises, to pay for the property improvement, and use of affiliates for Galaxy/Dhillon's sole benefit are not in the best interest of the estate or its creditors.

20. Mr. Dhillon and Mrs. Dhillon, as the putative owners of the Debtor (though this is in dispute), owe a fiduciary duty to maintain and improve the property, pay taxes not credit cards, and pursue litigation for recoveries. They have an obligation to investigate prepetition fraudulent transfers, but it is highly unlikely that they will do so given that they, relatives, and other entities under their control, are the likely targets of such litigation. The principals of the Debtor suffer

from myriad conflicts which interfere in their ability to operate the Debtor for the benefit of the estate and its creditors.

21. Conflicts of interest imperil the potential for, and will cast a pall over any effort to achieve, reorganization. When asked how a plan would be funded, Mr. Dhillon testified that he would borrow from unidentified family or friends (some of whom could well be targets of avoidance actions) to bridge any funding gap, which would likely render any plan speculative and not feasible. Mr. Dhillon and his affiliates are simultaneously insiders, counterparties to undocumented transactions, recipients of substantial estate transfers, guarantors of undisclosed secured debt, and potential defendants to estate causes of action. Management cannot be expected to investigate or pursue claims against itself or its affiliates (especially those it may be relying upon to fund a financial rescue advance), or to make impartial decisions regarding the estate's assets and liabilities in these circumstances. These conflicts independently support appointment of an independent fiduciary under section 1104(a)(2).

22. **<u>A Balancing of Interests and 4 Factors Warrant a Trustee Under §1104(a)(2).</u>** A trustee can also be appointed when the balancing of the benefits and risks shows the estate is better off with an independent fiduciary. Factors to consider include: "(i) the trustworthiness of the debtor; (ii) the debtor-in-possession's past and present performance and prospects for the debtor's rehabilitation; (iii) the confidence—or lack thereof—of the business community and of creditors in present management; and; (iv) the benefits derived by the appointment of a trustee; balanced against the cost of the appointment." *Ironside,* 2022 Bankr. LEXIS 409, at *5; *see also* 7 Collier on Bankruptcy ¶ 1104.02[1][d].

23. Here, those factors all weigh heavily against the Debtor remaining in possession, as discussed in paragraph 3(a)–(b), above which is re-urged here in relevant part.

24. Appointment of a trustee is particularly appropriate where losses are continuing and creditor confidence in management has eroded. See *In re Patman Drilling Co.*, 784 F.2d 397, 401–02 (10th Cir. 1986) (affirming trustee appointment where "continuing losses" and management's inability to regain creditor confidence threatened the estate); *In re Cajun Elec. Power Coop., Inc.*, 191 B.R. 659, 661–62 (M.D. La. 1995), aff'd, 74 F.3d 599 (5th Cir. 1996) (appointment proper where conflicts and dysfunction threatened reorganization notwithstanding absence of classic fraud). "Where [the managers of the Debtor] suffer from material conflicts of interest, an independent trustee should be appointed under § 1104(a)(2)." *In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 428 (Bankr. S.D.N.Y. 2007) (collecting cases). "A conflict of interest may arise where a debtor occupies multiple roles giving rise to competing duties and obligations." *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (citing *In re SunCruz Casinos, LLC*, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003)).

25. Creditor confidence in current management has been irreparably lost, and that loss of confidence is well-founded. The Debtor has failed to provide reliable financial information, made contradictory sworn statements regarding ownership and liabilities, and engaged in extensive undisclosed insider transactions. As a result, creditors cannot reasonably rely on management's representations or participate meaningfully in restructuring negotiations.

26. Meaningful negotiations with creditors cannot proceed where management lacks credibility and is perceived, based on the record, to operate the Debtor for the benefit of insiders rather than the estate. Financing from true third-party sources is unlikely where books and records are unreliable and insider influence remains unchecked, further impairing the Debtor's ability to reorganize.

