IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| D SAN JOSE LLC, | § | CASE NO. 25-43157 |
| | § | (Chapter 11) |
| DEBTOR | § | |

# **DEBTOR'S PLAN OF REORGANIZATION**

COMES NOW D San Jose LLC ("Debtor"), the Debtor in the above-styled and numbered case, and files this its Plan of Reorganization (the "Plan").

The sources and uses of income to fund the Plan are described in more detail in the Disclosure Statement accompanying this Plan. Updated projections that follow this Plan are attached hereto as Exhibit "1". Periodic financial reports will be filed with the Court, as required by the Bankruptcy Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above or can be also obtained from Debtor's counsel by written request.

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND USE OF TERMS .................................................................. 3

ARTICLE II - CONCEPT OF THE PLAN ........................................................................ 7

ARTICLE III - GENERAL TERMS AND CONDITIONS ........................................................ 8

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS...................... 8

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS.............. 8

ARTICLE VI - IMPLEMENTATION OF PLAN ........................................................ 11

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES ........................................................................ 11

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ........ 12

ARTICLE IX - EFFECT OF CONFIRMATION ........................................................ 13

ARTICLE X - MISCELLANEOUS PROVISIONS........................................................ 15

ARTICLE XI - MODIFICATION OF THE PLAN ........................................................ 16

ARTICLE XII - RETENTION OF JURISDICTION ........................................................ 17

Exhibit 1- Projections

## ARTICLE I. DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code §503 and entitled to administrative priority pursuant to Bankruptcy Code §507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this Case No. 25-43157 pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means February 19, 2026, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Causes of Action**" means any action, cause of action, suit, account, controversy, agreement, promise, right to legal remedies, right to equitable remedies, right to payment, and Claim, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise, including (a) Avoidance Actions; (b) any claims identified in the Debtor's Schedules or the Disclosure Statement; (c) claims against general contractors and subcontractors (d) claims against lenders; (e) claims for fraud, negligence, gross negligence, willful misconduct, or any tort actions, (f) violations of applicable corporate or partnership laws, (g) breaches of fiduciary or agency duties, (h) causes of action based on alter ego or other liability theories; (i) based on any other claim of the Debtor, to the extent not specifically compromised or released pursuant to the Plan or an agreement referred to, or incorporated into, the Plan or Final Order entered after notice and opportunity for hearing; (j) claims under any prepetition insurance policy of the Debtor; (k) claims against the officers, managers and directors of the Debtor including any claims under any directors and officers insurance policies; (l) any claims of the Debtor for equitable subordination under § 510(c) or under other applicable laws; (m) any claim of the Debtor to recharacterize one or more Claims as Interests; and (n) any unresolved objection to any Disputed Claim.

"**Choice**" means Choice Hotels International, Inc.

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in the Assets.

"**Class**" means any class into which Claims are classified pursuant to Article VI of the Plan. Each subclass of a class shall be treated as a separate class.

"**Collateral**" means any Assets of the Debtor subject to a valid Lien held by a Secured Creditor.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy

Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

"**Debtor**" means D San Jose LLC, the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor after Confirmation of the Plan.

"**Disbursing Agent**" means Larry Williams. Larry Williams may also be referenced as corporate representative or chief reconstruction officer of the Debtor.

"**Disclosure Statement**" means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means a date that is not later than 30 days after the entry of the Confirmation Order.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

**"Estate Causes of Action"** shall mean all causes of action held by the Debtor against other parties as of the Petition Date.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Confirmation Order**" means the Confirmation Order entered by the Bankruptcy Court confirming this Plan provided that such Confirmation Order has not been amended, modified or reversed in such a manner as is unacceptable to the Plan Proponents and provided that (i) no appeal, petition for certiorari, motion for reargument or rehearing shall then be pending or (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, no stay has been granted. In the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought and a stay has been obtained, the Confirmation Order shall become a Final Order after it has been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Hotel**" means the Debtor's Super 8 and Motel 6 located at 2560 Fountaine Road San Jose, CA 95121.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor as of the Petition Date.

"**Itria**" means Intria Ventures LLC.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and tax lien.

"**Net Recoveries**" means cash recoveries received by the Debtor on account of litigation, settlement or any other resolution of the Estate Causes of Action, less all attorney fees and expenses and any other costs attributable to such litigation, settlement or other resolution.

