**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D SAN JOSE LLC,** | § | **Case No. 25-43157 (BTR)** |
| **Debtor.** | § | **Chapter 11** |
| | § | |

**CHOICE HOTELS INTERNATIONAL, INC.'S OMNIBUS MOTION FOR DOCUMENT PRODUCTION FROM RELATED PARTIES UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

**14-DAY NEGATIVE NOTICE – LBR 2004(a):**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading *WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE* shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA RHOADES, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

Choice Hotels International, Inc. ("Choice"), a creditor of the above-captioned debtor (the "Debtor"), hereby moves for an order substantially in the form attached as **Exhibit E** (the "Proposed Order") authorizing document discovery pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

Choice contacted former counsel of record for Jagmohan and Amandeep Dhillon and counsel of record for the Debtor to meet and confer on the voluntary production of documents and

information and avoid formal discovery. Both professionals responded that they did not represent any Related Parties, nor could they direct Choice to those who did represent the Related Parties. Choice, therefore, has made reasonable efforts to obtain discovery without a court order before filing this Motion.

In support of this motion (this "Omnibus Motion"), Choice respectfully states as follows:

## PRELIMINARY STATEMENT

1. On January 16, 2026, after three days of evidentiary hearings, this Court concluded that cause existed to appoint a chapter 11 trustee because the Debtor's books could not be reconciled, its ownership could not be determined, and Jagmohan Dhillon could not credibly account for millions of dollars moved among over thirty affiliated entities he controls. The evidentiary record showed that: (a) effective January 1, 2025, ten months before this bankruptcy, the Debtor's general ledger retroactively recharacterized over $7 million in equity contributions and distributions as intercompany loan transfers, without any supporting loan documentation; (b) the Debtor paid credit card bills for affiliates, including Galaxy Hotels,[1] Dirigo Hospitality LLC, and D Winne Hotel LLC; (c) the Debtor failed to disclose a bank account at American Bank of Dallas through which more than $3 million flowed in 2024 and was closed within a year of the bankruptcy filing; and (d) the Debtor's tax returns reflect ten unique K-1 recipients across 2022–2024, while the Debtor's corporate documents identify a single member.

2. Choice now seeks authority under Bankruptcy Rule 2004 to obtain documents and information from Related Parties regarding the Debtor's ownership, books and records, prepetition insider transfers, and other transactions. The boundaries between the Debtor, its affiliates, and its

---

[1] "Galaxy Hotels" is the business name associated with the American Express Business Platinum Card account ending 5-05000, for which Jagmohan Dhillon is the named cardholder.

insiders have been disregarded to such a degree that their corporate separateness may be more form than substance. Choice needs discovery from Related Parties[2] to determine the true scope of estate assets and liabilities and to evaluate whether the systematic disregard of corporate formalities supports claims to recover improperly transferred assets and impose personal liability.

3. The Related Parties fall into four categories:

a. Control Persons and Members – entities and individuals who hold or may have held ownership interests in, or exercised actual control over, the Debtor;

b. Books and Records Holders, Tax Preparers, and Bookkeepers – persons who prepared, maintained, or have custody of the Debtor's financial records, tax filings, and supporting documentation;

c. Parties to Intercompany Affiliate Equity Contributions or Loans – affiliate entities that made equity contributions or loans to the Debtor, or received equity distributions or loan repayments from the Debtor, parties booked in the Debtor's equity accounts, affiliate credit card holders, and affiliates identified as potential plan funding sources; and

d. Other Loan and Transaction Counterparties – entities that provided funds to, received funds from, or engaged in other significant transactions with the Debtor, including lenders, servicers, title and escrow agents, payment processors, and related guarantors, co-obligors, and affiliated obligors.

[2] "Related Parties" means the persons and entities from whom discovery is sought under this Omnibus Motion, as identified in **Schedule 1** attached to the Proposed Order, including: (a) Control Persons and Members; (b) Books and Records Holders, Tax Preparers, and Bookkeepers; (c) Parties to Intercompany Affiliate Equity Contributions or Loans; and (d) Other Loan and Transaction Counterparties. Each person or entity identified in Schedule 1 is a "Related Party," and collectively they are the "Related Parties."

Before seeking formal discovery from any Related Party, Choice will continue to meet and confer in good faith, where possible, but seeks authorization under Bankruptcy Rule 2004 to compel production to the extent it cannot reach agreement concerning the voluntary exchange of documents and information.

4. Although the Debtor and certain Related Parties previously made limited document productions, those productions raise far more questions than answers about the Debtor's ownership, assets, and potential claims against insiders. As this Court noted at the January 2026 evidentiary hearing, the Debtor's ownership and control remain unclear. Documents produced by the Debtor and its affiliate Galaxy Management Company LLC ("Galaxy Management") reflect irreconcilable contradictions and red flags, including that:

a. more than thirty (30) affiliate entities made equity contributions or loans to the Debtor or received equity distributions or loan repayments from the Debtor, totaling over $7.2 million in contributions and over $4.2 million in distributions in 2024 alone;

b. millions of dollars in affiliate transfers originally recorded in 2024 as equity contributions and distributions were recharacterized as intercompany loan transfers effective January 1, 2025;

c. the Debtor and Jagmohan Dhillon produced bank account screenshots from Galaxy HG Mahwah LLC[3] and Legacy Hotel LLC as purported evidence that Jagmohan Dhillon could personally fund a plan of reorganization, once again conflating affiliate resources with his own ability to contribute capital;

[3] According to Nevada Secretary of State records, Ronak Khichadia is listed as a Managing Member of Galaxy HG Mahwah LLC (NV Business ID E23034002022), along with Jagmohan Dhillon. Khichadia was also listed as a 3% owner of the Debtor on the Debtor's 2022 tax return (Schedule K-1).

