# EXHIBIT A

## Control Persons and Members Document Requests

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D SAN JOSE LLC,** | § | **Case No. 25-43157 (BTR)** |
| **Debtor.** | § | **Chapter 11** |
| | § | |

**[FORM OF] FIRST SET OF DOCUMENT REQUESTS TO**

**[CONTROL PERSONS AND MEMBERS] PURSUANT TO BANKRUPTCY RULE 2004**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), incorporating Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), and the *Order Authorizing Rule 2004 Discovery from Related Parties* [Docket No. ___] entered on [DATE], Choice Hotels International, Inc. ("Choice"), a creditor of the above-captioned debtor ("D San Jose LLC" or the "Debtor"), by and through its undersigned counsel, hereby serves these Requests for Production (the "Requests for Production" or "Requests," each a "Request") on [RECIPIENT]. The Definitions and Instructions that appear below form an integral part of the Requests that follow and must be read in conjunction with them and followed when responding to the Requests.

Responsive documents shall be produced in accordance with the instructions set forth herein at a place to be mutually agreed upon between counsel for Choice and [RECIPIENT], on or before [DATE].

## DEFINITIONS

Choice incorporates by reference all the instructions, definitions, and rules contained in the Federal Rules and the Bankruptcy Rules, and for purposes of the Requests, the following definitions shall apply:

1. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its definition under the bankruptcy code (and specifically including but not limited to 11 U.S.C. § 101) or, if not defined there, then the usual and customary dictionary definition.

2. The terms defined herein should be construed broadly to the fullest extent of their meaning.

3. "Account" means any bank, brokerage, investment, retirement, crypto, credit, or other financial account.

4. "Affiliate" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101.

5. "Anwer Azam" means Anwer Azam CPA PC, including Anwer Azam individually, and any of its current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, predecessors, successors, and any other Person acting or purporting to act on its behalf, including any Person involved in preparing, reviewing, or transmitting tax returns, workpapers, trial balances, adjusting entries, or related communications for the Debtor or any Galaxy Affiliated Person.

6. "Any" means "each and every" as well as "any one."

7. "Asset" or "Assets" means any thing defined as an asset under FASB standards and also includes any thing, tangible or intangible, which can be owned or controlled or conveyed including specifically, but not limited to, "controllable electronic records" as defined by Article

12 of the Uniform Commercial Code, bitcoin, digital currencies, blockchain powers, and/or private keys to any of those.

8. "Associated Person" means any of the following entities and individuals, and any of their respective predecessors, successors, assigns, affiliates, or any Person acting on their behalf: (i) Abbas Consulting Inc.; (ii) Accurate Builders Inc.; (iii) ADJ Family LLC; (iv) Altus Hospitality LLC; (v) C&D Family Holdings, LLC; (vi) Camelot Hospitality LLC; (vii) Capital Structures LLC; (viii) Charm Hospitality LLC; (ix) Chirag Patel; (x) Chisholm Hotels LLC; (xi) Corsicana Lodging LLC; (xii) Cosmo Hotels Management LLC; (xiii) D & D Hospitality LLC; (xiv) D Hayward LLC; (xv) D Office LLC; (xvi) Daxesh Patel; (xvii) Denison Lodging, LLC; (xviii) Denver Gateway LLC; (xix) Dhillon Elko LLC; (xx) Dhillon Group LLC; (xxi) Dhillon Hospitality LLC; (xxii) Dhillon Management LLC; (xxiii) Dhillon Management Inc.; (xxiv) Dhillon Properties LLC; (xxv) Dynamite Office LLC; (xxvi) Dynasty Holdings LLC; (xxvii) Elko Gold Mine LLC; (xxviii) Elko Hospitality LLC; (xxix) Emerald Hospitality LLC; (xxx) Ennis Lodging, LLC; (xxxi) Flagstaff Hotels LLC; (xxxii) Frisco Acquisition LLC; (xxxiii) Galaxy Construction LLC; (xxxiv) Galaxy HG Austin LLC; (xxxv) Galaxy HG Birmingham LLC; (xxxvi) Galaxy HG Chicago LLC; (xxxvii) Galaxy HG Fort Wayne LLC; (xxxviii) Galaxy HG Kansas City LLC; (xxxix) Galaxy HG Somerset LLC; (xl) Galaxy HG Westlake LLC; (xli) Galaxy HG Wichita LLC; (xlii) Galaxy Holding Group JD LLC; (xliii) Galaxy Holding Group LLC; (xliv) Global Paper Equipment Suppliers LLC; (xlv) Gurender S. Sahani; (xlvi) Harminder Dhillon; (xlvii) Harwant Dhillon; (xlviii) Keystone Holdings LLC; (xlix) Luxara Threads LLC; (l) Meecham Hospitality LLC; (li) Mehul Patel; (lii) Mid West Hotel Lodging LLC; (liii) Midvale Lodging LLC; (liv) Milan G. Mody LLC; (lv) Mount Pleasant Properties LLC; (lvi) New Hope Hospitality LLC; (lvii) NewcrestImage Holdings LLC; (lviii) NewcrestImage Capital Holdings,

