# EXHIBIT B

## Books and Records Holders, Tax Preparers, and Bookkeepers Document Requests

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D SAN JOSE LLC,** | § | **Case No. 25-43157 (BTR)** |
| **Debtor.** | § | **Chapter 11** |
| | § | |

**[FORM OF] FIRST SET OF DOCUMENT REQUESTS TO**
**[BOOKS AND RECORDS HOLDERS, TAX PREPARERS, AND BOOKKEEPERS]**
**PURSUANT TO BANKRUPTCY RULE 2004**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), incorporating Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), and the *Order Authorizing Rule 2004 Discovery from Related Parties* [Docket No. ___] entered on [DATE], Choice Hotels International, Inc. ("Choice"), a creditor of the above-captioned debtor ("D San Jose LLC" or the "Debtor"), by and through its undersigned counsel, hereby serves these Requests for Production (the "Requests for Production" or "Requests," each a "Request") on [RECIPIENT]. The Definitions and Instructions that appear below form an integral part of the Requests that follow and must be read in conjunction with them and followed when responding to the Requests.

Responsive documents shall be produced in accordance with the instructions set forth herein at a place to be mutually agreed upon between counsel for Choice and [RECIPIENT], on or before [DATE].

## DEFINITIONS

Choice incorporates by reference all the instructions, definitions, and rules contained in the Federal Rules and the Bankruptcy Rules, and for purposes of the Requests, the following definitions shall apply:

1. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its definition under the bankruptcy code (and specifically including but not limited to 11 U.S.C. § 101) or, if not defined there, then the usual and customary dictionary definition.

2. The terms defined herein should be construed broadly to the fullest extent of their meaning.

3. "Account" means any bank, brokerage, investment, retirement, crypto, credit, or other financial account.

4. "Affiliate" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101.

5. "Anwer Azam" means Anwer Azam CPA PC, including Anwer Azam individually, and any of its current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, predecessors, successors, and any other Person acting or purporting to act on its behalf, including any Person involved in preparing, reviewing, or transmitting tax returns, workpapers, trial balances, adjusting entries, or related communications for the Debtor or any Galaxy Affiliated Person.

6. "Any" means "each and every" as well as "any one."

7. "Asset" or "Assets" means any thing defined as an asset under FASB standards and also includes any thing, tangible or intangible, which can be owned or controlled or conveyed including specifically, but not limited to, "controllable electronic records" as defined by Article

12 of the Uniform Commercial Code, bitcoin, digital currencies, blockchain powers, and/or private keys to any of those.

8. "Associated Person" means any of the following entities and individuals, and any of their respective predecessors, successors, assigns, affiliates, or any Person acting on their behalf: (i) Abbas Consulting Inc.; (ii) Accurate Builders Inc.; (iii) ADJ Family LLC; (iv) Altus Hospitality LLC; (v) C&D Family Holdings, LLC; (vi) Camelot Hospitality LLC; (vii) Capital Structures LLC; (viii) Charm Hospitality LLC; (ix) Chirag Patel; (x) Chisholm Hotels LLC; (xi) Corsicana Lodging LLC; (xii) Cosmo Hotels Management LLC; (xiii) D & D Hospitality LLC; (xiv) D Hayward LLC; (xv) D Office LLC; (xvi) Daxesh Patel; (xvii) Denison Lodging, LLC; (xviii) Denver Gateway LLC; (xix) Dhillon Elko LLC; (xx) Dhillon Group LLC; (xxi) Dhillon Hospitality LLC; (xxii) Dhillon Management LLC; (xxiii) Dhillon Management Inc.; (xxiv) Dhillon Properties LLC; (xxv) Dynamite Office LLC; (xxvi) Dynasty Holdings LLC; (xxvii) Elko Gold Mine LLC; (xxviii) Elko Hospitality LLC; (xxix) Emerald Hospitality LLC; (xxx) Ennis Lodging, LLC; (xxxi) Flagstaff Hotels LLC; (xxxii) Frisco Acquisition LLC; (xxxiii) Galaxy Construction LLC; (xxxiv) Galaxy HG Austin LLC; (xxxv) Galaxy HG Birmingham LLC; (xxxvi) Galaxy HG Chicago LLC; (xxxvii) Galaxy HG Fort Wayne LLC; (xxxviii) Galaxy HG Kansas City LLC; (xxxix) Galaxy HG Somerset LLC; (xl) Galaxy HG Westlake LLC; (xli) Galaxy HG Wichita LLC; (xlii) Galaxy Holding Group JD LLC; (xliii) Galaxy Holding Group LLC; (xliv) Global Paper Equipment Suppliers LLC; (xlv) Gurender S. Sahani; (xlvi) Harminder Dhillon; (xlvii) Harwant Dhillon; (xlviii) Keystone Holdings LLC; (xlix) Luxara Threads LLC; (l) Meecham Hospitality LLC; (li) Mehul Patel; (lii) Mid West Hotel Lodging LLC; (liii) Midvale Lodging LLC; (liv) Milan G. Mody LLC; (lv) Mount Pleasant Properties LLC; (lvi) New Hope Hospitality LLC; (lvii) NewcrestImage Holdings LLC; (lviii) NewcrestImage Capital Holdings,

