# EXHIBIT C

## Parties to Intercompany Affiliate Equity Contributions or Loans Document Requests

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D SAN JOSE LLC,** | § | **Case No. 25-43157 (BTR)** |
| **Debtor.** | § | **Chapter 11** |
| | § | |

**[FORM OF] FIRST SET OF DOCUMENT REQUESTS TO**
**[PARTIES TO INTERCOMPANY AFFILIATE EQUITY CONTRIBUTIONS OR**
**LOANS] PURSUANT TO BANKRUPTCY RULE 2004**

Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), incorporating Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), and the *Order Authorizing Rule 2004 Discovery from Related Parties* [Docket No. ___] entered on [DATE], Choice Hotels International, Inc. ("Choice"), a creditor of the above-captioned debtor ("D San Jose LLC" or the "Debtor"), by and through its undersigned counsel, hereby serves these Requests for Production (the "Requests for Production" or "Requests," each a "Request") on [RECIPIENT]. The Definitions and Instructions that appear below form an integral part of the Requests that follow and must be read in conjunction with them and followed when responding to the Requests.

Responsive documents shall be produced in accordance with the instructions set forth herein at a place to be mutually agreed upon between counsel for Choice and [RECIPIENT], on or before [DATE].

## DEFINITIONS

Choice incorporates by reference all the instructions, definitions, and rules contained in the Federal Rules and the Bankruptcy Rules, and for purposes of the Requests, the following definitions shall apply:

1. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its definition under the bankruptcy code (and specifically including but not limited to 11 U.S.C. § 101) or, if not defined there, then the usual and customary dictionary definition.

2. The terms defined herein should be construed broadly to the fullest extent of their meaning.

3. "Account" means any bank, brokerage, investment, retirement, crypto, credit, or other financial account.

4. "Affiliate" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101.

5. "Anwer Azam" means Anwer Azam CPA PC, including Anwer Azam individually, and any of its current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, predecessors, successors, and any other Person acting or purporting to act on its behalf, including any Person involved in preparing, reviewing, or transmitting tax returns, workpapers, trial balances, adjusting entries, or related communications for the Debtor or any Galaxy Affiliated Person.

6. "Any" means "each and every" as well as "any one."

7. "Asset" or "Assets" means any thing defined as an asset under FASB standards and also includes any thing, tangible or intangible, which can be owned or controlled or conveyed including specifically, but not limited to, "controllable electronic records" as defined by Article

12 of the Uniform Commercial Code, bitcoin, digital currencies, blockchain powers, and/or private keys to any of those.

8. "Associated Person" means any of the following entities and individuals, and any of their respective predecessors, successors, assigns, affiliates, or any Person acting on their behalf: (i) Abbas Consulting Inc.; (ii) Accurate Builders Inc.; (iii) ADJ Family LLC; (iv) Altus Hospitality LLC; (v) C&D Family Holdings, LLC; (vi) Camelot Hospitality LLC; (vii) Capital Structures LLC; (viii) Charm Hospitality LLC; (ix) Chirag Patel; (x) Chisholm Hotels LLC; (xi) Corsicana Lodging LLC; (xii) Cosmo Hotels Management LLC; (xiii) D & D Hospitality LLC; (xiv) D Hayward LLC; (xv) D Office LLC; (xvi) Daxesh Patel; (xvii) Denison Lodging, LLC; (xviii) Denver Gateway LLC; (xix) Dhillon Elko LLC; (xx) Dhillon Group LLC; (xxi) Dhillon Hospitality LLC; (xxii) Dhillon Management LLC; (xxiii) Dhillon Management Inc.; (xxiv) Dhillon Properties LLC; (xxv) Dynamite Office LLC; (xxvi) Dynasty Holdings LLC; (xxvii) Elko Gold Mine LLC; (xxviii) Elko Hospitality LLC; (xxix) Emerald Hospitality LLC; (xxx) Ennis Lodging, LLC; (xxxi) Flagstaff Hotels LLC; (xxxii) Frisco Acquisition LLC; (xxxiii) Galaxy Construction LLC; (xxxiv) Galaxy HG Austin LLC; (xxxv) Galaxy HG Birmingham LLC; (xxxvi) Galaxy HG Chicago LLC; (xxxvii) Galaxy HG Fort Wayne LLC; (xxxviii) Galaxy HG Kansas City LLC; (xxxix) Galaxy HG Somerset LLC; (xl) Galaxy HG Westlake LLC; (xli) Galaxy HG Wichita LLC; (xlii) Galaxy Holding Group JD LLC; (xliii) Galaxy Holding Group LLC; (xliv) Global Paper Equipment Suppliers LLC; (xlv) Gurender S. Sahani; (xlvi) Harminder Dhillon; (xlvii) Harwant Dhillon; (xlviii) Keystone Holdings LLC; (xlix) Luxara Threads LLC; (l) Meecham Hospitality LLC; (li) Mehul Patel; (lii) Mid West Hotel Lodging LLC; (liii) Midvale Lodging LLC; (liv) Milan G. Mody LLC; (lv) Mount Pleasant Properties LLC; (lvi) New Hope Hospitality LLC; (lvii) NewcrestImage Holdings LLC; (lviii) Newcrest Hotels Ltd; (lix) OK