27. Continued deterioration of estate value further confirms that trustee appointment is in the estate's best interest. In its original schedules, the Debtor valued its motel at approximately $31 million, based on a $32.7 million 2022 appraisal.[19] Its Amended Schedules now estimate the motel's value at $18 million.[20] Under Mr. Dhillon's control, the Debtor's primary asset has purportedly lost nearly half its value in less than four years.

28. The benefits of appointing a chapter 11 trustee far outweigh the costs. Trustee appointment would allow an independent fiduciary to investigate insider claims, address crime and other safety issues at the Property, reconstruct books and records, and give parties confidence that they can obtain information about this Debtor's business that is reliable to make a potential investment in this Debtor under a plan. The incremental cost of a trustee is justified by the protection and potential recovery afforded to the estate. Choice would help financially support the Trustee's work.

### III. <u>Cause Exists Under Section 1104(a)(1)</u>

29. "Cause" requiring the appointment of a Chapter 11 Trustee exists. Mr. Dhillon must have known about, but chose not to disclose his alleged ownership interests, recent ownership transfers, and transfers to and from affiliates, among other things. The Debtor has failed to comply with duties imposed by orders, statutes and rules, including the omission of assets from schedules, and the omission of millions in alleged liabilities. The Debtor filed materially inaccurate schedules and a statement of financial affairs that omitted insider and affiliate transfers, omitted ownership transfers, records custodians, and other required disclosures. Those material misrepresentations—perhaps intentional—have not been fully corrected by the Amended Schedules and Statements,

[19] *See* ECF No. 25.

[20] *See* ECF No. 47.

and they undermine its marketability and ability to reorganize. For example, Mr. Dhillon testified that he omitted millions of dollars in undocumented intercompany "loans" and that he incurred secured debt for other Galaxy entities using the Debtor's assets and goodwill; no third party would transact with the Debtor under these circumstances.[21]

30. Under Mr. Dhillon's control, the Debtor has not complied with the Court's orders on cash collateral. Under the Cash Collateral Orders, the Debtor was required to do each of the following but failed:

a. Provide a knowledgeable representative for a deposition.

b. Pay Choice its adequate protection payment on time.

c. Provide books and records to Choice on time.

d. Specifically describe transfers to affiliates over the last three and a half years by November 17.

e. Provide access to data, books, and accounts on time.

31. The evidence shows that Mr. Dhillon is mismanaging the Debtor's property. Required property improvements appear to have not been made, complaints have risen, property taxes have gone unpaid, and illicit activity is occurring all while Mr. Dhillon continues to transfer money out of the Debtor for his benefit and the benefit of other entities he controls. The current management rents to a significantly cash customer base (approximately 50% in cash). Though Mr. Dhillon denies it, Mr. Williams testified over 30% of guests stay for five or more nights. These conditions are not conducive to guests and staff; they expose the estate to potential claims and deter new investors. The nonpayment of property taxes jeopardizes the business.

[21] *See* Dhillon Dep. 25:10–31:24.

32. The Debtor lacks an independent fiduciary who can make decisions in this Chapter 11 Case to maximize value. Mr. Williams is Mr. Dhillon's shill. He works for Galaxy, is compensated by Galaxy and/or Mr. Dhillon, and represents Mr. Dhillon's interests. That is troublesome when the claims against Mr. Dhillon and related insiders of the Debtor may be a valuable asset. An independent third-party fiduciary is needed to maximize the value of this estate.

33. Despite claiming to have no role with the Debtor, Mr. Dhillon is in control. He is a signatory on the Debtor's accounts and directed substantial undocumented and unexplained transfers, while causing the Debtor to not pay approximately $472,000 in property taxes, even after he supposedly resigned. The Debtor has made payments to insiders that even Mr. Dhillon could not explain. And, the Debtor's assets have been used to secure funding for its affiliates, all without any benefit to the Debtor but with substantial benefit to Mr. Dhillon who personally guaranteed that financing.