**"New Investor Contribution"** shall mean up to $500,000.00 to be paid by Jagmohan Dhillon to the Debtor in exchange for the New Member Interest, as necessary for payment of Allowed Administrative Claims and to offset any shortfalls in operating funds to make Plan payments.

"**New Member Interest**" means a new 100% equity Interest in the Debtor issued to the New Investor under the Plan.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means October 22, 2025, the date on which an Order for Relief was entered by the Court.

"**Plan**" means this Plan of Reorganization, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Plan Proponent**" means the Debtor.

"**Plan Rate**" means the interest rate to be used in connection with Allowed Secured Claims which rate will be the prime rate as published in the Wall Street Journal as of the Confirmation Hearing. The current prime rate is 6.75%.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

"**Priority Wage Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4)(A).

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

"**Pro Rata**" means the allocated share of a pool of funds to an Allowed Claim based on the amount of the Claim in relation to the sum of all other Claims in the relevant Class.

"**Reorganized Debtor**" means the Debtor post-confirmation.

"**Schedules and Statements**" means and refers to each of the Debtor' bankruptcy schedules A/B, D-H and Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the collateral and an Unsecured Claim for the remainder.

"**Sky**" means Sky Unlimited LLC.

"**Taxes**" means and includes all federal, state, county and local income, ad valorem, excise, stamp and other taxes of any type or nature whatsoever.

"**Tax Claims**" mean any and all Secured or Priority Claims of any Entity for the payment of any Taxes (a) accorded a priority pursuant to §507(a)(8) of the Code, or (b) secured by valid Liens on assets of the Debtor existing on the Confirmation Date.

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01** The Plan is a Plan of Reorganization. The Debtor will continue its business after Confirmation of this Plan. The Debtor operates a "Motel 6/Super 8" dual flag hotel on the land it owns at 2560 Fontaine Road San Jose, CA 95121 (the "Hotel"). Under the Plan the Debtor will make installment payments with interest to Secured Creditors (as called for by the Plan) until they are paid under the terms of this Plan. Unsecured Creditors will receive payments from a pro-rata share of a pool of funds.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01** **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive payments under the Plan. The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02** **Time for Filing Claims**. The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged. Taxing authorities are not required to file administrative claims for post-petition taxes.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

Claims against the Debtor, excluding Administrative Expense Claims and Priority Claims, are divided into the following Classes:

Class 1 Claim: Allowed Priority Claim of Taxing Authorities.

Class 2 Claims: Allowed Secured Claim of Choice.

Class 3 Claims: Allowed Secured Claim of Sky.

Class 4 Claims: Allowed Secured Claim of Intria.

Class 5 Claims: Allowed Unsecured Claims.

Class 6 Claims: Interaffiliate Transfers.

Class 7 Equity Interests: Equity Interest Holders.

## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**A. NON-CLASSIFIED CLAIMS.** The following Claims are not classified, pursuant to Bankruptcy Code Section 1123:

**Treatment of Administrative Claims**. Each holder of an Administrative Claim other than Professional Fee Administrative Claims and the DIP Loans shall receive, in full satisfaction,

settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**Treatment of Professional Fee Administrative Claims.** All persons who are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Title 28 U.S.C. Section 1930 Fees.** The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court.

**B. CLASSIFIED CLAIMS.** The following Claims are classified pursuant to Bankruptcy Code Section 1123, and are treated as follows:

**Treatment of Classified Claims and Interests Under the Plan**

**General Provisions Regarding Treatment of Claims.**

No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

Except as otherwise provided in the Plan, should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and an Unsecured Claim for the remainder.

Should the Collateral for a Secured Claim be sold during the term of this Plan, the Allowed Secured Claim will be paid in full at the closing of the sale.

**Class 1 Claim: Allowed Priority Claim of Taxing Authorities**. Class 1 comprises of the Claim of the City of San Jose and the Claim of Santa Clara County.

The Claim of the City of San Jose was scheduled by the Debtor as an Unsecured Priority Claim in the amount of $48,116.05, plus interest and fees. The City of San Jose has not filed a proof of claim. The City of San Jose will be paid the full amount of their allowed unsecured priority claim starting month 1 until month 48 following the Effective Date in equal monthly installments of $1,229.47 per month. The City of San Jose will retain any of its lien in the property Debtor.

The Claim of Santa Clara County was scheduled by Debtor as an Unsecured Priority Claim in the amount of $425,584.78, plus interest and fees. Santa Clara County has not filed a proof of claim. Santa Clara County will be paid the full amount of their allowed unsecured priority claim in 60 months following the Effective Date in equal monthly installments of $9,985.98 per month. Santa Clara County will retain any liens it has in property of the Debtor.