d. Jagmohan Dhillon encumbered Debtor's primary asset for GreenLake construction financing on affiliate properties, even though the Debtor received no benefit and now faces a disputed $10 million secured claim;

e. the Debtor's 2022, 2023, and 2024 as filed tax returns identify at least ten different members across three years, contrary to the Debtor's represented ownership structure;

f. the Debtor's often undated board minutes reflect additions and withdrawals of certain "silent members" contrary to the Debtor's represented ownership structure;

g. many of the K-1s attached to the Debtor's 2024 tax return suggest large capital contributions from persons who do not appear in the Debtor's 2024 General Ledger;

h. the Debtor paid credit card bills for affiliates, including Galaxy Hotels, Dirigo Hospitality LLC, and D Winne Hotel LLC, with authorized users including Jagmit Mann, Jagmohan Dhillon, Jasspreet Dhillon, Manish Panchal, and Narinder Dhillon;

i. payments to certain counterparties, including DM Funding LLC, were routed through the Debtor's equity accounts rather than liability accounts, suggesting that loan-closing funds were improperly recorded;

j. the Debtor's General Ledger reflects a $227,785 payoff of a loan to NewcrestImage CH LLC on August 14, 2024, with the memo indicating the loan was "paid off from Galaxy" and the entry recorded against the Debtor's

equity account, suggesting that the Debtor's funds may have been used to satisfy an affiliate or insider obligation;

k. payments to lenders continued after the Choice closing, including DM Funding and Newcrest payments in September and October 2024;

l. despite holding out Larry Williams as an independent representative of the estate, the Debtor's 2022 Chase bank statements reflect payments to "Orchid Hotels," which Choice understands to be Orchid Global Hospitality LLC, for which Larry Williams serves as President;[4] and

m. the Debtor maintained a bank account at American Bank of Dallas ("AB Bank," Account 1887) that had over $3 million in activity during 2024, yet the Debtor failed to disclose AB Bank on any version of its schedules or statement of financial affairs; at the January 2026 evidentiary hearing, the Debtor's representative testified that AB Bank statements would be produced to Choice, but the Debtor has not produced them or amended its schedules or statement of financial affairs to date.

5. Given the large, interconnected enterprise and the sheer number of insider counterparties and transactions, Choice may ultimately seek documents from more than one hundred (100) Related Parties, if necessary. Rather than filing individual motions as to each discovery target, Choice brings this Omnibus Motion to minimize costs to the estate and promote judicial efficiency.

---

[4] Further, Orchid Global Hospitality LLC shares the same mailing address and P.O. Box as Galaxy. And the record reflects that Larry Williams is a 1099 Galaxy employee, he notarized several documents at issue in the case, he has worked for Galaxy and/or Jagmohan Dhillon since 2014, and his "owner representative agreement" appears to have been backdated.

## JURISDICTION

6. This Court has jurisdiction to consider this Rule 2004 Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Choice consents to the entry of a final order by this Court on this Rule 2004 Motion to the extent such consent is required under Article III of the United States Constitution.

## BACKGROUND

7. On October 22, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Court").

8. On December 22, 2025, Choice filed its motion to appoint a chapter 11 trustee (the "Trustee Motion"). ECF No. 53. On January 13, 14, and 16, 2026, the Court conducted an evidentiary hearing on Choice's Trustee Motion (the "January Evidentiary Hearing").[5] At the January Evidentiary Hearing, Choice presented evidence that the Debtor's books and records contained material inconsistencies concerning ownership, related-party transactions, and the characterization of intercompany transfers, and that the persons in control of the Debtor had demonstrated a pattern of unreliable recordkeeping and inadequate disclosure.

9. On January 23, 2026, the Court entered an order appointing a chapter 11 trustee pursuant to Bankruptcy Code section 1104, finding that cause existed due to "inconsistencies in the Debtor's books and records that call into question their accuracy and reliability and warrant

[5] Choice requests the Court take judicial notice of its own docket and the record at the January Evidentiary Hearing, including all exhibits admitted into evidence. For clarity, Choice cites to those exhibits as "Choice Ex. __," "Debtor Ex. __," and/or "Galaxy Ex. __". Due to their volume, Choice does not attach copies of the cited documents. Choice will, however, provide a copy of the documents cited in this Omnibus Motion upon the Court's request.

review by an independent fiduciary." *See* ECF No. 93. On February 6, 2026, the Court entered an order appointing Behrooz Vida as chapter 11 trustee. *See* ECF No. 98.

10. Choice now files this Omnibus Motion to continue its investigation into the Debtor's prepetition financial affairs, transfers, obligations, and relationships with Related Parties. Choice seeks discovery under Bankruptcy Rule 2004 to obtain information relevant to the administration of the estate, the allowance and potential recovery on claims asserted in this Chapter 11 Case, and the identification and pursuit of potential causes of action.

**SCOPE OF EXAMINATION AND DOCUMENT REQUESTS**

11. At this time, Choice seeks only document production substantially in the form attached as Exhibits A, B, C, and D.[6] Choice is not presently seeking any oral examination under Rule 2004. After reviewing any documents produced, Choice reserves the right to confer with the relevant parties and, if necessary, seek further relief under Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1 for one or more oral examinations.

12. Choice seeks documents and communications from Related Parties concerning the Debtor's ownership, control, assets, liabilities, and Related Party transactions. Those materials are needed to determine who controlled the Debtor, how funds moved amongst Related Parties, how those transactions were recorded, and whether estate claims exist.

**ARGUMENT AND AUTHORITIES**

13. Rule 2004 is "the basic discovery device in bankruptcy cases." 9 Collier on Bankruptcy ¶ 2004.01[1] (Richard Levin et al. eds., 16th ed.). On motion of a party in interest, the court may order the examination of "any entity." FED. R. BANKR. P. 2004(a). The examination

---

[6] Exhibits A, B, C, and D are provided as illustrative models rather than final versions of the requested document demands. The document requests ultimately served on any Related Party may require minor revisions. For example, if a Related Party falls within more than one category, the requests to that party will be adjusted accordingly.

may relate to "the debtor's acts, conduct, or property," "the debtor's liabilities and financial condition," "any matter that may affect the administration of the debtor's estate," or "the debtor's right to a discharge." FED. R. BANKR. P. 2004(b)(1). In a chapter 11 case other than a railroad reorganization, the examination may also relate to "the operation of any business and the desirability of its continuing," "the source of any money or property the debtor acquired or will acquire for the purpose of consummating a plan and the consideration given or offered," and "any other matter relevant to the case or to formulating a plan." FED. R. BANKR. P. 2004(b)(2).