LLC; (lix) NewcrestImage CH LLC; (lx) NewcrestImage Capital I, LLC; (lxi) Newcrest Hotels Ltd; (lxii) OK Hotels LLC; (lxiii) Orchid Global Hospitality LLC; (lxiv) Parkwood Hospitality LLC; (lxv) Patel Family Trust; (lxvi) Premium Hotel Management, Inc.; (lxvii) REH Vegas One LLC; (lxviii) SageStar Holdings, Ltd; (lxix) SageStar Management GP, LLC; (lxx) SageStar Family, LLC; (lxxi) Sanjay Patel; (lxxii) SGTB Lodgings LLC; (lxxiii) Shawnee Hospitality LLC; (lxxiv) Sherman DE LLC; (lxxv) Signature Hospitality, LLC; (lxxvi) SMF TX Hotels LLC; (lxxvii) Starlite Hotels, LLC; (lxxviii) Sunfish Rentals LLC; (lxxix) Tarlochan S. Kataria; (lxxx) Thornco Hospitality Holdings LLC; (lxxxi) Todd Hanan; (lxxxii) Universal Hospitality Solutions LLC; (lxxxiii) Valor Consulting LLC; (lxxxiv) Voyage Capital Group Inc.; (lxxxv) Wax Hotels LLC; (lxxxvi) West Texas Hotels, LLC; (lxxxvii) Winnemucca Hospitality LLC; (lxxxviii) Winterset Hotel LLC; (lxxxix) World Paper Machinery International LLC; (xc) Abhejit Singh Dhillon; (xci) Bawa Dhillon; (xcii) Bobby Dhillon; (xciii) Gurpreet Kaur Dhillon; (xciv) Hamriner Dhillon; (xcv) Livpartap Dhillon; (xcvi) Michelle Bajwa; (xcvii) Rajdeep Dhillon; (xcviii) Shubham Garg; (xcix) Vijaypal Dhillon; (c) William Deep Singh; and (ci) Yadewinder Singh Dhillon.

9. "Bankruptcy Case" means *In re D San Jose LLC*, Case No. 25-43157 (BTR) (Bankr. E.D. Tex.).

10. "Black Bear" means Black Bear Capital Partners LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Black Bear" or "Black Bear Capital" name in whole or in part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

11. "Communication" refers to, in addition to its customary and usual meaning, every means of transmitting information from one to another by contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to, letters, memoranda, reports, emails, text messages, instant messages, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all means of other correspondence.

12. "Concerning" or "relating to" means evidencing, supporting, regarding, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, related to, referencing, discussing, indicating, pertaining to, setting forth, showing, disclosing, explaining, enumerating, listing, summarizing, reflecting, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

13. "Control Person" has the meaning given to it under Delaware law and also means any person who, by their act, invocation or power, or influence can cause a corporate action to take place.

14. "Debtor" means D San Jose LLC, or otherwise relating to the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131, and/or any Affiliate or any other Person or entity acting on the Debtor's behalf.

15. "Document" or "Documents" include the term Electronically Stored Information and refer to documents broadly defined in Rule 34 of the Federal Rules, including: (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements; (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as electronic mail (e-mail), electronic chats, instant messages, text messages, or any other use of ephemeral communications services; and (iii) any other writings, records, or tangible objects produced or reproduced mechanically, electronically, or otherwise. Without limiting the foregoing in any way, every Communication is also a Document.

16. "DM Funding" means DM Funding LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "DM Funding" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

17. "DMI" or "Dhillon Management" means Dhillon Management, Inc., a California corporation, and Dhillon Management, LLC, a Texas limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Dhillon Management," "DMC Hotels," or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

18. "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules, and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable.

19. "G6 Hospitality" means G6 Hospitality Franchising LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) G6 Hospitality LLC; (ii) G6 Hospitality Property LLC; (iii) G6 Hospitality Franchise; (iv) Motel 6 Operating LP; (v) Studio 6 (and any related Studio 6 entity); (vi) any entity using the "G6 Hospitality," "Motel 6," or "Studio 6" name in whole or part; and (vii) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to the franchisor counterparty to any franchise agreement with the Debtor, any Galaxy Affiliated Person, or any Associated Person relating to the operation of a Motel 6 or Studio 6 branded property.

20. "Galaxy" means Galaxy Management Company, LLC, together with any entity operating under or associated with the trade name "Galaxy Hotels Group," and any predecessor, successor, affiliate, parent, subsidiary, or related management, hospitality, or construction entity, including but not limited to: (i) DMC Hotels; (ii) Dhillon Management; (iii) Dhillon Management, Inc.; (iv) Dhillon Management, LLC; (v) Orchid Global Hospitality LLC; (vi) Universal Hospitality Solutions LLC; (vii) Galaxy Construction LLC; (viii) Galaxy Holding Group LLC; (ix) Galaxy Holding Group JD LLC; (x) Legacy Funding; (xi) Premium Hotel Management, Inc.;

and (xii) any other Person using the "Galaxy" or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