LLC; (lix) NewcrestImage CH LLC; (lx) NewcrestImage Capital I, LLC; (lxi) Newcrest Hotels Ltd; (lxii) OK Hotels LLC; (lxiii) Orchid Global Hospitality LLC; (lxiv) Parkwood Hospitality LLC; (lxv) Patel Family Trust; (lxvi) Premium Hotel Management, Inc.; (lxvii) REH Vegas One LLC; (lxviii) SageStar Holdings, Ltd; (lxix) SageStar Management GP, LLC; (lxx) SageStar Family, LLC; (lxxi) Sanjay Patel; (lxxii) SGTB Lodgings LLC; (lxxiii) Shawnee Hospitality LLC; (lxxiv) Sherman DE LLC; (lxxv) Signature Hospitality, LLC; (lxxvi) SMF TX Hotels LLC; (lxxvii) Starlite Hotels, LLC; (lxxviii) Sunfish Rentals LLC; (lxxix) Tarlochan S. Kataria; (lxxx) Thornco Hospitality Holdings LLC; (lxxxi) Todd Hanan; (lxxxii) Universal Hospitality Solutions LLC; (lxxxiii) Valor Consulting LLC; (lxxxiv) Voyage Capital Group Inc.; (lxxxv) Wax Hotels LLC; (lxxxvi) West Texas Hotels, LLC; (lxxxvii) Winnemucca Hospitality LLC; (lxxxviii) Winterset Hotel LLC; (lxxxix) World Paper Machinery International LLC; (xc) Abhejit Singh Dhillon; (xci) Bawa Dhillon; (xcii) Bobby Dhillon; (xciii) Gurpreet Kaur Dhillon; (xciv) Hamriner Dhillon; (xcv) Livpartap Dhillon; (xcvi) Michelle Bajwa; (xcvii) Rajdeep Dhillon; (xcviii) Shubham Garg; (xcix) Vijaypal Dhillon; (c) William Deep Singh; and (ci) Yadewinder Singh Dhillon.

9. "Bankruptcy Case" means *In re D San Jose LLC*, Case No. 25-43157 (BTR) (Bankr. E.D. Tex.)

10. "Black Bear" means Black Bear Capital Partners LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Black Bear" or "Black Bear Capital" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

11. "Communication" refers to, in addition to its customary and usual meaning, every means of transmitting information from one to another by contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to, letters, memoranda, reports, emails, text messages, instant messages, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all means of other correspondence.

12. "Concerning" or "relating to" means evidencing, supporting, regarding, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, related to, referencing, discussing, indicating, pertaining to, setting forth, showing, disclosing, explaining, enumerating, listing, summarizing, reflecting, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

13. "Control Person" has the meaning given to it under Delaware law and also means any person who, by their act, invocation or power, or influence can cause a corporate action to take place.

14. "Debtor" means D San Jose LLC, or otherwise relating to the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131, and/or any Affiliate or any other Person or entity acting on the Debtor's behalf.

15. "DM Funding" means DM Funding LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "DM Funding" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

16. "Document" or "Documents" include the term Electronically Stored Information and refer to documents broadly defined in Rule 34 of the Federal Rules, including: (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements; (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as electronic mail (e-mail), electronic chats, instant messages, text messages, or any other use of ephemeral communications services; and (iii) any other writings, records, or tangible objects produced or reproduced mechanically, electronically, or otherwise. Without limiting the foregoing in any way, every Communication is also a Document.