Hotels LLC; (lx) Orchid Global Hospitality LLC; (lxi) Parkwood Hospitality LLC; (lxii) Premium Hotel Management, Inc.; (lxiii) REH Vegas One LLC; (lxiv) SageStar Holdings, Ltd; (lxv) SageStar Management GP, LLC; (lxvi) SageStar Family, LLC; (lxvii) Sanjay Patel; (lxviii) SGTB Lodgings LLC; (lxix) Shawnee Hospitality LLC; (lxx) Sherman DE LLC; (lxxi) Signature Hospitality, LLC; (lxxii) SMF TX Hotels LLC; (lxxiii) Starlite Hotels, LLC; (lxxiv) Sunfish Rentals LLC; (lxxv) Tarlochan S. Kataria; (lxxvi) Thornco Hospitality Holdings LLC; (lxxvii) Todd Hanan; (lxxviii) Universal Hospitality Solutions LLC; (lxxix) Valor Consulting LLC; (lxxx) Voyage Capital Group Inc.; (lxxxi) Wax Hotels LLC; (lxxxii) West Texas Hotels, LLC; (lxxxiii) Winnemucca Hospitality LLC; (lxxxiv) Winterset Hotel LLC; (lxxxv) World Paper Machinery International LLC; (lxxxvi) Abhejit Singh Dhillon; (lxxxvii) Bawa Dhillon; (lxxxviii) Bobby Dhillon; (lxxxix) Gurpreet Kaur Dhillon; (xc) Hamriner Dhillon; (xci) Livpartap Dhillon; (xcii) Michelle Bajwa; (xciii) Rajdeep Dhillon; (xciv) Shubham Garg; (xcv) Vijaypal Dhillon; (xcvi) William Deep Singh; and (xcvii) Yadewinder Singh Dhillon.

9. “Bankruptcy Case” means *In re D San Jose LLC*, Case No. 25-43157 (BTR) (Bankr. E.D. Tex.).

10. “Black Bear” means Black Bear Capital Partners LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the “Black Bear” or “Black Bear Capital” name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

11. “Communication” refers to, in addition to its customary and usual meaning, every means of transmitting information from one to another by contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any

circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to, letters, memoranda, reports, emails, text messages, instant messages, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all means of other correspondence.

12. "Concerning" or "relating to" means evidencing, supporting, regarding, negating, refuting, embodying, containing, memorializing, comprising, analyzing, constituting, describing, identifying, referring to, related to, referencing, discussing, indicating, pertaining to, setting forth, showing, disclosing, explaining, enumerating, listing, summarizing, reflecting, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

13. "Control Person" has the meaning given to it under Delaware law and also means any person who, by their act, invocation or power, or influence can cause a corporate action to take place.

14. "Debtor" means D San Jose LLC, or otherwise relating to the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131, and/or any Affiliate or any other Person or entity acting on the Debtor's behalf.

15. "Document" or "Documents" include the term Electronically Stored Information and refer to documents broadly defined in Rule 34 of the Federal Rules, including: (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature,

brochures, announcements, bills, receipts, credit card statements; (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as electronic mail (e-mail), electronic chats, instant messages, text messages, or any other use of ephemeral communications services; and (iii) any other writings, records, or tangible objects produced or reproduced mechanically, electronically, or otherwise. Without limiting the foregoing in any way, every Communication is also a Document.