34. The Debtor maintains unreliable books and records; it has an inability to accurately account for basic financial information and has relied on suspiciously inaccessible accounting systems. Financial statements were first claimed to be "unavailable", but something purporting to be balance sheets and cash flow statements and ledgers were produced last week. The general ledger reflects suspicious entries, making it difficult for an investor to trust Mr. Dhillon and Galaxy's records of the Debtor.

35. The Debtor has claims against insiders for millions of dollars of undisclosed and undocumented insider transfers purportedly tied to undocumented loans, as well as substantial affiliate credit card payments unsupported by receipts or logic.

36. Lastly, this lack of transparency, combined with poor operational controls, renders the Debtor unable to credibly pursue a sale, refinancing, or third-party investment absent the

appointment of an independent fiduciary. For these reasons, "cause" exists for the appointment of a Chapter 11 Trustee under Bankruptcy Code section 1104(a)(1).

## CONCLUSION

For the foregoing reasons, Choice respectfully requests that the Court grant this Motion and appoint a Chapter 11 Trustee in this Chapter 11 Case. The proposed form of order is attached hereto as **Exhibit C**.

Date: December 22, 2025

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Hugh M. Ray, III*
Hugh M. Ray, III
TX Bar No. 24004246
Joshua Stenhjem
ND Bar No. 09941
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: 713-276-7600
Facsimile: 713-276-7634
hugh.ray@pillsburylaw.com
joshua.stenhjem@pillsburylaw.com

*--and--*

Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
Andrew V. Alfano
N.Y. Bar No. 5525241
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com
andrew.alfano@pillsburylaw.com

*Counsel for Choice Hotels International, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on December 22, 2025, a true and correct copy of this document was served via the Court's CM/ECF system on all parties who are deemed to have consented to electronic service, and on all parties on the attached master mailing list.

*/s/ Hugh M. Ray, III*
Hugh M. Ray, III

Label Matrix for local noticing
0540-4
Case 25-43157
Eastern District of Texas
Sherman
Mon Dec 22 16:27:54 CST 2025

Attorney General of Texas
Bankruptcy Div
PO Box 12548
Austin, TX 78711-2548

Asher Matiah Bublick
DOJ-Ust
1100 Commerce Street
Ste 976
Dallas, TX 75242-1011

Carpio's Construction
7137 High Field St.
Sparks, NV 89436

Mark A. Castillo
Carrington Coleman Sloman & Blumenthal,
901 Main Street
Ste 5500
Dallas, TX 75202-3767

Choice Hotels International
915 Meeting Street Ste 600
Rockville, MD 20852-2380

City of San Jose
200 E. Santa Clara St.
San Jose, CA 95113-1905

(p)TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV - BANKRUPTCY SECTION
PO BOX 13528
AUSTIN TX 78711-3528

County of Santa Clara
110 W. Tasman Dr.
San Jose, CA 95134-1700

Crystal Clean Pool & Spa
2766 Chopin Ave.
San Jose, CA 95122-1309

D San Jose LLC
8762 Preston Trace Blvd.
Frisco, TX 75033-3009

DM Funding LLC
6903 Congress St
New Port Richey, FL 34653-2704

Daniel M. Eliades
K&L Gates LLP
One Newark Center, 10th Floor
1085 Raymond Blvd.
Newark, NJ 07102-5218

David S. Catuogno
K&L Gates LLP
One Newark Center, 10th Floor
1085 Raymond Blvd.
Newark, NJ 07102-5218

Daniel M. Eliades
K&L Gates LLP
One Newark Center
10th Floor
Newark, NJ 07102-5237