The Class 1 Claim is impaired, and the holders are entitled to vote to accept or reject the Plan

**Class 2: Allowed Secured Claim of Choice.** Choice's Claim was scheduled by the Debtor as a disputed Secured Claim in the amount of $23,163,875.97. Choice has not filed a proof of claim. The Debtor scheduled the value of the Collateral securing the claim at $18,000,000. Recent appraisals indicate the current fair market value is closer to $17,000,000. The Court has not yet determined the value of the Collateral.

The Class 2 Claimant have not made the election under Section 1111(b) of the Code. The Allowed Secured Claim in the amount of $19,000,000.00 shall be paid in full in 60 months following the Effective Date based on an amortization of 25 years in equal monthly installments of principal with interest thereon at the Plan Rate per annum with a lump sum payment at the end of 5 years. Payments shall commence on the first day of the first month following Confirmation. The existing note will be modified to reflect these terms. The payments each month are reflected on the Exhibit "1" attached hereto. Choice will retain its liens in its collateral.

The Class 2 Claim is impaired, and the holder is entitled to vote to accept or reject the Plan

**Class 3: Allowed Secured Claim of Sky.** Sky's Claim was scheduled by the Debtor as a disputed claim in the amount of $5,000.00. Sky has not filed a proof of claim.

Itria shall have an Allowed Secured Claim in the amount of $5,000.00. The Allowed Secured Claim shall be treated as follows: The Reorganized Debtor will pay the full amount of their allowed secured claim in 60 months following the Effective Date in equal monthly installments of $83.33 per month. Sky will retain its liens in its collateral.

The Class 3 Claim is impaired, and the holder is entitled to vote to accept or reject the Plan.

**Class 4: Allowed Secured Claim of Itria.** Itria's Claim was scheduled by the Debtor as a disputed claim in the amount of $529,364.00. Itria timely filed a proof of claim in the amount of $529,364.88. The proof of claim noted that the amount that was secured and unsecured was unknown until the Court determined the value of the Collateral.

Itria shall have an Allowed Secured Claim in the amount of $500,000.00. The Allowed Secured Claim shall be treated as follows: The Reorganized Debtor will pay Itria the full amount of their allowed secured claim in 60 months following the Effective Date in equal monthly installments of $8,333.33 per month. Itria will retain its liens in its collateral.

The Class 4 Claim is impaired, and the holder is entitled to vote to accept or reject the Plan.

**Class 5: Allowed Unsecured Claims.** Allowed Unsecured Claims in Class 4 will receive their Pro Rata share of $50,000.00 every sixth month of the Plan term commencing on the Effective Date of the Plan. The $50,000.00 will come from the net income of the Reorganized Debtor every month to fund the total amount each sixth month. These Claims are Impaired, and the holders of these Claims are entitled to vote to accept or reject the Plan. In the event of any shortfall from net income for payment of the Class 5 distribution, the Debtor shall draw upon the funds contributed by Jagmohan Dhillon as described under 6.01 of the Plan.

**Class 6: Interaffiliate Transfers Claims.** As demonstrated on Exhibit E, to the extent that the affiliate entities are owed any money from the Debtor, their claims are subordinated to the Allowed Unsecured Claims. These Claims are Impaired, and the holders of these Claims are entitled to vote to accept or reject the Plan. The Debtor does not believe that any funds will be paid to these Claimants.

**Class 7: Equity Interests:** Equity Interests shall be fully retained by Jagmohan Dhillon in exchange for the Investor Contribution and guarantees provided herein.

These Interests are Impaired.

## ARTICLE VI
## IMPLEMENTATION OF PLAN

**6.01 Plan Payments; Sources.** The Plan will be substantially consummated upon the commencement of payments to holders of Secured Claims as called for above. The Debtor intends to make all payments required under the Plan from the net profits earned from the operation of the Hotel, Net Recoveries and the Investor Contribution of Jagmohan Dhillon is contributing $750,000.000 to fund the Administrative Claims and any shortfalls in Plan payments during the Plan Term. Notwithstanding the foregoing, Jagmohan Dhillon agrees that upon confirmation of the Plan he shall be and will sign a written guaranty of payment and performance on a form suitable to Choice affirming his obligation to be, personally liable to Choice to pay or perform the monthly debt service and monthly payment obligations of the debtor to Choice in Class 2 hereunder.