14. Courts in this Circuit recognize that the scope of a Rule 2004 examination is "unfettered and broad" and "commonly recognized as more in the nature of a fishing expedition." *In re McClain Feed Yard, Inc.*, 661 B.R. 136, 142 (Bankr. N.D. Tex. 2024) (cleaned up); *see also In re Correra*, 589 B.R. 76, 109 (Bankr. N.D. Tex. 2018) ("Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure.") (cleaned up).

15. Rule 2004 permits a broad pre-litigation inquiry into matters affecting the estate. In the Fifth Circuit, Rule 2004 "affords both debtors and creditors broad rights of examination of a third-party's records." *Snyder v. Soc'y Bank of Ann Arbor (In re Snyder)*, No. 94-60572, 1995 U.S. App. LEXIS 43005, at *3 (5th Cir. Apr. 12, 1995); *see also Ernst & Young, LLP v. Pritchard (In re Daisytek, Inc.)*, 323 B.R. 180, 184 (N.D. Tex. 2005) (describing Rule 2004 examination of the debtor's prepetition auditor while the trustee was "only in the investigation stage"); *In re Mirant Corp.*, 326 B.R. 354, 357 (Bankr. N.D. Tex. 2005) (ordering Rule 2004 discovery from investment bankers that had filed proofs of claim, participated in the chapter 11 cases, and were potential defendants); *In re Correra*, 589 B.R. 76, 112 (Bankr. N.D. Tex. 2018) (recognizing the court's power to order testimony from persons with knowledge of the debtor's affairs "regardless of the fact that the person is a 'non-party'").

16. Rule 2004 exists to allow inquiry before estate claims are fixed and before the relevant records disappear or become harder to assemble. *See Cameron v. United States*, 231 U.S. 710, 717–18 (1914); *In re Millennium Lab Holdings II LLC*, 562 B.R. 614, 631 (Bankr. D. Del. 2016) ("a fundamental purpose of Rule 2004" is granting debtors and estate representatives broad power "to determine what causes of action they may possess") (cleaned up); *In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009) (recognizing that "[o]ne of the primary purposes of a Rule 2004 examination is as a pre-litigation device" and refusing to let a potential examinee avoid examination merely because related litigation might later exist).

## I. <u>AN OMNIBUS MOTION IS NECESSARY AND PROMOTES JUDICIAL EFFICIENCY</u>

17. The Related Parties fall into four categories arising from the same core issues: ownership and control of the Debtor, accuracy and completeness of the Debtor's books and records, and the nature and characterization of extensive intercompany and insider transfers and transactions. Filing multiple Rule 2004 motions would needlessly multiply motion practice, increase expenses for all parties, and delay investigation of issues central to estate administration. An omnibus motion is therefore the most efficient procedure to present the requests while still allowing the Court and affected parties to evaluate the scope and relevance of each request set. *See* FED. R. BANKR. P. 1001 (requiring that the Bankruptcy Rules be administered to secure the "just, speedy, and inexpensive determination of every case and proceeding").

## II. <u>THE PROPOSED DOCUMENT REQUESTS ARE WITHIN THE SCOPE OF RULE 2004(B)</u>

18. The proposed document requests seek records concerning the Debtor's ownership, control, assets, liabilities, financial condition, and transactions, including organizational documents, bank and payment records, tax filings and workpapers, intercompany ledgers, and communications from four categories of Related Parties: (i) Control Persons and Members; (ii)

Books and Records Holders, Tax Preparers, and Bookkeepers; (iii) Parties to Intercompany Affiliate Equity Contributions or Loans; and (iv) Other Loan and Transaction Counterparties. These requests are proper under Rule 2004(b). *See Millennium*, 562 B.R. at 627 (holding that a discovery request "fits squarely within the purpose of Rule 2004" where the trustee sought discovery regarding prepetition causes of action and explaining that legitimate Rule 2004 goals include "discovering assets, examining transactions, and determining whether wrongdoing has occurred") (cleaned up); *Wash. Mut.,* 408 B.R. at 49, 51 (granting Rule 2004 discovery aimed at "potential business tort claims," "potential fraudulent transfer claims," "potential turnover claims," and "potential preferential transfer claims," and holding the examination proper where it sought evidence unrelated to pending proceedings); *In re Recoton Corp.*, 307 B.R. 751, 756 (Bankr. S.D.N.Y. 2004) (holding Rule 2004 discovery was "prima facie consistent" with the Rule's purposes because it sought information necessary to determine "whether claims beneficial to the estates exist and whether to pursue such claims").

**A. Control Persons and Members**

19. A draft form of document requests proposed for Control Persons and Members is attached as **Exhibit A**. In summary, Choice seeks documents and communications concerning ownership, control, assets, accounts, authority, and financial dealings of the Control Persons and Members, including records sufficient to identify their ownership interests and control rights, their authority to act for or direct funds on behalf of the Debtor and related entities, their assets and accounts, their transfers and payments involving the Debtor and Galaxy-affiliated parties, and their communications concerning those matters. These requests are narrowly tailored to determine who exercised actual control over the Debtor, where relevant assets and funds were held or directed, how money moved among insiders and affiliates, and whether those acts, relationships, and transactions affected the Debtor's property, liabilities, financial condition, and estate

administration. The identity of each Control Person and Member and the basis for Choice's belief that each is a member of the Debtor or otherwise exerts control over the Debtor's operations is as follows:

a. Jose Motel LLC and Ghazal Abbas. Several sources[7] identify Jose Motel LLC as the Debtor's sole member. And a March 3, 2025 unanimous written consent for Jose Motel names Ghazal Abbas as Jose Motel LLC's manager.

b. D San Jose RE LLC. California Secretary of State records reflect that this entity was registered on the same date and at the same address as the Debtor. Choice seeks documents to determine whether D San Jose RE LLC holds any assets related to the Debtor's hotel property, whether overlapping ownership exists, and whether any transfers occurred between the two entities.

c. Jagmohan Dhillon and Amandeep Dhillon (collectively, the "Dhillons"). Mr. Dhillon testified that he and his wife are the Debtor's ultimate owners. The Debtor's books and records and tax returns confirm they have ownership interests, the scope of which is inconsistent with Mr. Dhillon's testimony.[8]

[7] First Amendment to the Operating Agreement of D San Jose LLC (Choice Ex. 4), Amended and Restated Operating Agreement of D San Jose LLC (Choice Ex. 5), the Choice Pledge Agreement (Choice Ex. 41); the Debtor's original Statement of Financial Affairs (ECF No. 26), the initial section 341(a) meeting of creditors on November 12, 2025, the deposition of Larry Williams (ECF No. 53, Ex. B), and the deposition of Jagmohan Dhillon (ECF No. 53, Ex. A).