21. "Galaxy Affiliated Person" means (i) Galaxy; (ii) the Debtor; (iii) D San Jose RE LLC; (iv) Jose Motel LLC; (v) Jagmohan Dhillon; (vi) Amandeep Dhillon; (vii) any Person or entity identified on Schedule 1 to the *Order Granting Motion for Document Production from Related Parties Under FRBP 2004* (ECF No. ___) or referenced in Choice's *Omnibus Motion For Document Production from Related Parties Under Federal Rule of Bankruptcy Procedure 2004* (ECF No. ___) as an affiliate, intercompany counterparty, or party to equity contributions or loans with the Debtor; and (viii) any other Insider and/or Affiliate, specifically also including any Person identified in the Debtor's books and records, general ledger, Insider Transfer Spreadsheet, schedules, statement of financial affairs, or other filings as an Affiliate, Control Person, related entity, Insider, or intercompany counterparty during the Relevant Period and/or any holder of Assets for You or Galaxy.

22. "GreenLake" means GreenLake Asset Management LLC, GreenLake Real Estate Finance LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "GreenLake" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

23. "Greystone" means Greystone Servicing Company LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to

Greystone & Co., Inc., Greystone Funding Company LLC, and any entity using the "Greystone" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any loan servicer for any loan secured by the Debtor's property.

24. "Including" means including but not limited to.

25. "Itria" means Itria Ventures LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to any entity using the "Itria," "Itria Ventures," or "Biz2Credit" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to: (i) any party to any receivables sale agreement, merchant cash advance, or similar financing arrangement with the Debtor or any Galaxy Affiliated Person; (ii) Elko Hospitality, Inc. as co-merchant under any receivables sale agreement with the Debtor; and (iii) D Casa Investment, LLC as guarantor under any receivables sale agreement with the Debtor, in each case together with any guarantors, co-obligors, co-merchants, or additional parties added by amendment or joinder to any such financing arrangement.

26. "Insider" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101, and also includes Control Persons and Affiliates.

27. "Insider Transfer Spreadsheet" means the spreadsheet produced by the Debtor to Choice on or about November 25, 2025 reflecting purported "affiliate" payments and transfers, which evidences $3,322,577.12 in total "[l]oan payback" since June 9, 2022 (outgoing payments

from the Debtor to various related entities) and $7,264,900 in "[l]oan from [o]ther properties" (incoming funds), and which was attached in truncated form to the Debtor's first and second amended statements of financial affairs (ECF Nos. 48 and 58), together with any updates, amendments, corrections, or supplements thereto.

28. "Messages" means all means of conveying information in an electronic or printed form from one Person or human to any other Person or human, specifically including but not limited to any printed and/or electronic copies of email, electronic text, chat, or direct messages sent on any platform, including, but not limited to, SMS, iMessage, WhatsApp, Signal, Confide, Telegram, Facebook, Instagram, X (formerly Twitter), Slack, Microsoft Teams, Google Chat, etc.

29. "NewcrestImage" means NewcrestImage Capital Holdings, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) NewcrestImage CH LLC; (ii) NewcrestImage Capital LLC; (iii) NewcrestImage Capital I, LLC; (iv) NewcrestImage LLC; (v) NewcrestImage Holdings LLC; (vi) Newcrest Hotels Ltd; (vii) any entity using the "NewcrestImage" or "Newcrest" name in whole or part; and (viii) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to Chirag Patel, Mehul Patel, Sanjay Patel, Daxesh Patel, and any lender, noteholder, or secured party on any loan, promissory note, pledge agreement, deed of trust, guaranty, collateral assignment, or other financing arrangement with the Debtor, Galaxy, Jagmohan Dhillon, Amandeep Dhillon, or any Galaxy Affiliated Person.

30. "Orchid" means Orchid Hotels, Orchid Global Hospitality, LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the

"Orchid" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

31. "Person" means and includes (i) any "person" within the meaning of 11 U.S.C. § 101(41) and (ii) any other individual or entity or arrangement of any kind (whether or not incorporated, whether or not having separate legal personality, and whether domestic or foreign) that may own, hold, receive, transfer, manage, control, or beneficially enjoy any asset or interest, including without limitation: any corporation, Hindu Undivided Family under Indian law, anstalt, Stiftung, Treuunternehmen, Treuhand, verein, einfache Gesellschaft, "Society" under Indian law, Modaraba company, Mudarabah, Musharakah, Waqf, Takaful, limited liability company, professional corporation/association, nonprofit corporation, Protected Cell Companies or Incorporated Cell Companies (and/or each cell / compartment) under Indian or other law, Private Trust Company, partnership of any kind (general, limited, limited liability, limited liability limited), joint venture, business trust, statutory trust, common-law trust, estate, foundation, endowment, association, society, cooperative, syndicate, unincorporated association or organization, special purpose vehicle, cell/series/compartment (including protected or incorporated cells), investment fund or unit trust, and any governmental or quasi-governmental body or instrumentality (to the extent permitted by applicable law). Also, "Person" includes, when applied to any entity or arrangement, any of its or their directors, officers, shareholders, members, partners, managers, trustees, settlors, protectors, enforcers, council members, beneficiaries, employees, agents, attorneys, accountants, consultants, nominees, custodians, or other representatives acting (or purporting to act) on that Person's behalf, and any predecessor, successor, assign, affiliate, parent, subsidiary, division, branch, or alter ego of any of the foregoing,

including (but not limited to) any of the above with bearer shares of which you have ever been the bearer.