17. "DMI" or "Dhillon Management" means Dhillon Management, Inc., a California corporation, and Dhillon Management, LLC, a Texas limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Dhillon Management," "DMC Hotels," or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

18. "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules, and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable.

19. "G6 Hospitality" means G6 Hospitality Franchising LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) G6 Hospitality LLC; (ii) G6 Hospitality Property LLC; (iii) G6 Hospitality Franchise; (iv) Motel 6 Operating LP; (v) Studio 6 (and any related Studio 6 entity); (vi) any entity using the "G6 Hospitality," "Motel 6," or "Studio 6" name in whole or part; and (vii) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to the franchisor counterparty to any franchise agreement with the Debtor, any Galaxy Affiliated Person, or any Associated Person relating to the operation of a Motel 6 or Studio 6 branded property.

20. "Galaxy" means Galaxy Management Company, LLC, together with any entity operating under or associated with the trade name "Galaxy Hotels Group," and any predecessor, successor, affiliate, parent, subsidiary, or related management, hospitality, or construction entity, including but not limited to: (i) DMC Hotels; (ii) Dhillon Management; (iii) Dhillon Management, Inc.; (iv) Dhillon Management, LLC; (v) Orchid Global Hospitality LLC; (vi) Universal Hospitality Solutions LLC; (vii) Galaxy Construction LLC; (viii) Galaxy Holding Group LLC; (ix) Galaxy Holding Group JD LLC; (x) Legacy Funding; (xi) Premium Hotel Management, Inc.;

and (xii) any other Person using the "Galaxy" or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

21. "Galaxy Affiliated Person" means (i) Galaxy; (ii) the Debtor; (iii) D San Jose RE LLC; (iv) Jose Motel LLC; (v) Jagmohan Dhillon; (vi) Amandeep Dhillon; (vii) any Person or entity identified on Schedule 1 to the *Order Granting Motion for Document Production from Related Parties Under FRBP 2004* (ECF No. ___) or referenced in Choice's *Omnibus Motion For Document Production from Related Parties Under Federal Rule of Bankruptcy Procedure 2004* (ECF No. ___) as an affiliate, intercompany counterparty, or party to equity contributions or loans with the Debtor; and (viii) any other Insider and/or Affiliate, specifically also including any Person identified in the Debtor's books and records, general ledger, Insider Transfer Spreadsheet, schedules, statement of financial affairs, or other filings as an Affiliate, Control Person, related entity, Insider, or intercompany counterparty during the Relevant Period and/or any holder of Assets for You or Galaxy.

22. "GreenLake" means GreenLake Asset Management LLC, GreenLake Real Estate Finance LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "GreenLake" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

23. "Greystone" means Greystone Servicing Company LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to

Greystone & Co., Inc., Greystone Funding Company LLC, and any entity using the "Greystone" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any loan servicer for any loan secured by the Debtor's property.

24. "Including" means including but not limited to.

25. "Itria" means Itria Ventures LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to any entity using the "Itria," "Itria Ventures," or "Biz2Credit" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any party to: (i) any party to any receivables sale agreement, merchant cash advance, or similar financing arrangement with the Debtor or any Galaxy Affiliated Person; (ii) Elko Hospitality, Inc. as co-merchant under any receivables sale agreement with the Debtor; and (iii) D Casa Investment, LLC as guarantor under any receivables sale agreement with the Debtor, in each case together with any guarantors, co-obligors, co-merchants, or additional parties added by amendment or joinder to any such financing arrangement.

26. "Insider" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101, and also includes Control Persons and Affiliates.

27. "Insider Transfer Spreadsheet" means the spreadsheet produced by the Debtor to Choice on or about November 25, 2025 reflecting purported "affiliate" payments and transfers, which evidences $3,322,577.12 in total "[l]oan payback" since June 9, 2022 (outgoing payments

from the Debtor to various related entities) and $7,264,900 in "[l]oan from [o]ther properties" (incoming funds), and which was attached in truncated form to the Debtor's first and second amended statements of financial affairs (ECF Nos. 48 and 58), together with any updates, amendments, corrections, or supplements thereto.

28. "Messages" means all means of conveying information in an electronic or printed form from one Person or human to any other Person or human, specifically including but not limited to any printed and/or electronic copies of email, electronic text, chat, or direct messages sent on any platform, including, but not limited to, SMS, iMessage, WhatsApp, Signal, Confide, Telegram, Facebook, Instagram, X (formerly Twitter), Slack, Microsoft Teams, Google Chat, etc.