16. "DM Funding" means DM Funding LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "DM Funding" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

17. "DMI" or "Dhillon Management" means Dhillon Management, Inc., a California corporation, and Dhillon Management, LLC, a Texas limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Dhillon Management," "DMC Hotels," or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

18. "Electronically Stored Information" has the broadest possible meaning under Rule 34 of the Federal Rules, and refers to all computer or electronically stored or generated data and information, and includes all attachments to and enclosures with any requested item, and all drafts thereof. "Electronically Stored Information" includes information stored in any format and

on any storage media, including: hard disks; floppy disks; optical disks; flash memory devices; and magnetic tape, whether fixed, portable, or removable.

19. "G6 Hospitality" means G6 Hospitality Franchising LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) G6 Hospitality LLC; (ii) G6 Hospitality Property LLC; (iii) G6 Hospitality Franchise; (iv) Motel 6 Operating LP; (v) Studio 6 (and any related Studio 6 entity); (vi) any entity using the "G6 Hospitality," "Motel 6," or "Studio 6" name in whole or part; and (vii) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to the franchisor counterparty to any franchise agreement with the Debtor, any Galaxy Affiliated Person, or any Associated Person relating to the operation of a Motel 6 or Studio 6 branded property.

20. "Galaxy" means Galaxy Management Company, LLC, together with any entity operating under or associated with the trade name "Galaxy Hotels Group," and any predecessor, successor, affiliate, parent, subsidiary, or related management, hospitality, or construction entity, including but not limited to: (i) DMC Hotels; (ii) Dhillon Management; (iii) Dhillon Management, Inc.; (iv) Dhillon Management, LLC; (v) Orchid Global Hospitality LLC; (vi) Universal Hospitality Solutions LLC; (vii) Galaxy Construction LLC; (viii) Galaxy Holding Group LLC; (ix) Galaxy Holding Group JD LLC; (x) Legacy Funding; (xi) Premium Hotel Management, Inc.; and (xii) any other Person using the "Galaxy" or "DMC" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

21. "Galaxy Affiliated Person" means (i) Galaxy; (ii) the Debtor; (iii) D San Jose RE LLC; (iv) Jose Motel LLC; (v) Jagmohan Dhillon; (vi) Amandeep Dhillon; (vii) any Person or entity identified on Schedule 1 to the *Order Granting Motion for Document Production from Related Parties Under FRBP 2004* (ECF No. ___) or referenced in Choice's *Omnibus Motion For Document Production from Related Parties Under Federal Rule of Bankruptcy Procedure 2004* (ECF No. ___) as an affiliate, intercompany counterparty, or party to equity contributions or loans with the Debtor; and (viii) any other Insider and/or Affiliate, specifically also including any Person identified in the Debtor's books and records, general ledger, Insider Transfer Spreadsheet, schedules, statement of financial affairs, or other filings as an Affiliate, Control Person, related entity, Insider, or intercompany counterparty during the Relevant Period and/or any holder of Assets for You or Galaxy.

22. "GreenLake" means GreenLake Asset Management LLC, GreenLake Real Estate Finance LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "GreenLake" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

23. "Greystone" means Greystone Servicing Company LLC, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to Greystone & Co., Inc., Greystone Funding Company LLC, and any entity using the "Greystone" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or

any other Person acting or purporting to act on their behalf, specifically including but not limited to any loan servicer for any loan secured by the Debtor's property.

24. "Including" means including but not limited to.

25. "Itria" means Itria Ventures LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to any entity using the "Itria," "Itria Ventures," or "Biz2Credit" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to: (i) any party to any receivables sale agreement, merchant cash advance, or similar financing arrangement with the Debtor or any Galaxy Affiliated Person; (ii) Elko Hospitality, Inc. as co-merchant under any receivables sale agreement with the Debtor; and (iii) D Casa Investment, LLC as guarantor under any receivables sale agreement with the Debtor, in each case together with any guarantors, co-obligors, co-merchants, or additional parties added by amendment or joinder to any such financing arrangement.

26. "Insider" has the meaning given to it under bankruptcy law and 11 U.S.C. § 101, and also includes Control Persons and Affiliates.