Expedia Group
1111 Expedia Group Way W.
Seattle, WA 98119-1111

G6 Hospitality Franchise LLC
PO Box 849036
Dallas, TX 75284-9036

GreenLake Asset Management LLC
1416 El Centro St.
South Pasadena, CA 91030-3202

(p)GREYSTONE SERVICING COMPANY LLC
ATTN JUSTIN DAYNEY
419 BELLE AIR LANE
WARRENTON VA 20186-4368

HD Supply Facilities Maintenance Ltd.
PO Box 509058
San Diego, CA 92150-9058

HD Supply Facilities Maintenance, LTD
101 Riverview Parkway
Santee, CA 92071-5805

Hubert Company
25401 Network Place
Chicago, IL 60673-1254

Imprint Plus
3888 Sound Way
Bellingham, WA 98226-9160

Internal Revenue Service
Centralized Insolvency Operations
PO Box 7346
Philadelphia, PA 19101-7346

Internal Revenue Service
Mail Code DAL-5020
1100 Commerce Street
Dallas, TX 75242-1100

Itria Ventures LLC
Attn: Onkar Singh
1 Penn Plaza, Suite 4915
New York, NY 10119-0033

Itria Ventures LLC
C. Kevin Kobbe
DLA Piper LLP (US)
650 South Exeter Street, Suite 1100
Baltimore, MD 21202-4576

Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, TX 75119-4744

Rian Nealon
Quilling, Selander, Lownds, Winslett & M
2200 Ross Avenue, Suite 2400
Dallas, TX 75201-2797

PG&E
PO Box 997300
Sacramento, CA 95899-7300

(p)PACIFIC GAS & ELECTRIC COMPANY
PO BOX 8329
STOCKTON CA 95208-0329

Pacific Plumbing & Underground
200 Whitney Place
Fremont, CA 94539-7655

Pepe's Landscaping
403 Serenade Way
San Jose, CA 95111-2566

Plasticard-Locktech International
PO Box 679814
Dallas, TX 75267-9814

Hugh M. Ray III
Pillsbury Winthrop Shaw Pittman LLP
609 Main Suite 2000
Houston, TX 77002-3180

Royal Cup Coffee
PO Box 841000
Dallas, TX 75284-1000

Erin Marie Schmidt
DOJ-Ust
1100 Commerce
Suite 976
Dallas, TX 75242-1011

Sky Unlimited, LLC
1986 Bridget Marie Dr
Modesto, CA 95351-4540

John Paul Stanford
Quilling, Selander, Lownds, Winslett & M
2200 Ross Avenue, Suite 2400
Dallas, TX 75201-2797

Mark Stromberg
Stromberg Stock, PLLC
8350 N Central Expy
Ste 1225
Dallas, TX 75206-1600

Super 8 Worldwide, Inc.
15020 Collections Center Dr.
Chicago, IL 60693-0001

Super 8 Worldwide, Inc.
c/o K&L Gates LLP
Attn: David S. Catuogno
One Newark Center
10th Floor
Newark, NJ 07102-5237

Texas Workforce Commission
101 East 15th Street Room 354
Austin, TX 78778-0001

The Terminex International Company L.P.
PO Box 802155
Chicago, IL 60680-2155

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

U.S. Trustee's Office
1100 Commerce Street Room 976
Dallas, TX 75242-1011

US Atty General
10th and Constitution Ave., NW
Main Justice Bldg. Room 5111
Washington, DC 20530-0001

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

Velocity
A Managed Solutions Company
PO Box 631310
Cincinnati, OH 45263-1310

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Comptroller of Public Accts
Revenue Acctg Div Bankruptcy Sec
PO Box 13528
Austin, TX 78711

Greystone Servicing Company LLC
419 Belle Air Ln
Warrenton, VA 20186

PG&E
PO BOX 8329
C/O BANKRUPTCY
STOCKTON, CA 95208

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Choice Hotels International, Inc.

(u)Amandeep Dhillon

(u)Jagmohan Dhillon

| | |
|---|---|
| End of Label Matrix | |
| Mailable recipients | 48 |
| Bypassed recipients | 3 |
| Total | 51 |