Further details regarding the implementation of the Plan and projections of the Debtor’s income, expenses and Plan payments are set forth in Exhibit “1” attached hereto.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 General Rejection of Executory Contracts and Unexpired Leases.** Except for

executory contracts and unexpired leases that have been assumed before the Effective Date or under this section of this Plan, or that are the subject of a pending motion to assume, or that were entered after the Petition Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

The Debtor hereby ASSUMES its Hotel Franchise Agreement with Super 8 Worldwide, Inc and will cure any defaults under the agreement on the Effective Date of the Plan.

The Debtor hereby ASSUMES its Hotel Franchise Agreement with G6 Hospitality Franchise LLC and will cure any defaults under the agreement on the Effective Date of the Plan.

The Debtor hereby ASSUMES its Development and Management Agreement with American Hospitality Services, Inc., and will cure any defaults under the agreement on the Effective Date of the Plan.

The Debtor hereby ASSUMES its Vendor Agreement with Canteen Vending Services and will cure any defaults under the agreement on the Effective Date of the Plan.

Larry Williams will stay on as Chief Reorganization Officer to continue to facilitate the operations of the Property and Mr. Williams shall not be subject to termination from, or to a reduction of his duties and responsibilities for, the Reorganized Debtor. As Disbursing Agent, Mr. Williams will ensure that payments under the Plan are made each month

**7.02** **Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03** **Bar Date for Claims Based on Rejection**. If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however,* that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01** **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-Petition Date Claims at any time prior to sixty (60) days after the Effective

Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however*, that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

**8.02 Distributions under the Plan.** No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is Disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

**8.03 Reservation of Claims and Causes of Action**. Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' Schedules and Statements.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01 Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor except for the Debtor's obligations under the

Plan. On the confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all claims, liens and interest except as otherwise provided in this Plan. This Plan will evidence the release of any and all Liens or encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

**9.02** **Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03** **Discharge**. Confirmation of the Plan shall result in the inability of any Creditor to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor except as otherwise provided in the treatment of Creditors under the Plan.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

**9.04** **Satisfaction of Claims and Interests.** Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor against the Debtor, including Claims arising prior to the Effective Date.

**9.05** **Temporary Injunction.** Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor of any Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the

Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01 Request for Relief Under Bankruptcy Code Section 1129**. In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02 Revocation**. The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03 Effect of Withdrawal or Revocation**. If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04 Due Authorization by Creditors**. Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05 Entire Agreement**. This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06 Section 1146 Exemption.** Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07 Provisions Governing Distributions.** All payments and distributions under the Plan shall be made by the Reorganized Debtor and the Disbursing Agent as indicated. Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court. Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed) or such other address as the holder of an Allowed Claim shall provide in writing to the Reorganized Debtor. All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date. After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08** **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09** **Notices to Debtor.** Any notices required to be given to the Debtor under this Plan shall be mailed by certified mail to the Debtor at 17330 Preston Road, Suite 200D, Dallas TX 75252, and to Debtor's attorney, John Paul Stanford, Quilling, Selander, Lownds, Winslett, Moser, P.C., 2200 Ross Avenue, Suite 2400, Dallas, Texas 75201 and by email at jstanford@qslwm.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01** The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01** **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02** **Executory Contracts and Unexpired Leases Proceedings**. To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03** **Plan Interpretation**. To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04** **Plan Implementation**. To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05** **Plan Modification**. To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06** **Adjudication of Controversies**. To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07** **Injunctive Relief**. To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08** **Interpleader Action**. To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09** **Correct Minor Defects**. To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10** **Authorization of Fees and Expenses**. To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11** **Post-Confirmation Orders Regarding Confirmation**. To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12** **Final Decree**. To enter a final decree closing the Case pursuant to Bankruptcy

Rule 3022.

Dated: January 12, 2026.

Respectfully submitted,

QUILLING, SELANDER, LOWNDS
WINSLETT & MOSER, P.C.
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Fax)
jstandford@qslwm.com (Email)
rnealon@qslwm.com (Email)

By: */s/ Rian F. Nealon*
John Paul Stanford
State Bar No. 14572500
Rian F. Nealon
State Bar No. 24149243

ATTORNEYS FOR DEBTOR

*/s/ Jagmohan Dhillon*
Managing Member of the Debtor

*/s/ Larry Williams*
Corporate Representative of the Debtor