[8] D San Jose LLC Operating Agreement (Galaxy Ex. N), the Debtor's first amended statement of financial affairs (ECF No. 48), the continued 341(a) meetings of creditors on December 12 and 30, 2025, the Debtor's second amended statement of financial affairs (ECF No. 58), and Jagmohan Dhillon's testimony at the January Evidentiary Hearing.

d. Milan G. Mody; JAV Ghelani Holdings LLC;[9] Sanjeev Bhanot; Sudha L. Potla;[10] Vijay Mathur; Mazbauddin Mahabub; Piyush Ghelane; and Ronak Khichadia. The Debtor's 2022, 2023, and 2024 tax returns name the foregoing persons as members of the Debtor.[11]

e. Galaxy.[12] Galaxy Management is purportedly owned by the Dhillons.[13] It was the Debtor's prepetition and post-petition management company.[14] Galaxy also appears to have been a central source of information supplied to the Debtor's tax preparer, and it received funds that were allegedly intended as capital contributions to the Debtor.[15]

f. Larry Williams. Larry Williams signed the petition as Corporate Representative.[16] He testified at the January Evidentiary Hearing that he has worked for Galaxy and/or Jagmohan Dhillon since 2014.[17]

---

9 JAV Ghelani Holdings LLC made a limited production on January 7, 2026 and is named here only to the extent that its production was incomplete.

10 Mr. Dhillon testified that Ms. Potla is a Galaxy employee who "looks over the India office" and did not make a capital contribution, notwithstanding the $238,843 capital contribution attributed to her on her K-1.

11 Choice Exs. 16, 17, 18.

12 "Galaxy" means, collectively: (i) Galaxy Management Company LLC; (ii) Galaxy Hotels; (iii) Galaxy Hotels Group, the apparent d/b/a or trade name under which Galaxy Management Company LLC and related entities operate; (iv) Galaxy Holding Group LLC (NV Business ID NV20222387776), with Jagmohan Dhillon as managing member; (v) Galaxy Holding Group JD LLC (NV Business ID NV20222453237), with Jagmohan Dhillon and Harwant Dhillon as managing members; (vi) Galaxy Construction LLC (Texas SOS File No. 0802155722), with Amandeep Dhillon as sole member; and (vii) any other entity using the "Galaxy" name or brand, or operating under common ownership or control with the foregoing.

13 On information and belief, Galaxy Management was formed on November 5, 2014. Its founding ownership was 90% Amandeep Dhillon and 10% Jagmohan Dhillon.

14 Choice Ex. 44.

15 Choice Ex. 24.

16 ECF No. 1.

17 Mr. Williams has served as the Debtor's corporate representative throughout this bankruptcy case and testified extensively at the January Evidentiary Hearing. His decade-long tenure with Galaxy-affiliated entities positions him to possess knowledge of the broader pattern of intercompany fund movements and corporate practices across the enterprise.

**B. Books and Records Holders, Tax Preparers, and Bookkeepers**

20. A draft form of document requests proposed for Books and Records Holders, Tax Preparers, and Bookkeepers is attached as **Exhibit B**. Choice seeks tax returns, workpapers, supporting schedules, source materials, communications, engagement and payment records, and retention and storage information sufficient to determine what financial and ownership information these persons received, relied upon, prepared, or transmitted concerning the Debtor and related entities. These requests are narrowly tailored to identify the records these persons maintained, the ownership and related-party information reflected in those materials, the treatment of intercompany transfers and other significant transactions, and whether those materials bear on the Debtor's assets, liabilities, financial condition, affairs, and estate administration.

a. Anwer Azam CPA PC. Anwer Azam CPA PC signed the Debtor's 2022, 2023, and 2024 tax returns as tax preparer.[18] Mr. Azam's workpapers and communications may identify what ownership information he received, from whom he received it, and how the Debtor's tax returns came to reflect K-1s for multiple members despite corporate documents identifying a single sole member. His records may also reveal the source of the capital contribution figures that appear on the K-1s.

b. Sudha Potla and Jai Singh. The Debtor's second amended statement of financial affairs (ECF No. 58) identifies both as persons in possession of the Debtor's books and records when the bankruptcy case was filed.

[18] Anwer Azam CPA PC was identified as a books-and-records holder in the bankruptcy of *Charm Hospitality LLC*, Case No. 20-50880-nmc (Bankr. D. Nev.), ECF No. 53., another Galaxy-managed hotel that used the same P.O. Box as Galaxy, listed Galaxy as a creditor, and had Larry Williams as its corporate representative. These common elements suggest that Mr. Azam may possess knowledge of a broader pattern of similar accounting and ownership practices across Galaxy-affiliated debtors, and his records could shed light on whether the discrepancies seen in this case are isolated or systemic.

Documents from these individuals are necessary to understand how financial information was compiled, who controlled access to the Debtor's records, and the basis for the ownership interests reflected in the Debtor's tax filings.

c. Gaurav Arora, Ankit Batra, Naveen Kumar, and Vibhu Kaul. The Debtor's second amended statement of financial affairs (ECF No. 58) identifies all four as accountants and bookkeepers who maintained the Debtor's books and records within the two years before filing. Choice needs documents from these individuals to trace the flow of financial information to the tax preparer, identify who made entries reflecting the intercompany transfers and capital contributions, and determine whether records exist that support or contradict the characterizations in the Debtor's ledgers.

d. Cindy Sillivent, Luis Dominguez, Carlos Cuevas, Scott Nadel, Brinka, Nayana, Mahjabeen "JB" Abbas, Dhanrag, Rahul, and Priyinka.[19] Jagmohan Dhillon and Larry Williams identified each of these individuals in their depositions or testimony as current or former Galaxy employees who performed accounting, administrative, or operational functions.[20] Because Galaxy served as the Debtor's property manager and maintained certain of the Debtor's financial records, these individuals may possess documents, communications, or personal knowledge concerning the

---

[19] Neither Mr. Dhillon nor Mr. Williams could recall the last names of certain Galaxy employees, so Choice includes only first names for Brinka, Nayana, Dhanrag, Rahul, and Priyinka.