32. "Relevant Period" means January 1, 2019 to present.

33. "Stabilis" means Stabilis Lending, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to Stabilis Capital Management, LP and any entity using the "Stabilis" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, deed of trust, guaranty, or other financing arrangement with the Debtor or any Galaxy Affiliated Person.

34. "Tax Return Member" means each Person identified in any of the Debtor's federal or state income tax return, Schedule K-1, capital account reconciliation, partner basis worksheet, or other tax workpaper of the Debtor as holding (directly or indirectly) any membership, equity, capital, profits, or losses interest in the Debtor at any time during the Relevant Period, whether current or former, including without limitation: Amandeep Dhillon; Jagmohan Dhillon; Milan G. Mody; JAV Ghelani Holdings LLC; Sanjeev Bhanot; Sudha L. Potla; Vijay Mathur; Mazbauddin Mahabub; Piyush Ghelane/Ghelani; and Ronak Khichadia, and any successor, predecessor, assignee, nominee, or entity acting on behalf of any such Person.

35. "Underground" means Underground Lending, LLC, a Georgia limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Underground" or "Underground Lending" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees,

agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, security agreement, guaranty, or other financing arrangement with the Debtor, any Galaxy Affiliated Person, or any Associated Person.

36. "You" or "Your" means [RECIPIENT], and/or any Affiliate or any Person or entity acting on Your behalf, and/or that You control as Control Person, Officer, Trustee, or Director or otherwise. For the avoidance of doubt, when a Request asks for Documents, Communications, or Messages between You and any other Person, the Request includes Documents between [RECIPIENT] and that Person.

37. The singular form of a word shall include the plural form, and the plural form shall include the singular form.

38. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

## INSTRUCTIONS

1. Unless otherwise specified in any request, the requests seek documents generated, transmitted or received.

2. Each request for documents requires the production of all documents described herein, in your possession, custody or control, including but not limited to those documents in the custody or possession of your current or former members, direct or indirect subsidiaries, parents, affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives or investigators.

3. All documents are to be produced as kept in the usual course of business or organized and labeled to correspond to the specific requests set forth below.

4. In responding to each request, if any document requested has been amended (including by an amendment and restatement), or any waiver, consent, supplement, forbearance or other similar instrument has been entered into in connection with such document, furnish each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or other similar instrument.

5. In responding to each request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary documents related to each document produced.

6. All drafts of responsive documents must be produced, as well as all non-identical copies. Any comment, notation, or other marking shall be sufficient to distinguish documents that are otherwise similar in appearance and to make them separate documents for purposes of your response. Likewise, any draft, preliminary form, or superseded version of any document is also to be considered a separate document.

7. To the extent applicable, furnish executed versions of each document requested.

8. The file folder or other container in which a document is kept is deemed to be an integral part of the document and shall be produced with the document.

9. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

10. If, in answering these requests, you claim any ambiguity in interpreting either these requests or a definition or instruction applicable thereto, you shall not use such claims as a basis

for refusing to respond, but shall identify as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

11. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

12. If you object to any part of a request, produce documents responsive to all parts of the request to which you do not object.

13. These requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional documents responsive to these requests after the time of the initial response.

14. If any document called for by these requests is withheld under a claim of privilege or protection, that document need not be produced but you shall with respect to that document:

a. identify each person who prepared or participated in the preparation of the document, and the date the document was created;

b. identify each person who ever sent or received the document;

c. state the present location of the document and all copies thereof;

d. describe the nature of the document; and

e. state the grounds asserted as the reason for non-production, and explain and substantiate the claim of privilege, so as to permit adjudication of the propriety of that claim.

15. If there are no documents responsive to a specific request, so state in writing.

16. If any document requested was, but is no longer, in your possession, custody or control, state the subject matter of the document, what disposition was made of it, and the date or dates on which such disposition was made. Additionally, produce all documents concerning the disposition of such document.

17. If you are unable to locate any document requested, state all efforts that have been made to locate it, and identify any individual who you believe is likely to possess any information regarding the present location of the document.

18. If you know of any documents responsive to a particular request but cannot produce them, so state, produce the documents within your possession, custody or control on the subject matter sought, and identify each person whom you believe has documents responsive to the Request.

19. For documents maintained in paper format, the following specifications should be used for production:

a. Scanned images should be produced as single-page black-and-white TIFF files in group IV format imaged at 300 dpi (or color JPEG).

b. Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

c. Each production volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

d. To the extent that documents have been run through Optical Character Recognition (OCR) software in the course of reviewing the Documents for production, full text should also be delivered for each document. Text should be delivered on a document level and may be included in an appropriately formatted text file (.TXT) that is named to match the first Bates number of the document.