29. "NewcrestImage" means NewcrestImage Capital Holdings, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) NewcrestImage CH LLC; (ii) NewcrestImage Capital LLC; (iii) NewcrestImage Capital I, LLC; (iv) NewcrestImage LLC; (v) NewcrestImage Holdings LLC; (vi) Newcrest Hotels Ltd; (vii) any entity using the "NewcrestImage" or "Newcrest" name in whole or part; and (viii) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to Chirag Patel, Mehul Patel, Sanjay Patel, Daxesh Patel, and any lender, noteholder, or secured party on any loan, promissory note, pledge agreement, deed of trust, guaranty, collateral assignment, or other financing arrangement with the Debtor, Galaxy, Jagmohan Dhillon, Amandeep Dhillon, or any Galaxy Affiliated Person.

30. "Orchid" means Orchid Hotels, Orchid Global Hospitality, LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the

"Orchid" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

31. "Person" means and includes (i) any "person" within the meaning of 11 U.S.C. § 101(41) and (ii) any other individual or entity or arrangement of any kind (whether or not incorporated, whether or not having separate legal personality, and whether domestic or foreign) that may own, hold, receive, transfer, manage, control, or beneficially enjoy any asset or interest, including without limitation: any corporation, Hindu Undivided Family under Indian law, anstalt, Stiftung, Treuunternehmen, Treuhand, verein, einfache Gesellschaft, "Society" under Indian law, Modaraba company, Mudarabah, Musharakah, Waqf, Takaful, limited liability company, professional corporation/association, nonprofit corporation, Protected Cell Companies or Incorporated Cell Companies (and/or each cell / compartment) under Indian or other law, Private Trust Company, partnership of any kind (general, limited, limited liability, limited liability limited), joint venture, business trust, statutory trust, common-law trust, estate, foundation, endowment, association, society, cooperative, syndicate, unincorporated association or organization, special purpose vehicle, cell/series/compartment (including protected or incorporated cells), investment fund or unit trust, and any governmental or quasi-governmental body or instrumentality (to the extent permitted by applicable law). Also, "Person" includes, when applied to any entity or arrangement, any of its or their directors, officers, shareholders, members, partners, managers, trustees, settlors, protectors, enforcers, council members, beneficiaries, employees, agents, attorneys, accountants, consultants, nominees, custodians, or other representatives acting (or purporting to act) on that Person's behalf, and any predecessor, successor, assign, affiliate, parent, subsidiary, division, branch, or alter ego of any of the foregoing,

including (but not limited to) any of the above with bearer shares of which you have ever been the bearer.

32. "Relevant Period" means January 1, 2019 to present.

33. "Stabilis" means Stabilis Lending, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to Stabilis Capital Management, LP and any entity using the "Stabilis" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, deed of trust, guaranty, or other financing arrangement with the Debtor or any Galaxy Affiliated Person.

34. "Tax Return Member" means each Person identified in any of the Debtor's federal or state income tax return, Schedule K-1, capital account reconciliation, partner basis worksheet, or other tax workpaper of the Debtor as holding (directly or indirectly) any membership, equity, capital, profits, or losses interest in the Debtor at any time during the Relevant Period, whether current or former, including without limitation: Amandeep Dhillon; Jagmohan Dhillon; Milan G. Mody; JAV Ghelani Holdings LLC; Sanjeev Bhanot; Sudha L. Potla; Vijay Mathur; Mazbauddin Mahabub; Piyush Ghelane/Ghelani; and Ronak Khichadia, and any successor, predecessor, assignee, nominee, or entity acting on behalf of any such Person.

35. "Underground" means Underground Lending, LLC, a Georgia limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Underground" or "Underground Lending" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees,

agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, security agreement, guaranty, or other financing arrangement with the Debtor, any Galaxy Affiliated Person, or any Associated Person.

36. "You" or "Your" means [RECIPIENT], and/or any Affiliate or any Person or entity acting on Your behalf, and/or that You control as Control Person, Officer, Trustee, or Director or otherwise. For the avoidance of doubt, when a Request asks for Documents, Communications, or Messages between You and any other Person, the Request includes Documents between [RECIPIENT] and that Person.