27. "Insider Transfer Spreadsheet" means the spreadsheet produced by the Debtor to Choice on or about November 25, 2025 reflecting purported "affiliate" payments and transfers, which evidences $3,322,577.12 in total "[l]oan payback" since June 9, 2022 (outgoing payments from the Debtor to various related entities) and $7,264,900 in "[l]oan from [o]ther properties" (incoming funds), and which was attached in truncated form to the Debtor's first and second

amended statements of financial affairs (ECF Nos. 48 and 58), together with any updates, amendments, corrections, or supplements thereto.

28. "Messages" means all means of conveying information in an electronic or printed form from one Person or human to any other Person or human, specifically including but not limited to any printed and/or electronic copies of email, electronic text, chat, or direct messages sent on any platform, including, but not limited to, SMS, iMessage, WhatsApp, Signal, Confide, Telegram, Facebook, Instagram, X (formerly Twitter), Slack, Microsoft Teams, Google Chat, etc.

29. "NewcrestImage" means NewcrestImage Capital Holdings, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to: (i) NewcrestImage CH LLC; (ii) NewcrestImage Capital LLC; (iii) NewcrestImage LLC; (iv) NewcrestImage Holdings LLC; (v) any entity using the "NewcrestImage" name in whole or part; and (vi) any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, pledge agreement, deed of trust, guaranty, collateral assignment, or other financing arrangement with the Debtor, Galaxy, Jagmohan Dhillon, Amandeep Dhillon, or any Galaxy Affiliated Person.

30. "Orchid" means Orchid Hotels, Orchid Global Hospitality, LLC, and any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Orchid" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf.

31. "Person" means and includes (i) any "person" within the meaning of 11 U.S.C. § 101(41) and (ii) any other individual or entity or arrangement of any kind (whether or not incorporated, whether or not having separate legal personality, and whether domestic or foreign) that may own, hold, receive, transfer, manage, control, or beneficially enjoy any asset or interest, including without limitation: any corporation, Hindu Undivided Family under Indian law, anstalt, Stiftung, Treuunternehmen, Treuhand, verein, einfache Gesellschaft, "Society" under Indian law, Modaraba company, Mudarabah, Musharakah, Waqf, Takaful, limited liability company, professional corporation/association, nonprofit corporation, Protected Cell Companies or Incorporated Cell Companies (and/or each cell / compartment) under Indian or other law, Private Trust Company, partnership of any kind (general, limited, limited liability, limited liability limited), joint venture, business trust, statutory trust, common-law trust, estate, foundation, endowment, association, society, cooperative, syndicate, unincorporated association or organization, special purpose vehicle, cell/series/compartment (including protected or incorporated cells), investment fund or unit trust, and any governmental or quasi-governmental body or instrumentality (to the extent permitted by applicable law). Also, "Person" includes, when applied to any entity or arrangement, any of its or their directors, officers, shareholders, members, partners, managers, trustees, settlors, protectors, enforcers, council members, beneficiaries, employees, agents, attorneys, accountants, consultants, nominees, custodians, or other representatives acting (or purporting to act) on that Person's behalf, and any predecessor, successor, assign, affiliate, parent, subsidiary, division, branch, or alter ego of any of the foregoing, including (but not limited to) any of the above with bearer shares of which you have ever been the bearer.

32. "Relevant Period" means January 1, 2019 to present.

33. "Stabilis" means Stabilis Lending, LLC, a Delaware limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including but not limited to Stabilis Capital Management, LP and any entity using the "Stabilis" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, deed of trust, guaranty, or other financing arrangement with the Debtor or any Galaxy Affiliated Person.

34. "Tax Return Member" means each Person identified in any of the Debtor's federal or state income tax return, Schedule K-1, capital account reconciliation, partner basis worksheet, or other tax workpaper of the Debtor as holding (directly or indirectly) any membership, equity, capital, profits, or losses interest in the Debtor at any time during the Relevant Period, whether current or former, including without limitation: Amandeep Dhillon; Jagmohan Dhillon; Milan G. Mody; JAV Ghelani Holdings LLC; Sanjeev Bhanot; Sudha L. Potla; Vijay Mathur; Mazbauddin Mahabub; Piyush Ghelane/Ghelani; and Ronak Khichadia, and any successor, predecessor, assignee, nominee, or entity acting on behalf of any such Person.