[20] Deposition of Jagmohan Dhillon (ECF No. 53, Ex. A); Deposition of Larry Williams (ECF No. 53, Ex. B), Tr. (Jan. 14, 2026).

Debtor's books and records, the preparation and flow of financial information, the recording and characterization of intercompany transfers, and the persons who directed or approved such entries. Documents from these individuals are necessary to determine what records they created, received, or maintained concerning the Debtor; who directed or approved entries in the Debtor's ledgers; and whether those materials bear on the Debtor's assets, liabilities, financial condition, and estate administration.

21. The books and records produced to date include in part the Debtor's 2022, 2023, and 2024 tax returns and attached K-1s, corporate formation and ownership documents, and the 2024 and 2025 General Ledgers. Those materials reveal that: (a) the as-filed tax returns identify at least ten distinct members, while the corporate documents represent that a single entity is the sole member; (b) on January 1, 2025, the General Ledger retroactively recharacterized over $7 million in 2024 equity contributions and distributions as intercompany loan transfers, without any contemporaneous loan documentation, board authorization, or interest calculations; and (c) certain K-1s attribute capital contributions to individuals whom Mr. Dhillon testified made no such contributions. These inconsistencies (and others) cannot be reconciled from the Debtor's own records and require production of the underlying workpapers, source materials, and communications from the persons who prepared them.

22. Choice therefore seeks document production from the Books and Records Holders, Tax Preparers, and Bookkeepers listed above because those persons and entities are the most likely sources of the books, workpapers, source materials, and communications necessary to explain what information was provided to the tax preparers, how the Debtor's ownership and related-party

transactions were reported, and whether those materials bear on the Debtor's assets, liabilities, financial condition, affairs, and estate administration.

### C. Parties to Intercompany Affiliate Equity Contributions or Loans

23. The Debtor filed its initial statement of financial affairs on November 7, 2025. ECF No. 26. That filing did not indicate any affiliate or insider transfers. *See id*. But on or about November 25, 2025, the Debtor produced a spreadsheet to Choice reflecting purported "affiliate" payments/transfers (the "Insider Payment Spreadsheet").[21] The Insider Payment Spreadsheet evidences $3,322,577.12 in total "[l]oan payback" since June 9, 2022 (outgoing payments from the Debtor to various related entities) and $7,264,900 in "[l]oan [sic] from [o]ther properties." The various entities are noted in shorthand rather than by formal entity title. The Debtor attached a PDF version of that spreadsheet to its second amended statement of financial affairs. ECF No. 58.

24. Separately, the Debtor produced its purported 2024 and 2025 General Ledgers to Choice on or about December 10, 2025. Various 2024 General Ledger entries under Account 31000, 'Contribution/Distribution,' a subset of the 30000 'Equity' account, and under Account 32000, 'Retained Earnings,' reflect equity contributions and distributions from and to various entities, many of which have the same or similar shorthand titles as those who made loans to the Debtor or received loan repayments from the Debtor as reflected in the Insider Payment Spreadsheet. Those 2024 equity distributions total $4,276,723.33 and contributions total $7,277,041.29. Effective January 1, 2025, the 2025 General Ledger recharacterizes all the 31000 entries as 21005 Intercompany Loan Transfers. Throughout 2025, additional journal entries reflect millions of dollars in further Intercompany Loan Transfers. While many of those overlap with the Insider Payment Spreadsheet, several do not.

---

[21] The Insider Payment Spreadsheet transactions are consolidated in Choice Ex. 25.

25. As part of its January 7, 2026 document production, the Debtor provided account screenshots purporting to show Jagmohan Dhillon's ability to make a cash contribution to a plan of reorganization. Those screenshots, however, reflect deposit accounts held by Galaxy HG Mahwah LLC and Legacy Hotel LLC, not accounts held by Mr. Dhillon personally. Choice seeks discovery from these entities to determine who owns and controls these funds, whether the funds are encumbered or restricted, and whether Jagmohan Dhillon or the Debtor has any legal right to use these funds for plan purposes.

26. Those material inconsistencies, the absence of contemporaneous transaction documentation, and the Debtor's apparent reliance on affiliate funds for plan purposes, together with the Debtor's payment of affiliate credit card obligations and other apparent commingling reflected in the books and records, indicate that these entities functioned as part of a broader enterprise controlled by Jagmohan Dhillon, who moved funds among them without regard for corporate formalities or corporate separateness.[22] Choice therefore requires discovery from these affiliate entities to assemble the full documentary record, trace the flow of funds across Related Parties, and determine the extent to which the lines among the Debtor and its affiliates were blurred.

27. A draft form of document requests proposed for Parties to Intercompany Affiliate Equity Contributions or Loans is attached to this Omnibus Motion as **Exhibit C**. Choice seeks organizational documents, authority records, books and records, transaction-level financial

[22] At the January Evidentiary Hearing, the Debtor's counsel acknowledged in his opening statement that Mr. Dhillon's affiliated hotels engage in "pooling of their resources" such that "[i]f one hotel is short on cash, say around payroll time, one of the other hotels can make a short-term loan to that hotel quick and cheaply." Tr. (Jan. 13, 2026) at 13:1-6. Larry Williams, the Debtor's corporate representative, similarly testified that "at times the affiliates were—money was borrowed or loaned. And this was taking place prior to the bankruptcy as it was needed." *Id*. at 46:11-13. When asked whether there was any documentation for these intercompany loans, Mr. Dhillon testified: "No." ECF No. 53, Ex. A at 26:21-23. Notably, the Debtor's Amended and Restated Operating Agreement requires the Debtor to operate as a special purpose entity with "separate books, separate records, no commingling, [and] no cash management system of moving money around." Choice Ex. 5; Tr. (Jan. 13, 2026) at 23:13-16.

materials, bank and payment records, communications, tax materials, and retention and storage information sufficient to determine what transactions occurred between these entities and the Debtor or Galaxy, how those transactions were authorized, recorded, and characterized, and what financial and ownership information these entities maintained concerning those dealings. These requests are narrowly tailored to identify the records these entities maintained, the nature and purpose of the transfers, contributions, loans, repayments, distributions, recharacterizations, and potential plan funding sources reflected in those materials, and whether those transactions bear on the Debtor's assets, liabilities, financial condition, affairs, and estate administration.