20. For documents that originated and are maintained in electronic format ("Electronically Stored Information"), the following specifications should be used for production:

a. Documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, backup tape, or other location) where the documents are stored and, where applicable, the person in whose possession they were found, or on whose hardware device they reside or are stored. If the storage location was a file share or work group folder, that should be specified as well.

b. Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately referenced to the respective parent documents containing the attachments, enclosures, and/or exhibits.

c. For standard documents, emails, and presentations originating in electronic form, documents should be produced as TIFF images using the same specifications as set forth above for paper documents, with a delimited text file (using the delimiters detailed below) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) Custodian; (vi) Original Location Path*; (vii) Email Folder Path*; (viii) Document Type; (ix) Author; (x) Title; (xi) File Name; (xii) File Ext; (xiii) File Size; (xiv) MD5 Hash; (xv) Date Last Modified; (xvi) Date Created; (xvii) Date Sent; (xviii) Time Sent [HH:MM:SS]; (xix) MessageID; (xx) Date Received; (xxi) From; (xxii) Recipients; (xxiii) Copyees; (xxiv) Blind Copyees; (xxv) Pages; (xxvi) Email Subject; (xxvii) Native link path; and (xxviii) Extracted Text (not OCR Text) produced as separate .TXT files.

21. When converting Electronically Stored Information from its native format into its production format: (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; and (f) auto-populated fields shall be replaced with descriptive text for the item. For example, auto-populating "page number" fields shall be replaced with the text "PAGE #," auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "PATH" (or other similar text).

22. To the extent documents in a foreign language are produced, processing of such documents shall be Unicode-compliant.

23. Additional special processing of certain Electronically Stored Information will be as follows: Microsoft Excel spreadsheet files will not be converted to TIFF files and will be

produced in native format. A placeholder TIFF image will be created, Bates numbered, and the produced Excel file will be renamed to match the Bates number on its corresponding placeholder page. The exception will be for redacted spreadsheets which will be produced in TIFF format as specified above. Images for the redacted spreadsheets will display the content in the same manner as if it were printed. The extractable metadata and text will be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

24. Upon review, a request may be made for certain other documents that were initially produced in their static (TIFF or PDF) format to be produced in their native format in the event that the static version is not reasonably usable. Such documents will be identified by Bates numbers. For structured information contained within databases parties are to meet and confer on the form of production prior to production.

25. Documents produced shall be provided with (i) Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production. The database load file shall include a reference to any native files that are produced.

26. Unless otherwise agreed, document productions shall be produced in the following manner: The producing party shall provide the production data through file transfer protocol (FTP, Accellion, or other) as a default or on encrypted external hard drives for larger volumes, as appropriate. The producing party shall encrypt the production data using Endpoint, Bit locker, or equivalent 256-bit encryption, and the producing party shall forward the password to decrypt the production data separately (via email or other commercially reasonable means) from the external drive on which the production data is saved.

27. You shall produce all documents responsive to any of the following requests in the possession or custody of any of the advisors or counsel to you.

**DOCUMENT REQUESTS**

Unless otherwise stated herein, the relevant time period for the document requests is the Relevant Period.

1. Documents relating to all Assets owned, held, controlled, or beneficially owned by You (individually or jointly) wherever located (including, without limitation, the United States and India), including real property; vehicles and other titled property; personal property of material value; cash and cash equivalents; and any promissory notes receivable or other rights to payment.

2. Documents relating to all Accounts held, controlled, or used by You (individually or jointly) during the Relevant Period, including institution name, account title/owner(s), and the last four digits.

3. Monthly statements and transaction detail for all Accounts identified in response to Request 2, including wire/ACH detail and check images, to the extent in Your possession, custody, or control.

4. Documents relating to all safe deposit boxes held, controlled, or used by You (individually or jointly) during the Relevant Period.

5. Any Documents relating to Communications with any Person who holds, controls, manages, or owns Assets on Your behalf or for Your benefit, including but not limited to nominees, trustees, custodians, or agents.

6. Any Documents showing Your ability to control any Person or act as a Control Person of any Person, including any Galaxy Affiliated Person or Associated Person.

7. Documents relating to any entity in which You held any direct or indirect ownership interest or control right during the Relevant Period, including but not limited to operating

agreements, membership schedules, cap tables/membership ledgers, assignments, consents, subscription documents, side letters, board minutes, manager resolutions, member consents, unanimous written consents, and other governance documents reflecting authority, including any Documents reflecting or relating to the membership/equity interests of any Member.

8. Documents relating to Your actions or directions as a manager, officer, director, agent, and/or Control Person (and/or any signatory authority or authority to direct payments) of the Debtor, Galaxy, D San Jose RE LLC, Jose Motel LLC, or any Galaxy Affiliated Person.

9. All board minutes, manager resolutions, member consents, unanimous written consents, and other governance documents for the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, and any Galaxy Affiliated Person during the Relevant Period, including any Documents reflecting additions or withdrawals of members, changes to ownership percentages, capital account adjustments, or authorizations of intercompany transfers.

10. Any Documents relating to Communications between You and any Tax Return Member, or concerning the ownership interests, capital contributions, distributions, or K-1 treatment of any Tax Return Member, at any time during the Relevant Period.