37. The singular form of a word shall include the plural form, and the plural form shall include the singular form.

38. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

## INSTRUCTIONS

1. Unless otherwise specified in any request, the requests seek documents generated, transmitted or received.

2. Each request for documents requires the production of all documents described herein, in your possession, custody or control, including but not limited to those documents in the custody or possession of your current or former members, direct or indirect subsidiaries, parents, affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives or investigators.

3. All documents are to be produced as kept in the usual course of business or organized and labeled to correspond to the specific requests set forth below.

4. In responding to each request, if any document requested has been amended (including by an amendment and restatement), or any waiver, consent, supplement, forbearance or other similar instrument has been entered into in connection with such document, furnish each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or other similar instrument.

5. In responding to each request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary documents related to each document produced.

6. All drafts of responsive documents must be produced, as well as all non-identical copies. Any comment, notation, or other marking shall be sufficient to distinguish documents that are otherwise similar in appearance and to make them separate documents for purposes of your response. Likewise, any draft, preliminary form, or superseded version of any document is also to be considered a separate document.

7. To the extent applicable, furnish executed versions of each document requested.

8. The file folder or other container in which a document is kept is deemed to be an integral part of the document and shall be produced with the document.

9. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

10. If, in answering these requests, you claim any ambiguity in interpreting either these requests or a definition or instruction applicable thereto, you shall not use such claims as a basis

for refusing to respond, but shall identify as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

11. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

12. If you object to any part of a request, produce documents responsive to all parts of the request to which you do not object.

13. These requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional documents responsive to these requests after the time of the initial response.

14. If any document called for by these requests is withheld under a claim of privilege or protection, that document need not be produced but you shall with respect to that document:

a. identify each person who prepared or participated in the preparation of the document, and the date the document was created;

b. identify each person who ever sent or received the document;

c. state the present location of the document and all copies thereof;

d. describe the nature of the document; and

e. state the grounds asserted as the reason for non-production, and explain and substantiate the claim of privilege, so as to permit adjudication of the propriety of that claim.

15. If there are no documents responsive to a specific request, so state in writing.

16. If any document requested was, but is no longer, in your possession, custody or control, state the subject matter of the document, what disposition was made of it, and the date or dates on which such disposition was made. Additionally, produce all documents concerning the disposition of such document.

17. If you are unable to locate any document requested, state all efforts that have been made to locate it, and identify any individual who you believe is likely to possess any information regarding the present location of the document.

18. If you know of any documents responsive to a particular request but cannot produce them, so state, produce the documents within your possession, custody or control on the subject matter sought, and identify each person whom you believe has documents responsive to the Request.

19. For documents maintained in paper format, the following specifications should be used for production:

a. Scanned images should be produced as single-page black-and-white TIFF files in group IV format imaged at 300 dpi (or color JPEG).

b. Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

c. Each production volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

d. To the extent that documents have been run through Optical Character Recognition (OCR) software in the course of reviewing the Documents for production, full text should also be delivered for each document. Text should be delivered on a document level and may be included in an appropriately formatted text file (.TXT) that is named to match the first Bates number of the document.

20. For documents that originated and are maintained in electronic format ("Electronically Stored Information"), the following specifications should be used for production:

a. Documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, backup tape, or other location) where the documents are stored and, where applicable, the person in whose possession they were found, or on whose hardware device they reside or are stored. If the storage location was a file share or work group folder, that should be specified as well.

b. Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately referenced to the respective parent documents containing the attachments, enclosures, and/or exhibits.

c. For standard documents, emails, and presentations originating in electronic form, documents should be produced as TIFF images using the same specifications as set forth above for paper documents, with a delimited text file (using the delimiters detailed below) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) Custodian; (vi) Original Location Path*; (vii) Email Folder Path*; (viii) Document Type; (ix) Author; (x) Title; (xi) File Name; (xii) File Ext; (xiii) File Size; (xiv) MD5 Hash; (xv) Date Last Modified; (xvi) Date Created; (xvii) Date Sent; (xviii) Time Sent [HH:MM:SS]; (xix) MessageID; (xx) Date Received; (xxi) From; (xxii) Recipients; (xxiii) Copyees; (xxiv) Blind Copyees; (xxv) Pages; (xxvi) Email Subject; (xxvii) Native link path; and (xxviii) Extracted Text (not OCR Text) produced as separate .TXT files.