35. "Transaction" means the transactions, transfers, repayments, advances, contributions, distributions, journal entries, recharacterizations, or other entries reflected in the General Ledger excerpts attached as Schedule 1-A, the Insider Transfer Spreadsheet attached as Schedule 1-B, and the General Ledger excerpts reflecting recharacterizations attached as Schedule 1-C, including any transaction whose counterparty description, shorthand, property name, account, affiliate name, or other identifying information identifies, abbreviates, or appears to refer to You.

36. "Underground" means Underground Lending, LLC, a Georgia limited liability company, together with any predecessor, successor, parent, subsidiary, affiliate, or related entity, including any entity using the "Underground" or "Underground Lending" name in whole or part, and any of their respective current or former partners, members, officers, directors, employees, agents, representatives, contractors, consultants, accountants, attorneys, or any other Person acting or purporting to act on their behalf, specifically including but not limited to any lender, noteholder, or secured party on any loan, promissory note, security agreement, guaranty, or other financing arrangement with the Debtor, any Galaxy Affiliated Person, or any Associated Person.

37. "You" or "Your" means [RECIPIENT], and/or any Affiliate or any Person or entity acting on Your behalf, and/or that You control as Control Person, Officer, Trustee, or Director or otherwise. For the avoidance of doubt, when a Request asks for Documents, Communications, or Messages between You and any other Person, the Request includes Documents between [RECIPIENT] and that Person.

38. The singular form of a word shall include the plural form, and the plural form shall include the singular form.

39. The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

## INSTRUCTIONS

1. Unless otherwise specified in any request, the requests seek documents generated, transmitted or received.

2. Each request for documents requires the production of all documents described herein, in your possession, custody or control, including but not limited to those documents in the

custody or possession of your current or former members, direct or indirect subsidiaries, parents, affiliates, divisions, predecessors, successors, officers, directors, agents, employees, representatives, consultants, or investigators, or your attorneys or their agents, employees, representatives or investigators.

3. All documents are to be produced as kept in the usual course of business or organized and labeled to correspond to the specific requests set forth below.

4. In responding to each request, if any document requested has been amended (including by an amendment and restatement), or any waiver, consent, supplement, forbearance or other similar instrument has been entered into in connection with such document, furnish each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or other similar instrument.

5. In responding to each request, furnish all exhibits, schedules, annexes, appendices, or any other ancillary documents related to each document produced.

6. All drafts of responsive documents must be produced, as well as all non-identical copies. Any comment, notation, or other marking shall be sufficient to distinguish documents that are otherwise similar in appearance and to make them separate documents for purposes of your response. Likewise, any draft, preliminary form, or superseded version of any document is also to be considered a separate document.

7. To the extent applicable, furnish executed versions of each document requested.

8. The file folder or other container in which a document is kept is deemed to be an integral part of the document and shall be produced with the document.

9. Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or

definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

10. If, in answering these requests, you claim any ambiguity in interpreting either these requests or a definition or instruction applicable thereto, you shall not use such claims as a basis for refusing to respond, but shall identify as part of the response the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

11. If any requested document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

12. If you object to any part of a request, produce documents responsive to all parts of the request to which you do not object.

13. These requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional documents responsive to these requests after the time of the initial response.

14. If any document called for by these requests is withheld under a claim of privilege or protection, that document need not be produced but you shall with respect to that document:

a. identify each person who prepared or participated in the preparation of the document, and the date the document was created;

b. identify each person who ever sent or received the document;

c. state the present location of the document and all copies thereof;

d. describe the nature of the document; and

e. state the grounds asserted as the reason for non-production, and explain and substantiate the claim of privilege, so as to permit adjudication of the propriety of that claim.

15. If there are no documents responsive to a specific request, so state in writing.

16. If any document requested was, but is no longer, in your possession, custody or control, state the subject matter of the document, what disposition was made of it, and the date or dates on which such disposition was made. Additionally, produce all documents concerning the disposition of such document.

17. If you are unable to locate any document requested, state all efforts that have been made to locate it, and identify any individual who you believe is likely to possess any information regarding the present location of the document.

18. If you know of any documents responsive to a particular request but cannot produce them, so state, produce the documents within your possession, custody or control on the subject matter sought, and identify each person whom you believe has documents responsive to the Request.