28. Across the Insider Payment Spreadsheet, 2024 and 2025 General Ledgers, and Debtor-produced plan contribution evidence, the following entities[23] are named as receiving or providing funds from or to the Debtor, whether characterized as equity contributions, intercompany loans, credit card payments, or potential plan funding sources:

a. Known Affiliate Entities: 23rd Avenue Hotel Partners 1 LLC; 23rd Avenue Hotel Partners 2 LLC; 9th Avenue Hotel Partners LLC; D 2760 Santa S LLC; D 3145 Santa N LLC; D Airport SLC LLC; D Airport Operating LLC; D Aurora Hotel LLC; D Boulder LLC; D Burrito LLC; D Cali LLC; D Cap LLC; D Casa Investment LLC; D Clara Operating LLC; D Fort Hotel LLC; D Koval LLC; D Koval Mezz LLC; D Lassen LLC; D Lehi LLC; D Martin LLC; D Mid Operating LLC; D Midvale LLC; D Mod Hotel LLC; D

[23] The Debtor's general ledgers and the Insider Payment Spreadsheet used ambiguous or shorthand names for certain counterparties. Choice has attempted to match these names with entities that are known affiliates, have a connection to Jagmohan or Amandeep Dhillon, or share common ownership with the Debtor. Because the identity of some counterparties cannot be determined with certainty from the available records, this list may be overbroad. However, where the records reflect names that closely resemble known affiliates, Choice believes discovery from those entities is appropriate because the Debtor cannot be relied upon to accurately identify the actual counterparties to these transactions. To the extent Choice has not correctly identified the actual counterparty to a transaction, Choice seeks discovery from the actual counterparty as well as the named party; any misidentification does not limit Choice's right to obtain discovery from the true counterparty.

Murray LLC; D Ogden Hotel LLC; D Pet Motel LLC; D Pet Motel Operating LLC; D Petaluma LLC; D Reno Hotel LLC; D RI Tracy LLC; D Rosa North LLC; D Rosa North Operating LLC; D Rosa South LLC; D Rosa South Operating LLC; D Shiri Food LLC; D Shiri LLC; D Silicon LLC; D SF Hotel LLC; D Thor Hotel LLC; D Trac Hotel LLC; D Tracy T LLC; D Tur Hotel LLC; D Walnut LLC; D Wood Hotel LLC; Dhillon Hospitality LLC; Dhillon Hospitality I LLC; Dhillon Hotel LLC; Galaxy; Gurughar Inc.; Koval Motel LLC; Sacramento Airport Lodging LLC; Salt Lake Guest LLC; Salt Lake Hotels LLC; SLC TP TX LLC; Thornco Hospitality Holdings LLC.

b. <u>Unidentified or Ambiguously Named Entities</u>: D SFO/DSF; LA Quinta; Residence In Fargo; SLC MAIN; and SLC Airport.

c. <u>Presumed Non-Affiliate Counterparties</u>: DM Funding LLC, First American Title Insurance, Greystone Servicing Company LLC, Chicago Title Insurance, and G6 Hospitality Franchising.

d. <u>Credit Card Accounts, Holders, and Authorized Users</u>: Dirigo Hospitality LLC (and/or Dirigo Hospitality Procurement, LLC),[24] Galaxy Hotels, D Winne Hotel LLC, Jagmit Mann, Jagmohan Dhillon, Jasspreet Dhillon, Manish Panchal, Narinder Dhillon.

[24] Texas Secretary of State records reflect a separate entity, Dirigo Hospitality Procurement, LLC (Texas SOS File No. 0802733774), formed on May 31, 2017, with Scott Nadel listed as a member on the 2025 Public Information Report. Nadel is a former Galaxy COO. Because the credit card statements reference "Dirigo Hospitality LLC" at the Galaxy-affiliated Preston Trace address while Dirigo Hospitality Procurement, LLC is registered at a Scottsdale, Arizona address, Choice includes both entities on the basis that they may be related or that one may be the actual counterparty to transactions attributed to the other.

**e.** Affiliates Identified in Plan Contribution Evidence: Galaxy HG Mahwah LLC[25] and Legacy Hotel LLC.

**D. Other Loan and Transaction Counterparties**

29. Choice also seeks document production from third party lenders, servicers, title and escrow agents, and payment processors that appear in the Debtor's ledgers, bank statements, or closing files, as well as related guarantors, co-obligors, and affiliated obligors identified in applicable financing materials produced by Galaxy in connection with the Trustee Motion. These parties possess unique evidence of Debtor transactions needed to trace cash, verify encumbrances, and evaluate potential claims. A draft form of document requests proposed for Other Loan and Transaction Counterparties is attached as **Exhibit D.**

30. Choice seeks production from the following Other Loan and Transaction Counterparties, some of which appear in the Debtor's General Ledger, liability subaccounts, Title & Closing entries, or bank statements, and others of which are identified in related loan documents, guaranties, security instruments, schedules, or related financing materials, each of which possesses evidence necessary to trace cash flows, verify encumbrances, and evaluate potential claims:

a. NewcrestImage CH LLC.[26] The Debtor's ledger includes a liability subaccount (Account 2220) for NewcrestImage. The Debtor's General

---

[25] "Galaxy HG Mahwah LLC" includes Galaxy HG Mahwah LLC (NV Business ID E23034002022-2), Galaxy HG Mahwah Member LLC (DE File Number 10064677), and Galaxy HG Mahwah LLC, a New Jersey Foreign Limited Liability Company (Entity ID 0450826216).