11. Documents and Communications sufficient to identify and evidence (a) each Associated Person with whom You have any relationship, including but not limited to ownership, control, employment, agency, familial, business, or financial relationships, (b) the nature and duration of each such relationship, and (c) the relationship between such Associated Persons and the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, and any Galaxy Affiliated Person.

12. All Documents and Communications relating to any Tax Return Member, "silent member," "silent partner," or similar arrangement concerning the Debtor, Galaxy, or any Galaxy Affiliated Person, including any agreements, correspondence, side letters, or Communications

describing the nature, rights, obligations, capital contributions, or profit/loss allocations of any such Person.

13. Any Documents relating to any list or schedule of Assets owned by the Debtor, Galaxy, or any Galaxy Affiliated Person at any time during the Relevant Period.

14. All Documents and Communications between You, the Debtor, Galaxy, or any Galaxy Affiliated Person and Anwer Azam at any time during the Relevant Period, including but not limited to Communications relating to tax returns, workpapers, trial balances, adjusting entries, general ledger entries, and financial statements.

15. All Documents or Communications relating to financial or management strategies relating to the Debtor's cash flow, intercompany transfers, debt service, or capital structure, implemented for the Debtor, D San Jose RE LLC, or the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131.

16. All Documents and Communications relating to auditing, financial analysis, forecasting, and budgeting done for the Debtor, D San Jose RE LLC, or the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131.

17. Personal tax returns during the Relevant Period, including all schedules and K-1s received and all Documents and Communications transmitted by You (or at Your direction) to any tax preparer relating to preparation of such returns, including questionnaires, organizers, spreadsheets, summaries of income/expenses, account statements, and supporting documentation, to the extent in Your possession, custody, or control.

18. Documents sufficient to identify and explain transfers, distributions, loans, capital contributions, reimbursements, and payments between You and the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, and any Tax Return Member, including

purpose/consideration and supporting documentation, and any Documents relating to the reclassification, recharacterization, or adjustment of any such transaction from equity to debt or debt to equity.

19. Documents sufficient to identify payments made by You on behalf of the Debtor or any Galaxy Affiliated Person and payments made by the Debtor or any Galaxy Affiliated Person for Your benefit.

20. All Documents and Communications relating to the recharacterization of equity contributions, equity distributions, or capital account entries as intercompany loans, including but not limited to: (a) board resolutions, member consents, or other authorization documents; (b) promissory notes, loan agreements, or other debt instruments; (c) interest calculations or payment schedules; (d) journal entries and adjusting entries, including any entries effective January 1, 2025 or thereafter reclassifying Account 31000 (Contribution/Distribution) entries as Account 21005 (Intercompany Loan Transfers); (e) Communications with accountants, bookkeepers, or tax preparers concerning such recharacterization; and (f) any Documents explaining or justifying such recharacterization.

21. All Documents and Communications relating to GreenLake, including but not limited to: (a) loan agreements, promissory notes, and amendments; (b) guaranties and indemnities; (c) security agreements, deeds of trust, mortgages, and collateral assignments; (d) cross-collateralization and cross-default provisions; (e) default notices, forbearance agreements, and workout communications; (f) payment histories and application of payments; and (g) any Documents relating to the encumbrance of the Debtor's property to secure obligations of any Affiliate or Insider.

22. All Documents and Communications relating to Underground, including but not limited to: (a) loan agreements, promissory notes, and amendments; (b) guaranties; (c) security agreements and collateral assignments; (d) default notices and forbearance communications; (e) payment histories; and (f) any Documents showing whether Underground obligations or defaults drove intercompany transfers reflected in the Debtor's ledgers.

23. All Documents and Communications relating to NewcrestImage, including but not limited to: (a) promissory notes executed by Jagmohan Dhillon, Amandeep Dhillon, Galaxy, or any Galaxy Affiliated Person, including but not limited to the March 19, 2024 promissory note in the amount of $228,267.04 executed by Jagmohan Dhillon and the January 24, 2020 promissory note in the original principal amount of $1,000,000 executed by Galaxy (as modified by the Third Loan Modification Agreement dated March 1, 2023 increasing the principal to $2,000,000 as a revolving line of credit); (b) loan agreements, pledge and security agreements, deeds of trust, and collateral assignments; (c) guaranties executed by Jagmohan Dhillon, Amandeep Dhillon, Surendar J. Singh, Narinder K. Dhillon, Wax Hotels LLC, Pueblo TX Hotels LLC, D Fort Hotel LLC, Dhillon Hotel LLC, Dhillon Hospitality LLC, any Galaxy Affiliated Person, or any Associated Person; (d) assignments, assumptions, modifications, or transfers of debt obligations, including but not limited to the April 12, 2024 Assigned, Assumed, Restated and Amended Promissory Note transferring Jagmohan Dhillon's personal obligation to D San Jose LLC; (e) payment records, loan modification agreements, and draw requests or advances under any revolving credit facility; and (f) any Documents showing whether Debtor funds were used to satisfy obligations that originated as personal or affiliate debts.