21. When converting Electronically Stored Information from its native format into its production format: (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; and (f) auto-populated fields shall be replaced with descriptive text for the item. For example, auto-populating "page number" fields shall be replaced with the text "PAGE #," auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "PATH" (or other similar text).

22. To the extent documents in a foreign language are produced, processing of such documents shall be Unicode-compliant.

23. Additional special processing of certain Electronically Stored Information will be as follows: Microsoft Excel spreadsheet files will not be converted to TIFF files and will be

produced in native format. A placeholder TIFF image will be created, Bates numbered, and the produced Excel file will be renamed to match the Bates number on its corresponding placeholder page. The exception will be for redacted spreadsheets which will be produced in TIFF format as specified above. Images for the redacted spreadsheets will display the content in the same manner as if it were printed. The extractable metadata and text will be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

24. Upon review, a request may be made for certain other documents that were initially produced in their static (TIFF or PDF) format to be produced in their native format in the event that the static version is not reasonably usable. Such documents will be identified by Bates numbers. For structured information contained within databases parties are to meet and confer on the form of production prior to production.

25. Documents produced shall be provided with (i) Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production. The database load file shall include a reference to any native files that are produced.

26. Unless otherwise agreed, document productions shall be produced in the following manner: The producing party shall provide the production data through file transfer protocol (FTP, Accellion, or other) as a default or on encrypted external hard drives for larger volumes, as appropriate. The producing party shall encrypt the production data using Endpoint, Bit locker, or equivalent 256-bit encryption, and the producing party shall forward the password to decrypt the production data separately (via email or other commercially reasonable means) from the external drive on which the production data is saved.

27. You shall produce all documents responsive to any of the following requests in the possession or custody of any of the advisors or counsel to you.

28. The production shall include a custodian of records declaration sufficient to authenticate the documents produced in response to these Requests as business records, identifying the recordkeeping systems used and confirming whether the production is complete for the requested categories and the Relevant Period (or identifying any gaps).

**DOCUMENT REQUESTS**

Unless otherwise stated herein, the relevant time period for the document requests is the Relevant Period.

1. All federal and state income tax returns for the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Tax Return Member, any Galaxy Affiliated Person, or any Associated Person that You prepared, assisted in preparing, reviewed, or transmitted during the Relevant Period, including all attached schedules and K-1s.

2. All workpapers, trial balances, adjusting journal entries, reconciliations, source documents, and supporting documentation relating to the preparation of any tax return identified in response to Request 1, including documents reflecting the calculation or determination of capital account balances, ownership percentages, profit and loss allocations, and K-1 amounts for each member or partner.

3. All Documents reflecting the identity of each member, partner, or equity holder of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person as reported on any tax return, K-1, or workpaper during the Relevant Period, including any Documents explaining the basis for each ownership interest or capital contribution reported.

4. All Documents reflecting capital contributions, capital account balances, distributions, and profit/loss allocations for each member, partner, or equity holder of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person during the Relevant Period, including any Documents explaining how such amounts were calculated or determined.

5. All Communications between You and the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, Amandeep Dhillon, Larry Williams, Sudha Potla, Jai Singh, or any other Person concerning the ownership, membership, or capital structure of the Debtor, any Galaxy Affiliated Person, or any Associated Person.

6. All Communications between You and the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, Amandeep Dhillon, Larry Williams, or any other Person concerning the preparation, review, filing, or amendment of any tax return identified in response to Request 1.

7. All Communications between You and the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, Amandeep Dhillon, Larry Williams, or any other Person concerning any Tax Return Member, including any "silent member," "silent partner," or similar arrangement.

8. All Documents reflecting or relating to intercompany transfers, intercompany loans, equity contributions, or equity distributions among the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, and any Associated Person, including any workpapers, journal entries, general ledger entries, reconciliations, or supporting schedules.

9. All Documents reflecting or relating to the recharacterization of equity contributions, equity distributions, or capital account entries as intercompany loans, including any journal entries or adjusting entries effective January 1, 2025 or thereafter reclassifying Account 31000 (Contribution/Distribution) entries as Account 21005 (Intercompany Loan Transfers), and any Communications or Documents explaining or justifying such recharacterization.