19. For documents maintained in paper format, the following specifications should be used for production:

a. Scanned images should be produced as single-page black-and-white TIFF files in group IV format imaged at 300 dpi (or color JPEG).

b. Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

c. Each production volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

d. To the extent that documents have been run through Optical Character Recognition (OCR) software in the course of reviewing the Documents for production, full text should also be delivered for each document. Text should be delivered on a document level and may be included in an appropriately formatted text file (.TXT) that is named to match the first Bates number of the document.

20. For documents that originated and are maintained in electronic format ("Electronically Stored Information"), the following specifications should be used for production:

a. Documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, backup tape, or other location) where the documents are stored and, where applicable, the person in whose possession they were found, or on whose hardware device they reside or are stored. If the storage location was a file share or work group folder, that should be specified as well.

b. Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately referenced to the respective parent documents containing the attachments, enclosures, and/or exhibits.

c. For standard documents, emails, and presentations originating in electronic form, documents should be produced as TIFF images using the same specifications as set forth above for paper documents, with a delimited text file (using the delimiters detailed below) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) Custodian; (vi) Original Location Path*; (vii) Email Folder Path*; (viii) Document Type; (ix) Author; (x) Title; (xi) File Name; (xii) File Ext; (xiii) File Size; (xiv) MD5 Hash; (xv) Date Last Modified; (xvi) Date Created; (xvii) Date Sent; (xviii) Time Sent [HH:MM:SS]; (xix) MessageID; (xx) Date Received; (xxi) From; (xxii) Recipients; (xxiii) Copyees; (xxiv) Blind Copyees; (xxv) Pages; (xxvi) Email Subject; (xxvii) Native link path; and (xxviii) Extracted Text (not OCR Text) produced as separate .TXT files.

21. When converting Electronically Stored Information from its native format into its production format: (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; and (f) auto-populated fields shall be replaced with descriptive text for the item. For example, auto-populating "page number" fields shall be replaced with the text "PAGE #," auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "PATH" (or other similar text).

22. To the extent documents in a foreign language are produced, processing of such documents shall be Unicode-compliant.

23. Additional special processing of certain Electronically Stored Information will be as follows: Microsoft Excel spreadsheet files will not be converted to TIFF files and will be produced in native format. A placeholder TIFF image will be created, Bates numbered, and the produced Excel file will be renamed to match the Bates number on its corresponding placeholder page. The exception will be for redacted spreadsheets which will be produced in TIFF format as specified above. Images for the redacted spreadsheets will display the content in the same manner as if it were printed. The extractable metadata and text will be provided for native files, and OCR will be provided for the un-redacted portions of the documents.

24. Upon review, a request may be made for certain other documents that were initially produced in their static (TIFF or PDF) format to be produced in their native format in the event that the static version is not reasonably usable. Such documents will be identified by Bates numbers. For structured information contained within databases parties are to meet and confer on the form of production prior to production.

25. Documents produced shall be provided with (i) Concordance delimited load file(s) and (ii) Opticon delimited cross-reference file(s). Every TIFF in each production must be referenced in the production's corresponding load file. The total number of images referenced in a production's load file should match the total number of TIFF files in the production. The database load file shall include a reference to any native files that are produced.

26. Unless otherwise agreed, document productions shall be produced in the following manner: The producing party shall provide the production data through file transfer protocol (FTP, Accellion, or other) as a default or on encrypted external hard drives for larger volumes, as

appropriate. The producing party shall encrypt the production data using Endpoint, Bit locker, or equivalent 256-bit encryption, and the producing party shall forward the password to decrypt the production data separately (via email or other commercially reasonable means) from the external drive on which the production data is saved.

27. You shall produce all documents responsive to any of the following requests in the possession or custody of any of the advisors or counsel to you.

28. The production shall include a custodian of records declaration sufficient to authenticate the documents produced in response to these Requests as business records, identifying the recordkeeping systems used and confirming whether the production is complete for the requested categories and the Relevant Period (or identifying any gaps).

**DOCUMENT REQUESTS**

Unless otherwise stated herein, the relevant time period for the document requests is the Relevant Period.