[26] Notably, NewcrestImage Holdings, LLC, the apparent affiliate of NewcrestImage CH LLC, is owned in part by Chirag Patel and Mehul Patel, who were co-defendants with Jagmohan Dhillon in previous federal litigation. In *Chhabra v. Patel*, Case No. 2:11-cv-03724-RGK-VBK (C.D. Cal. 2011), plaintiffs alleged that Dhillon operated multiple affiliated entities, including Dhillon Management, Inc., Starlite Hotels, LLC, and New Hope Hospitality, LLC, as "mere shells and a sham," and that Dhillon "used the assets of [those entities] for his own use, freely transferred property between them, commingled funds, and kept inadequate and deficient corporate records." Second Amended Complaint, ECF No. 55 at ¶ 28 (C.D. Cal. Sept. 16, 2011). On information and belief, NewcrestImage may own or be affiliated with American Bank of Dallas ("AB Bank"), the undisclosed bank where the Debtor maintained Account 1887 with over $3 million in activity during 2024; both Chirag Patel and Mehul Patel serve on the board of directors of AB Bank. Additionally, Texas Secretary of State records reflect that NewcrestImage Capital I, LLC and

Ledger reflects an August 14, 2024 journal entry showing a $227,785 payoff to NewcrestImage, with the memo indicating the loan was "paid off from Galaxy" and the entry recorded against the Debtor's equity account. Galaxy's document production confirms that on March 19, 2024, Jagmohan Dhillon personally executed a promissory note in the amount of $228,267.04 payable to NewcrestImage Capital Holdings LLC. On the same date, NewcrestImage paid $228,267.04 to Greystone Servicing Company LLC on behalf of the Debtor for mortgage interest, and the Debtor's ledger recorded this as a liability to NewcrestImage (Account 2220). On April 12, 2024, Jagmohan Dhillon transferred and assigned his personal note obligations to D San Jose LLC, and the Debtor assumed all payment obligations. Accordingly, the August 14, 2024 payoff appears to have satisfied what originated as Jagmohan Dhillon's personal debt, which was subsequently shifted to the Debtor. Choice seeks documents reflecting NewcrestImage's lending relationships with the Debtor, Galaxy, the Dhillons, and their affiliated entities, including any loans, promissory notes, guaranties, collateral assignments, payment records, and related communications.

b. DM Funding LLC, Itria Ventures LLC, Stabilis Lending LLC, and Black Bear Capital. The Debtor's ledger reflects liability subaccounts for DM

---

its member, NewcrestImage Capital Holdings, maintain their mailing address at 1785 State Highway 26, Suite 400, Grapevine, Texas 76051—the same address used by Galaxy HG Austin, LLC and Galaxy Holding Group, LLC in their Texas filings. NewcrestImage's public website (https://newcrestimage.com/contact/) confirms this as the company's corporate contact address. The shared headquarters address, combined with the prior litigation relationship and the banking connection, suggests that the NewcrestImage and Galaxy enterprises may operate in close coordination and that transactions between them may not have been conducted at arm's length.

Funding LLC (Account 2670), Itria Ventures LLC (Account 2221), and Stabilis Lending LLC (Account 2260), and Title & Closing entries (Account 11000) referencing Black Bear Capital, indicating that lender payoffs and closing costs were recorded in the Debtor's books and should be corroborated with third-party records.

c. Orchid Hotels. The Debtor's 2022 Chase account statements show multiple ACH debits to "Orchid Hotels," with descriptors such as "Tax Impoun," "Billing," and "Emp Dd," suggesting payroll withdrawals. On information and belief, Orchid Hotels may be shorthand for Orchid Global Hospitality LLC.[27] Choice seeks records sufficient to identify the nature and authorization of these debits, whether Orchid Hotels is shorthand for Orchid Global Hospitality LLC, and Orchid Hotels' relationship to the Debtor's operations.

d. GreenLake Asset Management LLC/GreenLake Real Estate Finance LLC. In May 2022, Jagmohan Dhillon caused the Debtor to encumber its hotel to secure GreenLake's $92.71 million portfolio loan for affiliated projects. The Debtor's most recent amended schedules list GreenLake Asset Management LLC as holding a disputed $10 million secured claim.[28] Choice seeks documents sufficient to determine the chain of debt, any payoff or partial release, and any continuing cross-default or cross-

[27] According to his CV, Larry Williams has worked for Orchid Global Hospitality, LLC from August 2014 to present. Debtor Ex. U. Texas Secretary of State records confirm that Orchid Global Hospitality, LLC was formed on August 28, 2014 (Texas SOS File No. 0802054452), lists Jagmit Mann as member, and uses the same mailing address (8762 Preston Trace Blvd, Frisco, TX 75033) and P.O. Box (P.O. Box 2145, Frisco, TX 75034) as Galaxy.

[28] ECF No. 47.

collateralization rights affecting the Debtor. Choice also seeks targeted production from the related GreenLake guarantors, co-obligors, and affiliated obligors identified below because their records may show how GreenLake obligations were guaranteed, cross-collateralized, allocated, enforced, or satisfied and whether those obligations affected the Debtor's assets, liabilities, or cash flows.

i. <u>Related GreenLake guarantors, co-obligors, and affiliated obligors.</u> Amandeep Dhillon; Harwant Dhillon; Jagmohan Dhillon; Mandeep Kaur Dhillon; Narinder Dhillon; Paramjit Kaur; Surendar Singh; 70th Hospitality Operations LLC, D 2760 Santa S LLC; D 3145 Santa N LLC; D Airport SLC LLC; D Aurora Hotel LLC; D Cali LLC; D Cap LLC; D Center LLC; D Farm LLC; D Flag T LLC; D Fort Hotel LLC; D Greeley LLC; D Lassen LLC; D Lehi LLC; D Midvale LLC; D Mod Hotel LLC; D Murray LLC; D Ogden Hotel LLC; D Petaluma LLC; D Reno Hotel LLC; D SF Hotel LLC; D Shiri LLC; D Silicon LLC; D Thor Hotel LLC; D Town LLC; D Trac Hotel LLC; D Vaca Hotel LLC; D Walnut LLC; D Winne Hotel LLC; D Wood Hotel LLC; DIA Investments LLC; Elko Hospitality Inc.; Galaxy Management Company LLC; Pueblo TX Hotels LLC; Sierra Hospitality Inc.; and Sparks Hotels LLC.