24. All Documents relating to any loan, advance, or transfer from DM Funding, Itria, Stabilis, or Black Bear to or for the benefit of the Debtor, including but not limited to: (a) loan

agreements and promissory notes; (b) security agreements and collateral assignments; (c) closing statements and disbursement records; (d) payment histories; and (e) any Documents showing whether such funds were routed through the Debtor's equity accounts rather than liability accounts.

25. All Documents and Communications relating to the payoff of Stabilis in connection with the Choice loan closing on August 7, 2024, including but not limited to: (a) payoff letters, payoff statements, or estoppel certificates; (b) calculations of principal, interest, fees, and any other amounts paid to Stabilis; (c) release or satisfaction documents, including any reconveyance of the deed of trust; (d) wire transfer confirmations or other evidence of payment; (e) any Communications with Stabilis or its counsel regarding the payoff; and (f) any Documents reflecting the allocation or source of funds used to pay off Stabilis.

26. All Documents and Communications relating to Choice or any loan, financing, or other transaction with Choice, including but not limited to: (a) loan applications, term sheets, commitment letters, and correspondence regarding the $21.7 million loan closed on August 7, 2024; (b) any representations, warranties, or certifications made to Choice in connection with the loan closing; (c) any side letters, verbal agreements, or understandings with Choice not reflected in the executed loan documents; (d) any Communications with Choice or its counsel regarding the Debtor's ownership structure, capital contributions, intercompany loans, or the use of loan proceeds; (e) any Documents relating to the franchise relationship between G6 Hospitality and Choice, including Documents relating to the Park Inn conversion; (f) any post-closing Communications with Choice regarding defaults, notices, or the Bankruptcy Case; and (g) any Documents reflecting Your knowledge of any misrepresentation or omission made to Choice.

27. All Documents and Communications relating to any payments made by the Debtor or any Galaxy Affiliated Person to any lender, servicer, or creditor after August 7, 2024 (the date

of the Choice loan closing), including but not limited to payments to DM Funding, NewcrestImage, Greystone, GreenLake, or Underground.

28. All Documents and Communications relating to the following wire transfers from D San Jose LLC from the East West Bank Account ending in 3331 to G6 Hospitality [account L1 240911] on September 11, 2024: (a) 24764493 in the amount of $1,152.31; (b) 24763970 in the amount of $51,269.72; (c) 24763199 in the amount of $56,244.44; (d) 24763707 in the amount of $177,933.77; and (e) 24763429 in the amount of $238,624.72.

29. All Documents and Communications relating to transaction D San Jose LLC to Chicago Title Insurance 111014325 BNF CONT. US – OBI:ESCROW 4711023060 in the amount of $200,000 on August 14, 2024.

30. All Documents relating to any Account maintained at American Bank of Dallas (also referred to as "AB Bank"), including but not limited to the account ending in 1887, including: (a) all account statements, whether monthly, quarterly, or otherwise, from account opening through the present; (b) all account opening documents, signature cards, resolutions, and documents identifying authorized signatories or Persons with access to or control over the Account; (c) all wire transfer records, ACH transaction records, and check images for the Account; (d) all Documents relating to transfers to or from the Account involving any Galaxy Affiliated Person; (e) all Documents relating to the wire transfer of approximately $2,250,000 to First American Title Insurance Company on or about August 6, 2024; (f) all correspondence with American Bank of Dallas regarding the Account; (g) any Documents relating to the opening, closing, or termination of the Account, including any Communications explaining the reasons for closure; and (h) any Documents relating to the decision not to disclose the Account on any version of the Debtor's schedules or statement of financial affairs.

31. All Documents and Communications concerning any relationship, affiliation, joint venture, co-investment, partnership, common ownership, shared management, or coordinated business activity between NewcrestImage and You, Galaxy, the Debtor, Jagmohan Dhillon, Amandeep Dhillon, or any Galaxy Affiliated Person, including but not limited to: (a) any joint hotel acquisition, development, management, or financing arrangement; (b) any shared office space, mailing address, or administrative services; (c) any banking relationship with American Bank of Dallas or any bank at which Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel serves as director, officer, or shareholder; (d) Documents concerning the relationship between NewcrestImage and American Bank of Dallas, including any ownership, control, or board representation; (e) Documents concerning account ending in 1887 at American Bank of Dallas, including account opening documents, authorized signatories, and transaction records; (f) Documents reflecting the basis for the shared headquarters address at 1785 State Highway 26, Suite 400, Grapevine, Texas 76051; (g) Communications between Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel and Jagmohan Dhillon, Amandeep Dhillon, or any other Dhillon family member concerning any Galaxy Affiliated Person or any hotel asset or financing; and (h) Documents sufficient to identify any direct or indirect ownership interest held by Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel in any Galaxy Affiliated Person or by any Dhillon in any NewcrestImage entity.

32. All Documents and Communications relating to franchise agreements whether actual or prospective, franchise relationships, or other financial or business relationships relating to the operation, management, or ownership of the Debtor’s property between You, Jagmohan Dhillon, Amandeep Dhillon, Galaxy, including anyone acting on their behalf, and G6 Hospitality

related to D San Jose LLC, D San Jose RE LLC, or the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131.