10. All Documents You prepared, received, reviewed, or maintained concerning any loan, promissory note, guaranty, security agreement, or other debt instrument involving the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including but not limited to any Documents reflecting how such liabilities were recorded, reported, or disclosed on any tax return or financial statement.

11. All general ledgers, trial balances, and financial statements for the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person that You prepared, received, reviewed, or maintained during the Relevant Period.

12. All Documents reflecting Your engagement to provide services to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, or Amandeep Dhillon, including but not limited to engagement letters, retention agreements, fee agreements, scope of work documents, and any amendments thereto.

13. All invoices, billing statements, and payment records reflecting fees charged by You to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, or Amandeep Dhillon, including any Documents identifying the Person or entity that paid such fees.

14. All Documents reflecting Your file retention policies, including any policies concerning the retention, storage, or destruction of client files, workpapers, tax returns, and related

Documents, and any Documents reflecting the current location and status of all files, workpapers, and Documents relating to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person.

15. All Communications between You and Anwer Azam, or any other tax preparer, accountant, bookkeeper, or other Person who prepared, maintained, or had custody of the books and records of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including but not limited to Sudha Potla, Jai Singh, Gaurav Arora, Ankit Batra, Naveen Kumar, Vibhu Kaul, Cindy Sillivent, Luis Dominguez, Carlos Cuevas, Scott Nadel, Dhanrag, Rahul, Brinka, Nayana, Priyinka, or Mahjabeen "JB" Abbas; and all Documents sufficient to identify any other tax preparer(s), accounting firm(s), or bookkeeping service(s) involved during the Relevant Period, including any transition communications, handoff materials, requests for prior-year workpapers, or Documents reflecting the transfer of client files or records between preparers.

16. All Documents You prepared, received, reviewed, or maintained concerning bank accounts held by the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including but not limited to bank statements, account reconciliations, and any Documents reflecting account ownership, authorized signatories, or account activity.

17. All Documents You prepared, received, reviewed, or maintained concerning the American Bank of Dallas account ending in 1887, including any bank statements, reconciliations, or Communications concerning such account.

18. All Documents reflecting any discrepancies, inconsistencies, or errors You identified in the books, records, tax returns, or financial information of the Debtor, Galaxy, Jose

Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, and any Communications concerning such discrepancies, inconsistencies, or errors.

19. All Documents reflecting any questions, concerns, or requests for clarification You raised with the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated Person, Jagmohan Dhillon, Amandeep Dhillon, or Larry Williams concerning the ownership, membership, capital structure, or financial records of the Debtor, any Galaxy Affiliated Person, or any Associated Person, and any responses received.

20. All Documents You created, prepared, received, reviewed, or maintained in the ordinary course of Your accounting, bookkeeping, or tax preparation services that reflect transactions, transfers, payments, or receipts involving the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person.

21. All Documents reflecting Your access to any accounting software, bookkeeping system, or financial record-keeping platform used by the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including any usernames, access credentials, or permissions granted to You.

22. All Documents reflecting journal entries, adjusting entries, or corrections You made or recorded in the books and records of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including any Documents identifying who directed or approved such entries.

23. All Documents reflecting any instructions, directions, or guidance You received from Jagmohan Dhillon, Amandeep Dhillon, Larry Williams, or any other Person concerning the recording, characterization, or treatment of any transaction, transfer, or entry in the books and

records of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person.

24. All Documents You prepared, received, reviewed, or maintained concerning payments made by the Debtor to or for the benefit of any Galaxy Affiliated Person or any Associated Person, or payments made by any Galaxy Affiliated Person or any Associated Person to or for the benefit of the Debtor, including any Documents reflecting the purpose, authorization, or characterization of such payments.

25. All Documents You prepared, received, reviewed, or maintained concerning payments made by the Debtor, any Galaxy Affiliated Person, or any Associated Person to any lender, servicer, or creditor, including but not limited to payments to GreenLake, Underground, NewcrestImage, DM Funding, Itria, Stabilis, Black Bear, Greystone, or Choice.

26. All Documents You prepared, received, reviewed, or maintained concerning credit card accounts for which the Debtor, any Galaxy Affiliated Person, or any Associated Person made payments, including any Documents identifying the account holder, authorized users, or the entities or individuals whose charges were paid by the Debtor, any Galaxy Affiliated Person, or any Associated Person.