1. All organizational documents (formation and amendments), assumed names/DBAs, operating agreement(s) and amendments, member/manager resolutions/minutes/consents, authority matrices (if any), and all schedules/exhibits identifying members and membership interests (including any cap table/membership ledger or equivalent record) for the Relevant Period.

2. Documents sufficient to identify who had authority to act for You during the Relevant Period, including signatory authority for bank accounts and authority to direct payments.

3. Your books and records in native form sufficient to identify and explain all transactions between You and the Debtor, Galaxy, any Galaxy Affiliated Person, any Associated Person, and/or any Tax Return Member (including general ledger detail (transaction-level), journal entries, and supporting schedules) for the Relevant Period.

4. All Communications and Documents (including but not limited to loan documents, deeds of trust, settlement statements, transaction records, or materials otherwise related to sale, transfer, encumbrances, or assignments of rights and interests), related to D San Jose LLC, D San Jose RE LLC, Jose Motel LLC, or otherwise relating to the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131.

5. All Communications and Documents (including but not limited to franchise agreements, property improvement plans (PIPs), franchise agreement terminations, franchise agreement renewals, quality assurance inspections, brand compliance audits, loans, promissory notes, financial instruments, defaults, deeds of trust, settlement statements, transaction records, or materials otherwise related to sale, transfer, encumbrance, or assignment of rights and interests), related to D San Jose LLC, D San Jose RE LLC, Jose Motel LLC, or otherwise relating to the property located at 2560 Fontaine Rd, San Jose, CA 95121-2131.

6. Documents and Communications sufficient to identify and explain all transactions (including transfers, repayments, advances, contributions, distributions, recharacterizations, and journal entries) between You and (i) the Debtor; (ii) Galaxy; (iii) Jose Motel LLC; (iv) D San Jose RE LLC; (v) any Galaxy Affiliated Person; (vi) any Associated Person; and (vii) any Tax Return Member, including intercompany loan ledgers, invoices, management fee support, reimbursements, journal entries, and contemporaneous approvals/authorizations.

7. Bank statements and transaction detail (including wire/ACH detail and check images to the extent maintained) sufficient to show the Transactions reflected in the General Ledger pages attached as **Schedule 1-A**, the Insider Transfer Spreadsheet attached as **Schedule 1-B**, and the General Ledger pages reflecting recharacterizations attached as **Schedule 1-C**, including the sending and receiving Accounts, and any other Account(s) (whether open or closed)

maintained, controlled, used, or accessed by You in connection with the Debtor, Galaxy, any Galaxy Affiliated Person, any Associated Person, and/or any Tax Return Member during the Relevant Period.

8. All Documents and Communications relating to the Transactions reflected in the *General Ledger Excerpts (Transfers)* attached as **Schedule 1-A**, the *Insider Transfer Spreadsheet* attached as **Schedule 1-B**, and the *General Ledger Excerpts (Recharacterizations)* attached as **Schedule 1-C**, including without limitation bank backup, wire/ACH detail, check images, internal approvals/authorizations, invoices/loan schedules, and the purpose/consideration and characterization of each item (loan, repayment, contribution, distribution, reimbursement, or other). This Request includes Documents and Communications sufficient to reconcile and explain any discrepancies between Schedule 1-A and Schedule 1-B (including any differences in date, amount, counterparty, account, or description).

9. All Communications and Messages between You and any of the following relating to the Debtor, Galaxy, and/or the Transactions identified in **Schedule 1-A**, **Schedule 1-B**, and **Schedule 1-C**, with attachments preserved: (a) the Debtor; (b) D San Jose RE LLC; (c) Galaxy; (d) Jagmohan Dhillon; (e) Amandeep Dhillon; (f) Sudha Potla; (g) Jai Singh; (h) Anwer Azam; (i) any bookkeeper or accounting contractor working on the Debtor or related entities; (j) any Tax Return Member; and (k) any Associated Person.

10. All Documents and Communications relating to the following wire transfers from D San Jose LLC bank account at East West Bank ending in 3331 to G6 Hospitality LLC [account L1 240911] on September 11, 2024: (a) 24764493 in the amount of $1,152.31; (b) 24763970 in the amount of $51,269.72; (c) 24763199 in the amount of $56,244.44; (d) 24763707 in the amount of $177,933.77; and (e) 24763429 in the amount of $238,624.72.