e. <u>Underground Lending LLC</u>. In October 2023, Underground Lending LLC made a $2 million portfolio loan to multiple affiliate entities, including the Debtor. Choice seeks the note, guaranties, security instruments, default and

forbearance communications, and payment histories sufficient to determine whether Underground obligations or defaults drove intercompany transfers reflected in the Debtor's ledgers. Choice also seeks targeted production from the related Underground guarantors and co-obligors identified below because their records may show how Underground obligations were incurred, guaranteed, allocated, enforced, or satisfied and whether those obligations or defaults drove transfers reflected in the Debtor's ledgers.

i. Related Underground guarantors and co-obligors. Jagmohan Dhillon, Amandeep Dhillon, D Tur Hotel LLC, D Trac Hotel LLC, D Mod Hotel LLC, D Lassen LLC, D Walnut LLC, and SLC TP TX LLC.

f. Title and Brand Counterparties. First American Title Insurance; Chicago Title Insurance; Greystone Servicing Company LLC; and G6 Hospitality Franchising appear in ledger and closing entries. Choice seeks closing files, escrow ledgers, disbursement histories, franchise invoices, and payment histories to reconcile ledger entries, confirm the routing and application of funds, and test for misapplication or avoidable transfers.

## III. DENIAL OF RULE 2004 DISCOVERY WOULD IMPEDE ESTATE ADMINISTRATION

31. Denial of the requested Rule 2004 discovery would materially impede estate administration. Rule 2004's object is "to show the condition of the estate [and] to enable the court to discover its extent and whereabouts, and to come into possession of it." *Cameron*, 231 U.S. at 717. And where inadequate recordkeeping creates a need for documents "to establish the financial history of the Debtors and to identify invoices and contracts related to transfers to and from the

Debtors," Rule 2004 discovery is appropriate. *McClain*, 661 B.R. at 139. Delay is especially prejudicial where "the estate . . . will suffer if causes of action are lost because of a dilatory investigation." *Mirant*, 326 B.R. at 356.

32. The present record reflects conflicting ownership information, inconsistent tax reporting, substantial affiliate transfers, and accounting entries later recharacterized from equity to debt. Without discovery from the Related Parties, Choice, the Trustee, and other parties in interest cannot reliably determine the extent of estate property, identify who controlled the Debtor, reconcile the Debtor's books with its tax reporting and insider-transfer schedules, or evaluate potential claims. *See Millennium*, 562 B.R. at 627 (finding good cause where the requested examinations were necessary "to determine the scope of viable claims"); *Wash. Mut.*, 408 B.R. at 49 (authorizing Rule 2004 discovery to investigate ownership disputes and potential business-tort, fraudulent-transfer, turnover, and preference claims); *Recoton*, 307 B.R. at 756–57 (holding Rule 2004 discovery was appropriate where it was a "legitimate attempt to investigate potential claims that might benefit the bankruptcy estates").

## **<u>CONCLUSION</u>**

33. For all the reasons above, the Court should grant Choice's Omnibus Motion and enter an order substantially in the form of the Proposed Order, authorizing Choice to serve serve subpoenas and document requests substantially in the form attached as Exhibits A, B, C, and D on the Related Parties identified in Schedule 1 of the Proposed Order, together with such other and further relief to which Choice may be justly entitled.

Date: May 13, 2026

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Hugh M. Ray, III*

Hugh M. Ray, III
TX Bar No. 24004246
Joshua Stenhjem
TX Bar No. 24151465
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: 713-276-7600
Facsimile: 713-276-7634
hugh.ray@pillsburylaw.com
joshua.stenhjem@pillsburylaw.com

*--and--*

Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
Andrew V. Alfano
N.Y. Bar No. 5525241
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com
andrew.alfano@pillsburylaw.com

*Counsel for Choice Hotels International, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to LBR 2004(a)(2)(B), I, Joshua Stenhjem, certify as follows:

On April 22, 2026, I emailed John Paul Stanford, counsel for the Debtor, D San Jose, LLC, requesting a conference regarding the scope, timing, manner, and form of document production, and whether Related Parties would produce documents voluntarily. On April 29, 2026, Andrew Alfano spoke with Mr. Stanford, who stated that he represents only the Debtor and does not believe Choice should coordinate discovery of Related Parties through him.

On April 29, 2026, I emailed Mark Castillo of Carrington, Coleman, Sloman & Blumenthal, L.L.P., former counsel of record for Jagmohan Dhillon and Amandeep Dhillon [ECF No. 49], requesting that he confirm which Related Parties he represents and provide availability for a meet and confer. Mr. Castillo responded that his firm was withdrawing and that he did not believe substitute counsel had been engaged. Mr. Castillo withdrew from the case on May 4, 2026 [ECF No. 114].

On May 11, 2026, I conferred with counsel for Itria Ventures LLC regarding the relief requested in this Motion, including the scope of the requested Rule 2004 discovery, the requests directed to Itria, and the timing and manner of production. Counsel for Itria stated that he had reviewed the draft motion and document requests and forwarded them to Itria, but had not yet discussed them with his client. Counsel did not state any objection at that time, indicated that he anticipated Itria would produce responsive, nonprivileged documents in its possession, custody, or control, and did not object to Choice filing this Motion with this certificate of conference. Counsel also stated that Itria does not object in principle to a production deadline tied to entry of the Court's Rule 2004 order. Itria reserves all rights.

Accordingly, Choice was unable to reach agreement regarding the scope or terms of document production from the Related Parties. Given the number of Related Parties identified in Schedule 1 to the proposed order, Choice could not determine whether all are represented by counsel. Choice is therefore serving this Omnibus Motion with an accompanying letter requesting that each recipient confer with Choice within 48 hours of receipt. Choice will attempt to meet and confer with all recipients before seeking entry of an order compelling production.

*/s/ Joshua Stenhjem*
Joshua Stenhjem

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2026, a true and correct copy of this document was served via the Court's CM/ECF system on all parties who are deemed to have consented to electronic service, and on all parties on the attached master mailing list. The undersigned further certifies that on May 13, 2026, a copy of this document, together with an accompanying meet and confer letter, will be served via first-class mail upon the registered agents of the Related Parties identified in Schedule 1 to the Proposed Order.

*/s/ Hugh M. Ray, III*
Hugh M. Ray, III