33. All Documents and Communications relating to Orchid, including but not limited to payroll records, ACH debit authorizations, billing records, employment records, any management or services agreements, and any Documents explaining the relationship between Orchid and the Debtor, Galaxy, any Galaxy Affiliated Person and/or any Associated Person, including any Documents reflecting Larry Williams's role with Orchid.

34. All Documents and Communications relating to credit card accounts for which You were an account holder, authorized user, or signatory, to the extent any charges on such accounts were paid by the Debtor or any Galaxy Affiliated Person, including but not limited to: (a) credit card statements; (b) authorized user designations; (c) charge detail and receipts; (d) any Documents reflecting payment or reimbursement by the Debtor or Galaxy Affiliated Person; and (e) any Documents identifying credit card accounts held by Dirigo Hospitality LLC, Galaxy Hotels, D Winne Hotel LLC, or any other affiliate for which the Debtor made payments.

35. All Documents and Communications relating to any credit card account for which any Galaxy Affiliated Person, Associated Person, or Insider was an account holder, authorized user, or signatory, to the extent any charges on such account were paid by the Debtor, including but not limited to accounts held by or listing as authorized users Jagmit Mann, Jasspreet Dhillon, Manish Panchal, or Narinder Dhillon.

36. Documents relating to liens, security interests, pledges, guaranties, judgments, confessions of judgment, and other encumbrances or contingent liabilities affecting Your Assets and/or ownership interests.

37. Documents sufficient to identify any Assets held by, transferred to, or received from any Associated Person during the Relevant Period, including but not limited to: (a) deeds, titles, or ownership records; (b) bank account records reflecting transfers; (c) assignment or conveyance Documents; and (d) any Documents showing the source of funds used by any Associated Person to acquire Assets.

38. All Communications between You and any of the following relating to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, any Tax Return Member, and transfers/transactions among them, including Communications relating to bank accounts, credit cards, loans, transfers, ownership interests, governance, and funding, in the form maintained in the ordinary course, with attachments preserved: (a) Anwer Azam; (b) The Debtor; (c) Galaxy; (d) D San Jose RE LLC; (e) Jose Motel LLC; (f) Amandeep Dhillon; (g) Jagmohan Dhillon; (h) Larry Williams; (i) Any Tax Return Member; (j) Any Associated Person; (k) Any Galaxy Affiliated Person; (l) G6 Hospitality; (m) GreenLake; (n) Underground; (o) NewcrestImage; (p) Sudha L. Potla; (q) Jai Singh; (r) Any bookkeeper or accounting contractor working on the Debtor or related entities; (s) DM Funding; (t) Itria; (u) Stabilis; (v) Black Bear; and (w) Any lender, servicer, title company, or escrow agent identified in the Debtor's ledgers or closing files.

39. All Documents and Communications relating to any transaction, business relationship, partnership, joint venture, or other arrangement between You or any Galaxy Affiliated Person and any Associated Person, including but not limited to: (a) hotel acquisition or disposition transactions; (b) construction or development projects; (c) management agreements; (d) loan or financing arrangements; (e) equity investments; (f) profit-sharing, "finder's fee," or commission arrangements; (g) any Documents relating to the disclosure or non-disclosure of

financial arrangements to investors, lenders, or third parties; and (h) any Documents relating to the use of "Contract for Deed" or land sale contract structures.

40. All Documents and Communications relating to any lawsuit, claim, demand, investigation, or proceeding (whether pending or resolved) involving You, Galaxy, any Galaxy Affiliated Person, or any Associated Person, concerning fraud, misrepresentation, breach of fiduciary duty, RICO violations, unfair business practices, bank fraud, wire fraud, or any similar allegations, including but not limited to all complaints, answers, discovery, depositions, court orders, settlement agreements, and releases.

41. All Documents and Communications relating to any bankruptcy case, insolvency proceeding, receivership, assignment for the benefit of creditors, or similar proceeding (whether pending or resolved) involving You, Galaxy, any Galaxy Affiliated Person, or any Associated Person, including but not limited to all petitions, schedules, statements of financial affairs, proofs of claim, motions, orders, plans of reorganization, disclosure statements, adversary proceedings, and related pleadings or correspondence.

42. All Documents and Communications concerning Your authority, agency, or relationship with the Debtor, Galaxy, any Galaxy Affiliated Person, or any Associated Person, including Documents sufficient to identify each such Person and describe the nature and basis of Your relationship with them, to the extent not otherwise responsive to the Requests above.

Date: [DATE] **PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:______________________________

Hugh M. Ray, III
TX Bar No. 24004246
Joshua Stenhjem
TX Bar No. 24151465
609 Main Street, Suite 2000
Houston, TX 77002

Telephone: 713-276-7600
Facsimile: 713-276-7634
hugh.ray@pillsburylaw.com
joshua.stenhjem@pillsburylaw.com

*--and--*

Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
Andrew V. Alfano
N.Y. Bar No. 5525241
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com
andrew.alfano@pillsburylaw.com

*Counsel for Choice Hotels International, Inc.*