27. All Documents You prepared, received, reviewed, or maintained concerning Orchid, Orchid Hotels, or Orchid Global Hospitality LLC, including any Documents reflecting payments, payroll, or other transactions between the Debtor, any Galaxy Affiliated Person, any Associated Person, and Orchid.

28. All Documents You prepared, received, reviewed, or maintained concerning any franchise agreement or franchise relationship involving the Debtor, D San Jose RE LLC, or the

property located at 2560 Fontaine Rd, San Jose, CA 95121-2131, including any Documents reflecting payments to or from G6 Hospitality or any franchisor.

29. All Documents You prepared, received, reviewed, or maintained concerning the Choice loan closing on or about August 7, 2024, including any Documents reflecting the source or use of funds, closing statements, disbursements, payoffs, or wire transfers.

30. All Documents reflecting Your knowledge of or involvement in any filing, disclosure, or representation made by the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person to any lender, creditor, court, or governmental authority, including but not limited to the Debtor's schedules, statement of financial affairs, and any amendments thereto.

31. All Documents reflecting payroll, compensation, or employment records for any Person employed by or providing services to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person that You prepared, received, reviewed, or maintained.

32. All Documents reflecting any asset, property, or account owned, held, or controlled by the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person that You became aware of through Your services, including any schedules, lists, or inventories of assets.

33. All Documents reflecting any audit, review, or examination of the books, records, or financial statements of the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person, including any audit reports, management letters, or findings.

34. All Documents reflecting any Communications with any governmental authority, including the Internal Revenue Service, any state taxing authority, or any other regulatory agency, concerning the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person.

35. All Documents and Communications concerning any relationship, affiliation, joint venture, co-investment, partnership, common ownership, shared management, or coordinated business activity between NewcrestImage and Galaxy, the Debtor, Jagmohan Dhillon, Amandeep Dhillon, or any Galaxy Affiliated Person, including but not limited to: (a) any joint hotel acquisition, development, management, or financing arrangement; (b) any shared office space, mailing address, or administrative services; (c) any banking relationship with American Bank of Dallas or any bank at which Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel serves as director, officer, or shareholder; (d) Documents concerning the relationship between NewcrestImage and American Bank of Dallas, including any ownership, control, or board representation; (e) Documents concerning account ending in 1887 at American Bank of Dallas, including account opening documents, authorized signatories, and transaction records; (f) Documents reflecting the basis for any shared headquarters address; (g) Communications between Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel and Jagmohan Dhillon, Amandeep Dhillon, or any other Dhillon family member concerning any Galaxy Affiliated Person or any hotel asset or financing; and (h) Documents sufficient to identify any direct or indirect ownership interest held by Chirag Patel, Mehul Patel, Sanjay Patel, or Daxesh Patel in any Galaxy Affiliated Person or by any Dhillon in any NewcrestImage entity.

36. All Communications between You and any of the following relating to the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, any Associated

Person, any Tax Return Member, and transfers or transactions among them, in the form maintained in the ordinary course, with attachments preserved: (a) Jagmohan Dhillon; (b) Amandeep Dhillon; (c) Larry Williams; (d) Anwer Azam; (e) Sudha Potla; (f) Jai Singh; (g) Gaurav Arora; (h) Ankit Batra; (i) Naveen Kumar; (j) Vibhu Kaul; (k) Cindy Sillivent; (l) Luis Dominguez; (m) Carlos Cuevas; (n) Scott Nadel; (o) Dhanrag; (p) Rahul; (q) Brinka; (r) Nayana; (s) Priyinka; (t) Mahjabeen "JB" Abbas; (u) any Tax Return Member; (v) any Galaxy Affiliated Person; and (w) any Associated Person.

37. All Documents and Communications concerning Your authority, agency, or relationship with the Debtor, Galaxy, Jose Motel LLC, D San Jose RE LLC, any Galaxy Affiliated Person, or any Associated Person to the extent not otherwise responsive to the Requests above.

Date: [DATE] **PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:______________________________

Hugh M. Ray, III
TX Bar No. 24004246
Joshua Stenhjem
TX Bar No. 24151465
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: 713-276-7600
Facsimile: 713-276-7634
hugh.ray@pillsburylaw.com
joshua.stenhjem@pillsburylaw.com

*--and--*

Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
Andrew V. Alfano
N.Y. Bar No. 5525241
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com

andrew.alfano@pillsburylaw.com

*Counsel for Choice Hotels International, Inc.*