11. All federal and state tax returns for tax years 2019–2024 (and 2025 if filed), including schedules/attachments, and workpapers/schedules sufficient to show related-party transactions, loans, distributions, and intercompany receivables/payables involving the Debtor, Galaxy, any Galaxy Affiliated Person, any Associated Person, and/or any Tax Return Member, including any materials transmitted to any preparer.

12. Documents sufficient to identify Your accounting platforms, storage locations, administrators, and retention practices for the requested records, including identification of custodians and where responsive ESI is maintained.

13. All Documents and Communications concerning any credit card account, corporate card, or charge account for which You, any Galaxy Affiliated Person, or any Associated Person was an account holder, authorized user, or payor, including account statements, payment records, authorization documentation, and Communications concerning the allocation, payment, or reimbursement of credit card charges involving the Debtor's funds.

14. All Documents and Communications concerning any recharacterization, reclassification, or change in accounting treatment of any transaction, transfer, contribution, distribution, loan, or other entry in Your books and records or the books and records of the Debtor, Galaxy, or any Galaxy Affiliated Person, including without limitation any Documents and Communications concerning the January 1, 2025 recharacterization of equity contributions and distributions as intercompany loan transfers, and any board resolutions, member consents, loan documentation, interest calculations, or other contemporaneous documentation supporting or authorizing any such recharacterization.

15. All Documents and Communications concerning any funds, Accounts, or Assets represented, proposed, or considered as a source of funding for any plan of reorganization or

disclosure statement in the Bankruptcy Case, including Documents sufficient to identify the ownership, control, and availability of such funds, any encumbrances or restrictions on such funds, and any Communications concerning Jagmohan Dhillon's or any Galaxy Affiliated Person's ability to contribute capital to the Debtor or any plan.

16. All Documents and Communications concerning any bank account, brokerage account, or other financial account (whether open, closed, or undisclosed) maintained by, controlled by, or accessible to You, the Debtor, Galaxy, or any Galaxy Affiliated Person, including without limitation any account at American Bank of Dallas, and Documents sufficient to identify all such accounts, their signatories, authorized users, and any transfers or transactions involving the Debtor's funds.

17. All Documents and Communications relating to Orchid, including but not limited to payroll records, ACH debit authorizations, billing records, employment records, any management or services agreements, and any Documents explaining the relationship between Orchid and the Debtor, Galaxy, any Galaxy Affiliated Person, and/or any Associated Person.

18. Documents sufficient to identify any Assets held by, transferred to, or received from any Associated Person during the Relevant Period, including but not limited to: (a) deeds, titles, or ownership records; (b) bank account records reflecting transfers; (c) assignment or conveyance Documents; and (d) any Documents showing the source of funds used by any Associated Person to acquire Assets.

19. All Documents and Communications concerning any pooling of resources, cash management arrangement, centralized treasury function, or similar arrangement among the Debtor, Galaxy, any Galaxy Affiliated Person, or any Associated Person, including any Documents

describing the terms, participants, or operation of such arrangements, and any Documents reflecting transfers made pursuant to such arrangements.

20. All Documents and Communications concerning Your authority, agency, or relationship(s) with the Debtor, any Galaxy Affiliated Person, any Associated Person, and/or any Tax Return Member, to the extent not otherwise responsive to Requests 1–19.

Date: [DATE] **PILLSBURY WINTHROP SHAW PITTMAN LLP**

By:______________________________

Hugh M. Ray, III
TX Bar No. 24004246
Joshua Stenhjem
TX Bar No. 24151465
609 Main Street, Suite 2000
Houston, TX 77002
Telephone: 713-276-7600
Facsimile: 713-276-7634
hugh.ray@pillsburylaw.com
joshua.stenhjem@pillsburylaw.com

*--and--*

Patrick E. Fitzmaurice
N.Y. Bar No. 4093852
Andrew V. Alfano
N.Y. Bar No. 5525241
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile: 212-858-1500
patrick.fitzmaurice@pillsburylaw.com
andrew.alfano@pillsburylaw.com

*Counsel for Choice Hotels International, Inc.*

# **Schedule 1-A**

*General Ledger Excerpts (Transfers)*

# Schedule 1-B

*Insider Transfer Spreadsheet*

**Schedule 1-C**

*General Ledger Excerpts (Recharacterizations)*